EXHIBIT A

FILED
5/3/2019 2:47 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH05615
4927959

Hearing Date: 7/2/2019 2:30 PM - 2:30 PM
Courtroom Number: 2808
Location: District 1 Court
Cook County, IL

FILED DATE: 5/3/2019 2:47 PM 2019CH05615

**Atty. No.: 48928**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – CHANCERY DIVISION**

| | |
|---|---|
| **JPMorgan Chase Bank, National Association**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**Robert Kowalski, AKA Robert M. Kowalski; Chicago Title Land Trust Company s/i/i to Bridgeview Bank Group FKA Bridgeview Bank And Trust Company, As Trustee Under Trust Agreement Dated April 24, 1993 And Known As Trust Number 1-2228; Royal Savings Bank FKA Washington Federal Bank for Savings; Unknown Owners and Non-Record Claimants**<br><br>**Defendants.** | **Case No.** 2019CH05615<br><br>**1512 Polk Street, AKA 1512 West Polk Street, Chicago, IL 60607** |

## COMPLAINT TO FORECLOSE MORTGAGE

Plaintiff, JPMorgan Chase Bank, National Association, by its Attorneys Manley Deas Kochalski LLC, states as follows:

1. Plaintiff files this Complaint pursuant to 735 ILCS 5/15-1101 *et seq.* to foreclose the mortgage, trust deed or other conveyance in the nature of a mortgage (hereinafter called "Mortgage") hereinafter described and joins the following persons as defendants:

   Robert Kowalski, AKA Robert M. Kowalski
   Chicago Title Land Trust Company s/i/i to Bridgeview Bank Group FKA Bridgeview Bank And Trust Company, As Trustee Under Trust Agreement Dated April 24, 1993 And Known As Trust Number 1-2228
   Royal Savings Bank FKA Washington Federal Bank for Savings
   Unknown Owners and Non-Record Claimants

EXHIBIT A

FILED DATE: 5/3/2019 2:47 PM 2019CH05615

2. Plaintiff has heretofore elected to declare the whole of the principal sum remaining unpaid, together with interest thereon, to become immediately due and payable and, by the filing of this complaint, Plaintiff has confirmed said election.

3. Attached as Exhibit A is a copy of the Mortgage. Attached as Exhibit B is a copy of the Note. Attached as Exhibit C and Exhibit D are copies of the Assignments. Attached as Exhibit E is a copy of the Loan Modification Agreement.

4. Information concerning said Mortgage:

(A) Nature of the instrument: Mortgage

(B) Date of the Mortgage: May 8, 1998

(C) Name or Names of the Mortgagors:

Chicago Title Land Trust Company s/i/i to Bridgeview Bank Group FKA Bridgeview Bank And Trust Company, As Trustee Under Trust Agreement Dated April 24, 1993 And Known As Trust Number 1-2228

(D) Name of the mortgagee, trustee or grantee in the Mortgage:

Washington Mutual Bank, F.A.

(E) Date and place of recording:

May 18, 1998, re-recorded on November 18, 2013 in the Cook County, Illinois records

(F) Identification of recording: Document Number 98410464, and re-recorded as Document Number 1332215071

(G) Interest subject to the mortgage: Fee Simple

(H) Amount of original Indebtedness, including subsequent advances made under the mortgage: $382,000.00

(I) Legal description of Mortgaged premises and common address (hereinafter "Mortgaged Premises"):

Lot 47 and the South 77.6 feet and the East 7.02 foot of Lot 46 included in Laflin and Loomis Resubdivision of the South half of Block 41 in Canal Trustee's Subdivision of the West half of the West half of the northeast quarter of Section

FILED DATE: 5/3/2019 2:47 PM 2019CH05615

17, Township 39 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois.

Commonly known as: 1512 Polk Street, AKA 1512 West Polk Street, Chicago, IL 60607

Permanent Index Numbers: 17-17-301-032-0000, 17-17-301-046-0000

(J) Statement as to defaults: The Mortgage is in default due to the failure of the mortgagor to pay the monthly installments of principal, interest, taxes and insurance, and any other escrow items that may apply, for the period March 1, 2018, through the present. There remains an outstanding principal balance of $302,903.07 with interest accruing per the terms of the note, plus attorney's fees, foreclosure costs, late charges, advances, and expenses incurred by the Plaintiff as a result of the default.

