## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JP MORGAN CHASE BANK, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT KOWALSKI, ET AL. | ) | |
| Defendants | ) | |
| ——————————————— | ) | No. 19-cv-05770 |
| | ) | |
| MARTHA PADILLA, | ) | Judge Thomas M. Durkin |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST MIDWEST BANK, | ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM ORDER AND OPINION

JP Morgan Chase Bank filed a foreclosure action pursuant to Illinois law and named several defendants. One of those defendants, Martha Padilla, impleaded First Midwest Bank and filed a third-party complaint against it, alleging breach of fiduciary duty, breach of warranty, and negligent supervision. R. 33. First Midwest subsequently moved to dismiss Padilla's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). R. 54. For the following reasons, the Court grants First Midwest's motion.

1

## Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

Nearly 30 years ago, Robert Kowalski became the beneficial owner of real property at 1512 W. Polk in Chicago, Illinois. R. 33 at 10. He placed title to the

property in a Land Trust agreement with Bridgeview Bank and Trust Company.[1] *Id.*
at 11. Several years later, in 1997, Kowalski amended the Land Trust agreement to
add Padilla, his wife at the time, as a co-beneficial owner. *Id.*

Padilla alleges that as a beneficial owner, she had power of direction over the
property along with Kowalski. *Id.* Bridgeview Bank, as the Land Trust trustee, could
therefore transfer title to the property or grant a security interest over the property
only with written direction from both Padilla and Kowalski. *Id.* But according to
Padilla, Bridgeview Bank acted without her written direction on at least five separate
occasions. *Id.* at 12-15.

First, Padilla alleges that in 1998, Bridgeview Bank executed a mortgage on
the property in favor of Washington Mutual Bank ("WMB Mortgage"), as well as a
promissory note and land trust rider. *Id.* at 12. A copy of the rider is attached to
Padilla's third-party complaint, and provides in relevant part: "This Security
Instrument is executed by Bridgeview Bank and Trust Company . . . as Trustee . . .
[and] hereby warrants that [Bridgeview Bank and Trust Company] possesses full
power and authority to execute this instrument." R. 33-1 at 17. According to Padilla,
this statement was incorrect because Bridgeview Bank never received a properly
executed letter of direction from her authorizing the WMB Mortgage or related

---

[1] According to Padilla's third-party complaint, Bridgeview Bank and Trust Company
transferred the Land Trust to Bridgeview Bank Group at an unknown point in time.
For purposes of this opinion, the Court collectively refers to Bridgeview Bank Group
and Bridgeview Bank and Trust Company as Bridgeview Bank. Padilla's complaint
also alleges that Bridgeview Bank transferred the Land Trust to Chicago Title Land
Trust Company after the events giving rise to her third-party complaint.

instruments. R. 33 at 12. Padilla also alleges that Bridgeview Bank never notified her of the mortgage at any point in time. *Id*.

A year after the WMB Mortgage was executed, Bridgeview Bank executed another mortgage on the property, this time in favor of Washington Federal Bank for Savings ("WFB Mortgage"). *Id*. at 13; R. 33-1 at 27-32. According to Padilla, Bridgeview Bank neither received a properly executed letter of direction from her authorizing the WFB Mortgage, nor notified her of the mortgage before or after its execution. R. 33 at 13.

Finally, Padilla alleges that Bridgeview Bank modified the WFB Mortgage in 2000, 2004, and 2007, in each case without first receiving a properly executed letter of direction from her. *Id*. at 13-14. The modifications extended additional credit to the mortgagee, and Bridgeview Bank represented in each modification that it had the "full legal power, right and authority to execute th[e] Modification and mortgage, pledge and convey the Fee Simple estate." *Id*.

Padilla says that the first time she learned of the WFB Mortgage and accompanying modifications was during Kowalski's bankruptcy proceeding, though she does not provide a specific date. *Id*. at 15. She also says that the first time she learned of the WMB Mortgage was when JP Morgan Chase Bank, as successor to Washington Mutual Bank, filed the underlying foreclosure action in May 2019. *Id*. at 12-13. Padilla now seeks to hold First Midwest accountable for Bridgeview Bank's actions through her third-party complaint because First Midwest acquired Bridgeview Bank's assets in 2019. *Id*. at 10. To that end, she asserts three claims

4

under Illinois law: breach of fiduciary duty, breach of warranty, and negligent supervision. First Midwest moved to dismiss Padilla's complaint, arguing, among other things, that each claim is barred by the applicable statutes of limitation. For the reasons discussed below, the Court agrees.

## Discussion

### A. Breach of Fiduciary Duty Claim

In support of her breach of fiduciary duty claim, Padilla alleges that Bridgeview executed the WMB and WFB mortgages and the modifications before reviewing the Land Trust agreement and before receiving properly executed letters of direction from her. *See* R. 33 at 15-16. She complains that she is injured because the property is now encumbered by two mortgages that she never approved. *Id.* at 16. Padilla argues that she has sustained damages to the extent that she is required to repay all, or any portion, of the mortgages. *Id.* at 16.