(K) Name of present owner(s) of the real estate:

Chicago Title Land Trust Company s/i/i to Bridgeview Bank Group FKA Bridgeview Bank And Trust Company, As Trustee Under Trust Agreement Dated April 24, 1993 And Known As Trust Number 1-2228

(L) Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated:

Royal Savings Bank FKA Washington Federal Bank for Savings, by virtue of mortgage from Bridgeview Bank and Trust Company, as Trustee under Trust Agreement dated April 28, 1993 and known as Trust No. 1-2228, in the amount of $400,000.00, recorded August 20, 1999 as Document Number 99797136, Cook County, Illinois records.

(1) In addition to person(s) designated by name herein, there are other person(s) who have or claim to have an interest in the mortgaged real estate which is not disclosed of record by recorded notice or proceeding which would give constructive notice and who are more fully defined in 735 ILCS 5/15-1210, and whose interest falls in any of the following categories: (1) right of homestead, (2) judgment creditor, (3) beneficiary interest under any trust other than the beneficial interest of a beneficiary of a trust in actual possession of all or part of the real estate, (4) unrecorded mechanics' lien claimant, or (5 )any other entity or person who claims an interest in the Mortgaged Premises. The name or names of these claimants and all such other persons are made party defendants to this action by the name and description of "UNKNOWN OWNERS AND/OR NON-RECORD CLAIMANTS."

FILED DATE: 5/3/2019 2:47 PM 2019CH05615

(M) Names of defendants claimed to be personally liable for deficiency, if any:

**Chicago Title Land Trust Company s/i/i to Bridgeview Bank Group FKA Bridgeview Bank And Trust Company, As Trustee Under Trust Agreement Dated April 24, 1993 And Known As Trust Number 1-2228**

Unless any of such defendants have been discharged in Bankruptcy, in which case no such deficiency is sought.

(N) Capacity in which Plaintiff brings this foreclosure:

Legal holder of the indebtedness secured by the mortgage.

(O) Facts in support of redemption period, shorter than the longer of (i) 7 months from the date the mortgagor or, if more than one, all the mortgagors (I) have been served with summons or by publication or (II) have otherwise submitted to the jurisdiction of the Court, is residential real estate; (ii) 6 months from the date the mortgagor or, if more than one, all the mortgagors (I) have been served with summons or by publication of (II) have otherwise submitted to the jurisdiction of the Court, if commercial real estate; or (iii) 3 months from the entry of the judgment of foreclosure, whichever is later.

Pursuant to the terms of the 735 ILCS 5/15-1603, the Court shall determine the length of the redemption period upon making a finding based on the facts and circumstances available to the Court at the time of judgment that the property is either residential, non residential, or abandoned.

(P) Facts in support of request for attorney's fees and of costs and expenses:

That pursuant to the terms of the Note and Mortgage, the mortgagee is entitled to recover attorney's fees, court costs, title costs, and other expenses which plaintiff has been and will be required to expend in the prosecution of this foreclosure.

(Q) Determination as to residential real estate:

(1) Pursuant to the terms of 735 ILCS 5/15-121, Plaintiff requests that the court make a finding based upon facts and circumstances available to the court at the time of Judgment that the subject real estate is either "residential real estate" occupied as a principal residence either (i) if a mortgagor is an individual, by that mortgagor, that mortgagor's spouse or that mortgagor's descendants, or (ii) if a mortgagor is a trustee of a trust or an executor or administrator of an estate, by a beneficiary of that trust or estate or by such beneficiary's spouse or descendants or (iii) if a mortgagor is a corporation, by persons owning collectively at least 50 percent of the shares of voting stock of such corporation or by a spouse or descendants of such persons and subject to a seven-month redemption period.

FILED DATE: 5/3/2019 2:47 PM 2019CH05615

(2) In the event that the court finds that either: (1) the real estate is residential, then the real estate shall be subject to a seven month redemption period, or (2) the real estate is non-residential, then the real estate is subject to a six- month redemption period.