But under Illinois law, "a breach of fiduciary duty claim must be brought within five years after the cause of action accrued." *Fuller Family Holdings, LLC v. N. Tr. Co.*, 863 N.E.2d 743, 756 (Ill. App. Ct. 2007) (citing 735 ILCS 5/13–205); *see also Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1337 (7th Cir. 1992) (applying five-year limitations period to breach of fiduciary duty claim). Accrual occurs—and the clock starts to run—when "the injured person becomes possessed of sufficient information concerning [her] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Knox Coll. v. Celotex*

*Corp.*, 430 N.E.2d 976, 980–81 (Ill. 1981); *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009).

Padilla alleges that she first learned about the WFB Mortgage during Kowalski's bankruptcy proceedings and the WMB Mortgage when JP Morgan Chase filed the underlying foreclosure action in 2019. *See* Dkt. 33 ¶¶ 14, 27. According to Padilla, her fiduciary duty claim is therefore timely because she brought it within five years of learning about the mortgages. But Padilla's own pleadings confirm that her window to bring the claim closed years ago. Indeed, the 2004 Modification to the WFB Mortgage contains an extension agreement which bears Padilla's signature and specifically states that the underlying debt is secured by the WFB Mortgage. *See* R. 33-1 at 45 (noting that "Borrower has requested that Lender increase the Loan amount and grant an additional advance to the Borrower in the sum of $156,284.92 to be secured by the existing *Mortgage*") (emphasis added).[2] Padilla learned about the WFB Mortgage, then, in 2004 when she signed a document that explicitly referred to it.

To be sure, the 2004 Modification to the WFB Mortgage did not expressly mention the WMB Mortgage. Nor did it inform Padilla that she had a breach of fiduciary claim against Bridgeview Bank. But for accrual purposes, that is beside the point. As stated, accrual begins when a person possesses sufficient information about an injury and its cause to inquire further. *See Knox Coll.*, 430 N.E.2d at 980–81; *In*

---

[2] The 2007 Modification to the WFB Mortgage also bears Padilla's signature and states substantially similar language. *See* R. 33-1 at 55-58.

*re marchFIRST Inc.*, 589 F.3d at 904 ("A plaintiff's knowledge that his injury was wrongfully caused does not necessarily mean knowledge of actionable conduct."). The 2004 Modification document that Padilla signed expressly referred to the injury of which Padilla now complains: the WFB Mortgage. She therefore had sufficient information in 2004 "to put a reasonable person on inquiry to determine whether actionable conduct [was] involved." *Knox Coll.*, 430 N.E.2d at 980–81; *see also Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 2015 WL 5062823, at *3 (N.D. Ill. Aug. 26, 2015) (finding that accrual began on plaintiff's fiduciary duty claim when she received a letter from defendant that described her injury).

Padilla's arguments to the contrary are unpersuasive. Padilla argues first that she did not sign the mortgages or any letters authorizing the mortgages so she could not have known about them. R. 64 at 6. But even assuming that is true, as the law requires at this stage in the proceedings, Padilla does not deny in her third-party complaint signing the modification documents in 2004 and 2007. *See id*. And as explained above, those modifications sufficiently informed her of the WFB Mortgage. The clock therefore started to run on her breach of fiduciary duty claim in 2004 even if she did not previously sign the mortgages or authorization letters.

Padilla argues next that "[w]hen a cause of action arises from fraud, particularly in cases involving a fiduciary relationship, the statute of limitations will not begin to run . . . until the fraud is discovered or until such time as it could have been discovered by the exercise of reasonable diligence." R. 64 at 7. She further argues that a "duty is imposed on the party committing the fraud to disclose the truth to the

other." *Id.* The problem for Padilla, however, is that no allegation concerning fraud appears in her third-party complaint. Further to this point, Padilla does not allege or otherwise argue that Bridgeview Bank or anyone else forged her signature on the 2004 WFB Modification document. The Court accordingly finds her fraud argument to be lacking.

Finally, the Court recognizes that "the running of the statute of limitations is an affirmative defense, and as such plaintiffs are not required to negate it in their complaints." *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003). Furthermore, the "issue of when a plaintiff knew or should have known that [s]he has been injured is generally a question of fact." *Draper v. Pickus*, 2007 WL 809679, at *4 (N.D. Ill. Mar. 15, 2007). But a plaintiff can plead herself out of court when she alleges "facts that affirmatively show that h[er] suit is time barred." *Id.* (citations omitted). Such is the case here. The modification documents attached to Padilla's third-party complaint affirmatively show that accrual began in 2004. Her breach of fiduciary duty claim is accordingly dismissed.