(R) Facts in Support of a request for appointment of mortgagee in possession or for appointment of a receiver, and identity of such receiver, if sought:

None at this time; Plaintiff reserves the right to file a separate Petition for Appointment of Mortgagee in Possession of Receiver if applicable.

(S) Name or names of defendants whose rights to possess the mortgaged real estate, after the confirmation of a foreclosure sale, are sought to be terminated and, if not elsewhere stated, the facts in support thereof:

Robert Kowalski, AKA Robert M. Kowalski
Chicago Title Land Trust Company s/i/i to Bridgeview Bank Group FKA Bridgeview Bank And Trust Company, As Trustee Under Trust Agreement Dated April 24, 1993 And Known As Trust Number 1-2228

**REQUEST FOR RELIEF**

Plaintiff requests:

1. A judgment to foreclose such mortgage and judicial sale by the Sheriff or Judicial Sales Officer appointed for that purpose.

2. An order granting a shortened redemption period, as applicable.

3. An order granting possession, if sought.

4. An order placing the mortgagee in possession or appointing a receiver, if sought.

5. A judgment including attorney's fees, costs, and expenses including but not limited to payments for taxes, insurance, securing, inspections and other expenses of the plaintiff.

6. For a finding that the interests of all named defendants are junior and subservient to the mortgage lien being foreclosed herein and the termination of leaseholds, if any.

7. An order enforcing its assignment of rents derived from said real estate, if applicable.

8. For such other and further relief as the Court deems just, including, but not limited to, declaratory and injunctive relief.

9. A sale by public auction.

10. A cash sale by open bid.

FILED DATE: 5/3/2019 2:47 PM 2019CH05615

11. A provision that a Sales Officer, the Sheriff of Cook County, or a special commissioner shall conduct the sale for a reasonable fee, which fee shall be recoverable by Plaintiff in the event of redemption.

12. An order that title in the real estate may be subject, at the sale, to exceptions including general real estate taxes for the current year and for preceding years which have not become due and payable as of the date of entry of the judgment of foreclosure, any special assessments upon real estate, and easements and restrictions of record.

13. That the plaintiff be entitled to recover in any reinstatement or redemption, any additional taxes paid, or advances paid for expenses including, but not limited to, insurance, inspection, boarding and securing said premises, or other expenses to preserve and protect said security.

JPMorgan Chase Bank, National Association

BY: /s/ Alan S. Kaufman (6289893)
One of Plaintiff's Attorneys

Alan S. Kaufman (6289893)
Zachariah L. Manchester (6303885)
Umair M. Malik (6304888)
Edward R. Peterka (6220416)
Shara A. Netterstrom (6294499)
Keith Levy (6279243)
Shanna L. Bacher (6302793)
MANLEY DEAS KOCHALSKI LLC
Attorneys for Plaintiff
One East Wacker, Suite 1250, Chicago, IL 60601
Phone: 312-651-6700; Fax: 614-220-5613
Atty. No.: 48928
Email: sef-askaufman@manleydeas.com

EXHIBIT B

Office of the Comptroller of the Currency

Washington, DC 20219

December 15, 2017

The Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429-9990

Re: Washington Federal Bank for Savings
Chicago, Illinois
Charter Number 712269

To Whom It May Concern:

You have been appointed Receiver for Washington Federal Bank for Savings, Chicago, Illinois ("Bank") effective as of the date of this letter. A copy of the *Receivership Determination and Appointment of Receiver* for the Bank is enclosed.

Please send the Office of the Comptroller of the Currency a copy of any verification of assets prepared by the Federal Deposit Insurance Corporation.

Sincerely,

Toney M. Bland
Senior Deputy Comptroller
Midsize and Community Bank Supervision

Enclosure

EXHIBIT B

**FDIC**
**Division of Resolutions and Receiverships**
**Dallas Regional Office**
**1601 Bryan Street**
**Dallas, Texas 75201**
**Telephone (214) 754-0098**

December 15, 2017

Office of the Comptroller of the Currency
Constitution Center
400 7th St SW, Suite 3E-218
Washington, D.C. 20219

Subject: Washington Federal Bank for Savings
Chicago, IL - In Receivership
**Acceptance of Appointment as Receiver**

Dear Sir or Madam:

Please be advised that the Federal Deposit Insurance Corporation accepts its appointment as Receiver of the captioned depository institution, in accordance with the Federal Deposit Insurance Act, as amended.