## B. Breach of Warranty Claim

Padilla's breach of warranty claim is based on the allegation that Bridgeview Bank falsely warranted that it "had the full power and authority to execute" the mortgage-related contracts. R. 33 at 16-17. In response, First National argues that Padilla's claim should be dismissed because she lacks standing to bring it and because it is barred by the statute of limitations.

The Court turns to the standing argument first. "Under Illinois law, a cause of action based on a contract may be brought only by a party to that contract, by someone in privity with such a party, or by an intended third-party beneficiary of the contract." *Kaplan v. Shure Bros.*, 266 F.3d 598, 602 (7th Cir. 2001) (internal citations omitted). Privity of contract has been defined as "mutual or successive relationship to the same rights of property." *Collins Co. v. Carboline Co.*, 532 N.E.2d 834, 839 (1988). An intended third-party beneficiary to a contract "must clearly show that such benefit was not purely incidental but that the contract was made for his direct benefit." *White Hen Pantry, Inc. v. Cha*, 574 N.E.2d 104, 109 (Ill. App. 1991)

Here, Padilla does not argue that she was a party to the relevant contracts, in privity with a party to the contracts, or an intended third-party beneficiary of the contracts. In fact, Padilla asserts that she has "no standing to enforce the contracts." R. 64 at 10. She argues instead that "she seeks to invalidate [the contracts]" and that she has "standing to bring her breach of warranty claim" by "virtue of her interest as a beneficiary of the Land Trust." *Id*. But Padilla does not explain how she seeks to invalidate contracts through a breach of warranty claim. Nor does she clarify how she can disclaim standing to sue on the same set of contracts that she also seeks to invalidate.

In any event, the Court does not need to resolve the standing issue because Padilla's breach of warranty claim is barred by the statute of limitations. Illinois law provides that "actions on . . . written contracts" must commence within 10 years after the action accrued, 735 ILCS 5/13-206, and accrual traditionally occurs "at the time

of the breach." *Ind. Ins. Co. v. Machon & Machon, Inc.*, 753 N.E.2d 442, 445 (Ill. App. Ct. 2001). The claim here is based on statements appearing in four written contracts that were executed in 1998, 2000, 2004 and 2007. *See* R. 33 at 12-14. Because the time of execution and the time of breach are the same in this case, and because each contract was executed more than 10 years after Padilla filed her complaint, her breach of warranty claim is dismissed.

## C. Negligent Supervision Claim

Padilla's final claim is that Bridgeview negligently supervised its employees by failing to ensure that they executed documents on behalf of the Land Trust only when properly authorized to do so. R. 33 at 17. First Midwest argues that the claim is barred by the *Moorman* doctrine, which prevents tort recovery for purely economic losses arising out of a failure to perform contractual obligations. *See* R. 54 at 16-17 (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448–49 (Ill. 1982)). First Midwest points to *Wigod v. Wells Fargo Bank, N.A.*, where the Seventh Circuit specifically said that the *Moorman* doctrine precludes liability for negligent supervision. 673 F.3d 547, 567 (7th Cir. 2012).

Padilla responds that her claim is not barred because one of the exceptions to the *Moorman* doctrine applies; that is, the exception for service providers where the tort duty is extracontractual. *See* R. 64 at 12. Padilla says that Bridgeview Bank owed her an extracontractual fiduciary duty as a service provider not to execute documents on behalf of the Land Trust without her authorization. *See id*. First Midwest counters that it is irrelevant whether Bridgeview Bank also had a fiduciary duty to Padilla

because the "duty to supervise does not fall within one of the exceptions to *Moorman*." R. 70 at 10.

The Court need not resolve this dispute because like Padilla's first two claims, her negligent supervision claim is also barred by the statute of limitations. As described above, the WBM Mortgage, the WFB Mortgage, and the modifications thereto were executed in 1998, 1999, 2000, 2004, and 2007, and she learned of the WFB Mortgage in 2004. Whether Padilla's negligent supervision claim is governed by 735 ILCS 5/13–202, which bars personal injury actions two years after discovering the injury, or 735 ILCS 5/13–205, which requires actions to be brought within five years from discovery, her claim is stale because she brought it in 2019.

Padilla's negligent supervision claim is accordingly dismissed.

## Conclusion

For all these reasons, the Court grants First Midwest's motion to dismiss, R. 54. Because Padilla cannot remedy the defects in her third-party complaint related to timeliness, her claims for breach of fiduciary duty, breach of warranty, and negligent supervision are dismissed with prejudice. The telephone status hearing scheduled for November 30, 2020 is vacated in light of the parties' upcoming status hearing with Magistrate Judge McShain on December 8, 2020.

ENTERED:

_Thomas M Durkin_
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: November 4, 2020

11