Sincerely,

FEDERAL DEPOSIT INSURANCE CORPORATION

By: ______________________________
Name: Tyler M. Cavaness
Title: Receiver-in-Charge

EXHIBIT B

**UNITED STATES OF AMERICA**
**OFFICE OF THE COMPTROLLER OF THE CURRENCY**
**WASHINGTON, D.C.**

**Receivership Determination and Appointment of Receiver**

Washington Federal Bank for Savings
Chicago, Illinois
Charter Number 712269

**WHEREAS,** the Comptroller of the Currency has delegated to me the authority to appoint a receiver for a Federal savings association under 12 U.S.C. §§ 1464(d)(2) and 1821(c)(5);

**WHEREAS,** Washington Federal Bank for Savings, Chicago Illinois ("Bank") is insured by the Federal Deposit Insurance Corporation;

**WHEREAS,** from information available to the Office of the Comptroller of the Currency ("OCC") and pursuant to 12 U.S.C. §§ 1464(d)(2) and 1821(c), I have determined that the following grounds exist for the appointment of a receiver for the Bank:

(1) The Bank's assets are less than the Bank's obligations to its creditors and others, including members of the Bank. 12 USC 1821(c)(5)(A).

(2) The Bank has experienced substantial dissipation of assets or earnings due to any violation of any statute or regulation. 12 USC 1821(c)(5)(B)(i).

(3) The Bank has experienced substantial dissipation of assets or earnings due to any unsafe or unsound practice. 12 USC 1821(c)(5)(B)(ii).

(4) The Bank is in an unsafe or unsound condition to transact business. 12 USC 1821(c)(5)(C).

(5) The Bank has concealed its books, papers, records, or assets, or refused to submit the Bank's books, papers, records, or affairs for inspection to the OCC. 12 USC 1821(c)(5)(E).

(6) The Bank's violations of law or regulation or unsafe or unsound practices or conditions are likely to cause insolvency or substantial dissipation of assets or earnings. 12 USC 1821(c)(5)(H)(i).

(7) The Bank's violations of law or regulation or unsafe or unsound practices or conditions are likely to weaken the Bank's condition. 12 USC 1821(c)(5)(H)(ii).

(8) The Bank, by resolution of its Board of Directors, has consented to the appointment. 12 USC 1821(c)(5)(I).

**WHEREAS**, in my discretion, I have determined that the Federal Deposit Insurance Corporation should be appointed Receiver for the Bank;

**NOW THEREFORE**, pursuant to 12 U.S.C. §§ 1464(d)(2) and 1821(c) and the power, duty, and authority vested in me by law, I do hereby appoint the Federal Deposit Insurance Corporation as Receiver for the Bank, with all of the powers, duties, and responsibilities given to or imposed upon a receiver under the provisions of the laws of the United States that authorize and direct the appointment of such receiver. I further authorize the delivery of copies of my signed and dated *Receivership Determination and Appointment of Receiver* for the Bank to the appropriate persons.

Toney M. Bland
Senior Deputy Comptroller
Midsize and Community Bank Supervision

Dated: December 15, 2017

EXHIBIT C

# NOTE

AUGUST 10, 1999 [Date] CHICAGO [City] ILLINOIS [State]

1512 W. POLK STREET CHICAGO,ILL 60607 [Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $400,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is WASHINGTON FEDERAL BANK for savings. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.00 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 1ST day of each month beginning on SEPTEMBER 1, 1999. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on JULY 31, 2000, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WASHINGTON FEDERAL BANK for savings 2869 S ARCHER CHICAGO,ILL 60608 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $2,666.40 ( INTEREST ONLY)

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15TH calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be $133.32 5 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

EXHIBIT C

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

This Instrument is executed by the Bridgeview Bank and Trust Co., not personally, but only as Trustee, and no personal liability is assumed by or shall be enforced against said Bridgeview Bank and Trust Co. because of or on account of the making of this instrument.

Bridgeview Bank & Trust Co. not personally, but as Trustee under Trust No. 1-2228

By: [signature]
Trust Officer

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

[signature: Robert M. Kowalski] (Seal) -Borrower
SSN: 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

_______________ (Seal) -Borrower
SSN:

_______________ (Seal) -Borrower
SSN:

_______________ (Seal) -Borrower
SSN:

*[Sign Original Only]*

EXHIBIT D

99797136

7185/0195 27 001 Page 1 of 9
1999-08-20 11:59:21
Cook County Recorder 37.00

Mail To &
Prepared by:
Washington Fderal Bank for savings
2869 S Archer
Chicago,Ill 60608

# MORTGAGE

9

THIS MORTGAGE ("Security Instrument") is given on AUGUST 10, 1999. The mortgagor is BRIDGEVIEW BANK AND TRUST COMPANY, AS TRUSTEE UNDER TRUST AGREEMENT DATED APRIL 24, 1993 AND KNOWN AS TRUST NUMBER 1-2228 ("Borrower"). This Security Instrument is given to WASHINGTON FEDERAL BANK for savings which is organized and existing under the laws of UNITED STATES OF AMERICA, and whose address is 2869 S ARCHER CHICAGO,ILL 60608 ("Lender"). Borrower owes Lender the principal sum of FOUR HUNDRED THOUSAND DOLLARS AND NO/100'S------------ Dollars (U.S. $ 400,000.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on JULY 31, 2000. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in COOK County, Illinois:

LOT 47 AND THE SOUTH 85.0 FEET OF THE EAST 7.5 FEET OF LOT 46 IN THE SOUTH 1/2 OF BLOCK 41 IN LAFLIN AND LOOMIS RESUBDIVISION OF BLOCKS 5,16,21,30,31,32,33 AND 41 AND SUBDIVISION OF BLOCKS 6,9, 19 AND 20 IN CANAL TRUSTEES' RESUBDIVISION OF THE WEST 1/2 AND THE WEST 1/2 OF THE NORTHEAST QUARTER OF SECTION 17, TOWNSHIP 39 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO PLAT THEREOF RECORDED JANUARY 31, 1863 IN BOOK 161 of maps, page 75 AND RE-RECORDED DECEMBER 31, 1872 IN BOOK 3 OF PLATS, PAGES 65 AND 66 IN COOK COUNTY, ILLINOIS.

7831227 HMU 01

Parcel ID #: 17-17-301-032-0000, 17-17-301-046-0000

which has the address of 1512 W . POLK STREET CHICAGO [Street, City],
Illinois 60607 [Zip Code] ("Property Address");



BOX 333

EXHIBIT D

99797136

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over

this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to

EXHIBIT D

obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

09797136

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to

EXHIBIT D

99974136

Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless

EXHIBIT D

applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. Waiver of Homestead. Borrower waives all right of homestead exemption in the Property.

24. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☒ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ VA Rider | ☐ Other(s) [specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses: This instrument is executed by the Bridgeview Bank and Trust Co., not personally, but only as Trustee, and no personal liability is assumed by or shall be enforced against said Bridgeview Bank and Trust Co. because of or on account of the making of this instrument.

Bridgeview Bank & Trust Co. not personally, but as Trustee under Trust No. 1-2228
By [signature] Trust Officer (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

STATE OF ILLINOIS, County ss: COOK

I, Geraldine Gibbs, a Notary Public in and for said county and state do hereby certify that BRIDGEVIEW BANK AND TRUST COMPANY, AS TRUSTEE UNDER TRUST AGREEMENT DATED APRIL 24, 1993 AND KNOWN AS TRUST NUMBER 1-2228

, personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that they signed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this 10th day of August, 1999.

My Commission Expires: December 15, 2000

[signature: Geraldine Gibbs]
Notary Public

"OFFICIAL SEAL"
Geraldine Gibbs
Notary Public, State of Illinois
My Commission Expires 12/15/2000

99791736

EXHIBIT E

Order (Rev. 02/24/05) CCG N002

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

JP Morgan Chase

v.

Robert M Kowalski, et al.

No. 19 CH 5615

ORDER

This matter coming before the Court on the Motion of Martha Padilla, as an Unknown Owner and Non-Record Claimant for an extension of time to respond to the complaint, and FDIC's motion for leave advanced to this date, notice being given, parties being present, and the Court being advised,

IT IS HEREBY ORDERED:

Martha's motion is hereby withdrawn as Martha Padilla is not a named defendant.

Further FDIC's Motion for Leave to File an Appearance is granted

FDIC is substituted in for Royal Savings Bank FKA Washington Federal Bank for Savings

FDIC granted leave to file its appearance.

Attorney No.: 29558

Name: C. Wolvman / Swanson Martin & Bell

Atty. for: Martha Padilla

Address: 330 N. Wabash #3300

City/State/Zip: Chicago IL 60611

Telephone: 312/321-9100

ENTERED:

Dated: ______________ , ______

Judge Freddrenna M. Lyle

AUG 19 2019

Circuit Court-2064

Judge Judge's No.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

EXHIBIT F

Hearing Date: 9/11/2019 10:30 AM - 10:30 AM
Courtroom Number: N/A
Location: District 1 Court
Cook County, IL

FILED
8/22/2019 3:20 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH05615

FILED DATE: 8/22/2019 3:20 PM 2019CH05615

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – CHANCERY DIVISION**

JP MORGAN CHASE BANK, NATIONAL ASSOCIATION,

Plaintiff,

vs.

ROBERT KOWALSKI, AKA ROBERT M. KOWALSKI; CHICAGO TITLE LAND TRUST COMPANY S/I/I TO BRIDGEVIEW BANK GROUP FKA BRIDGEVIEW BANK AND TRUST COMPANY, AS TRUSTEE UNDER TRUST AGREEMENT DATED APRIL 24, 1993 AND KNOWN AS TRUST NUMBER 1-2228; FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR WASHINGTON FEDERAL BANK FOR SAVINGS; UNKNOWN OWNERS AND NON-RECORD CLAIMANTS,

Defendants.

Case No. 2019-CH-05615

**APPEARANCE**

The undersigned hereby enters the appearance of the law firm of Carlson Dash, LLC on behalf of the Federal Deposit Insurance Corporation, as Receiver for Washington Federal Bank for Savings.

CARLSON DASH, LLC

By:/s/ James M. Dash
One of Its Attorneys

CARLSON DASH, LLC
James M. Dash (jdash@carlsondash.com)
Justin K. Malenius (jmalenius@carlsondash.com)
216 S. Jefferson St., Ste 504
Chicago, IL 60661
Telephone: 312.382.1600
Firm ID: 48356

EXHIBIT F



## CERTIFICATE OF SERVICE

Under penalties as provided by law pursuant to Section 1-109 of Code of Civil Procedure, I, Kimberly Cox, a non-attorney, certify I served a true and correct copy of the foregoing **Appearance** on all parties listed below by electronic mail and by depositing the same in the U.S. Mail, proper postage pre-paid, on **August 22, 2019**, addressed as follows:

**Robert M. Kowalski**
1748 North Avenue
Chicago, IL 60622

**Martha Padilla**
c/o Christopher D. Wehrman
Swanson, Martin & Bell, LLP
330 N. Wabash, #3300
Chicago, IL 60611

**JP Morgan Chase Bank, National Association**
c/o Alan S. Kaufman
Manley Deas Kochalski LLC
One East Wacker, Suite 1250
Chicago, IL 60601

**Chicago Title Land Trust Company S/I/I To Bridgeview Bank Group FKA Bridgeview Bank and Trust Company, as Trustee Under Trust Agreement Dated April 24, 1993 and Known as Trust Number 1-2228**
10 S. LaSalle Street
Chicago, IL 60603

Kimberly Cox

SUBSCRIBED and SWORN to
before me this 22nd day of August, 2019

NOTARY PUBLIC

KAITLYN A NOONAN
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
March 22, 2023

180235