**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, | ) |
| | ) |
| | ) Case No. 19-CV-5770 |
| Plaintiff, | ) |
| v. | ) Honorable Thomas M. Durkin |
| | ) |
| ROBERT KOWALSKI, et. al, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| MARTHA PADILLA, | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| v. | ) |
| | ) |
| FIRST MIDWEST BANK, AS SUCCESSOR IN INTEREST TO BRIDGEVIEW BANK AND TRUST, | ) |
| | ) |
| | ) |
| Third-Party Defendant. | ) |
| | ) |

**FIRST MIDWEST BANK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO DISMISS PADILLA'S FIRST AMENDED THIRD-PARTY COMPLAINT**

Third-Party Defendant, First Midwest Bank, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(h)(3), and 12(b)(6), respectfully submits the following Memorandum of Law in Support of its Motion to Dismiss Padilla's First Amended Third-Party Complaint (Dkt. 121).

## I. PRELIMINARY STATEMENT

Padilla's First Amended Third-Party Complaint ("Amended Complaint") should be dismissed in its entirety, with prejudice. Padilla is seeking damages against First Midwest Bank ("First Midwest") under a single theory of liability, *e.g.,* breach of fiduciary duty. Padilla's Amended Complaint should be dismissed for the same reason as the original Third-Party Complaint: the pleading establishes that Padilla's claim is time barred, and Padilla lacks standing to bring a cause of action against First Midwest.

The allegations contained in the Amended Complaint, the exhibits attached to the Amended Complaint, and public documents of which this Court can take judicial notice establish that Padilla had actual knowledge of her claim outside the statute of limitations period. Tellingly, Padilla was **personally** served on October 25, 2005, with summons and a copy of the WMB Mortgage (as defined below) in a 2005 mortgage foreclosure action filed by HomeComing Financial Network, Inc.[1] This fact is fatal to Padilla's cause of action. There can be no doubt that Padilla had actual knowledge of the mortgage encumbrances when she: (i) was personally served on October 25, 2005, with summons and a copy of the WMB Mortgage; (*See,* Ex. A -C); (ii) executed the 2004 Note Modification (as defined below); (iii) executed the 2007 Note Modification (as defined below); and (iv) attached the sworn statement of Jeannine Johnson indicating that Padilla was present when the 2007 Mortgage Modification was executed. (Dkt. 121-7).

In addition to having actual knowledge, Padilla had record notice of the Property's encumbrances since the mortgages were publicly recorded in the Cook County Recorder of Deeds outside the limitations period. Padilla cannot possibly plead around this fact. Padilla alleges to have had the power of direction over the Trust. (Dkt. 121 at ¶ 7). Holders of the power of direction owe fiduciary duties to all other holders of the beneficial interest (here, Robert Kowalski and Padilla as tenants by the entirety). Thus, Padilla had a duty to keep herself apprised of all publicly recorded encumbrances on the Trust's sole asset.

And finally, in addition to being time barred, Padilla lacks standing to sue First Midwest for breach of fiduciary duty. A trustee of a land trust owes duties, if any, to the holder(s) of the beneficial interest in a land trust. Here, the documents attached to the Amended Complaint show

---

[1] A true and correct copy of the mortgage foreclosure complaint is attached hereto and incorporated herein as **Exhibit A**. A true and correct certified copy of the docket sheet from the foreclosure action is attached hereto and incorporated herein as **Exhibit B**. A true and correct copy of the mortgage foreclosure summons, affidavit of special process server and field sheet are attached hereto and incorporated herein as **Exhibit C**.

that Padilla did **_not_** hold a beneficial interest in the Trust. On the contrary, the beneficial interest was held in a tenancy by the entirety – a separate, indivisible legal entity. Because the trustee did not owe fiduciary duties to Padilla individually, Padilla lacks standing to sue the Trust[2] individually. According to Exhibit B of the Amended Complaint, Kowalski assigned his beneficial interest in the Trust to "ROBERT M. KOWALSKI and MARTHA PADILLA, HIS WIFE, AS TENANTS BY THE ENTIRETY, NOT AS JOINT TENANTS AND NOT AS TENANTS IN COMMON." (Dkt. 121, Ex. B). As such, since Padilla did not receive a beneficial interest in the Trust, she cannot bring a cause of action against the Trust for breach of fiduciary duty. Accordingly, the Court should dismiss Padilla's Amended Complaint, with prejudice.

## II. APPLICABLE LAW

A motion to dismiss under Rule 12(b)(1) challenges subject matter jurisdiction. FED. R. CIV. P. 12(b)(1); *see also* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Standing is an essential component of subject matter jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). A plaintiff bears the burden of establishing standing. *Id.* A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept as true all well-pleaded allegations in a complaint, it need not accept legal conclusions as true. *Id.* Similarly, "threadbare recitals of the elements of a

---

[2] Trust shall refer to that certain land trust known as Bridgeview Bank and Trust Company, as Trustee Under Trust Agreement Dated April 24, 1993 and Known as Trust Number 1-1228, the record title owner of the property commonly known as 1512 Polk Street, Chicago, Illinois 60607.

cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"At the dismissal stage, the court is typically confined to the pleadings alone, but '[i]t is ... well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'" *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013) (quoting *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (internal quotations omitted). To the extent that a document attached to a complaint is inconsistent with the complaint's allegations, the attachment controls. *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999). Accordingly, "[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Id.*

## III. FACTUAL BACKGROUND

### A. THE PROPERTY AND THE TRUST

This lawsuit concerns the Property, which is commonly known as 1512 Polk Street, Chicago, IL 60607 ("Property"). In 1993, Padilla's then-husband Kowalski placed title to the Property in the Trust – a land trust, under the trust agreement dated April 24, 1993 and known as Trust No. 1-2228. (Dkt. 121 at ¶ 3). Padilla alleges that, on September 5, 1997, the Trust documents were amended to add her as a beneficial owner of the Trust, such that she and Kowalski had power of direction over the Trust. (*Id.* at ¶¶ 6-7).

Bridgeview Bank and Trust Company originally served as trustee to the Trust. (Dkt. 121 at ¶ 3). Padilla alleges the Trust was eventually transferred to Bridgeview Bank Group, formerly known as Bridgeview Bank and Trust Company. (*Id.* at ¶ 4).[3] In 2010, Chicago Title Land Trust Company ("Chicago Title") purchased Bridgeview Bank's trust division. (*Id.*). In 2019, nearly

---

[3] First Midwest shall refer to Bridgeview Bank and Trust Company and Bridgeview Bank Group collectively as "Bridgeview Bank" or "Bridgeview."

ten years after last conducting any trust-related business, Bridgeview Bank was purchased by First Midwest Bank. (*See, e.g.*, *id.*). Because Bridgeview Bank sold its trust division to Chicago Title in 2010, and was not conducting any trust business by 2019, First Midwest did *not* purchase any trust business. Nevertheless, Padilla has sued First Midwest over *Bridgeview Bank's* handling of the Trust and mortgages related to the Trust, all of which occurred more than 10 years ago.

### B.    THE WASHINGTON MUTUAL BANK MORTGAGE AND RIDER

Padilla alleges that, on or about May 8, 1998, Bridgeview Bank (as trustee of the Trust) executed a mortgage (the "WMB Mortgage") and accompanying rider (the "Rider") on the Property in favor of Washington Mutual Bank. (Dkt. 121 at ¶¶ 10-11). Padilla claims that she did not know of the WMB Mortgage or Rider until May 2019, when she was served with JP Morgan Chase's foreclosure action against the Property. (*Id.* at ¶ 14). Yet, the WMB Mortgage and Rider were properly recorded against the Property on May 18, 1998 in the Cook County Recorder of Deeds as Document Number 98410464. (Dkt. 121-3 at 2), *and Padilla was personally served with a copy of the WMB Mortgage on October 25, 2007.* (See Exhibits A-C).

### C.    THE WASHINGTON FEDERAL BANK MORTGAGE AND MODIFICATIONS

#### i.    THE WFB MORTGAGE

On August 10, 1999, Bridgeview Bank (as trustee of the Trust) executed a mortgage (the "WFB Mortgage") on the Property in favor of Washington Federal Bank for Savings ("Washington Federal Bank" or "Washington Federal"). (Dkt. 121 at ¶ 15; Dkt. 121-4 at 2). The WFB Mortgage was properly recorded on August 20, 1999 in the Cook County Recorder of Deeds as Document Number 99797136. (Dkt. 121-4 at 2).

#### ii.    THE 2000 MORTGAGE MODIFICATION

On July 28, 2000, Bridgeview Bank (as trustee of the Trust) executed a modification of the WFB Mortgage (the "2000 Mortgage Modification"). (Dkt. 121 at ¶ 18). The parties to the 2000

5

Mortgage Modification were (i) Washington Federal Bank (as Mortgagee), and (ii) Bridgeview Bank as Trustee of the Trust (as Mortgagor). (Dkt. 121-5 at 2). The 2000 Mortgage Modification was properly recorded on November 27, 2000 in the Cook County Recorder of Deeds as Document Number 00926448. (*Id.*).

### iii. THE 2004 MORTGAGE MODIFICATION AND NOTE MODIFICATION

On November 1, 2004, Bridgeview (as trustee of the Trust) executed a second modification of the WFB Mortgage (the "2004 Mortgage Modification"). (Dkt. 121 at ¶ 21). The parties to the 2004 Mortgage Modification were (i) Washington Federal Bank (as Mortgagee), and (ii) Bridgeview Bank as trustee of the Trust (as Mortgagor). (Dkt. 121-6 at 2). The 2004 Mortgage Modification was properly recorded on February 1, 2005 in the Cook County Recorder of Deeds as Document Number 0503233116. (*Id.*).

On November 1, 2004, Washington Federal Bank, Kowalski, *and Padilla* entered into an extension of the August 10, 1999 note ("2004 Note Modification"). (Dkt. 121-6 at 7). The signatures to the 2004 Note Modification were attested to by Van B. Tran. (*Id.*). The 2004 Note Modification, *which Padilla signed*, explicitly acknowledged that the WFB Mortgage secured the indebtedness owed from Padilla and Kowalski to Washington Federal. Accordingly, Padilla knew of the WFB Mortgage by November 1, 2004, when she executed the 2004 Note Modification.

### iv. THE 2007 MORTGAGE MODIFICATION AND NOTE MODIFICATION

On July 31, 2007, Bridgeview Bank (as trustee of the Trust) executed a third modification of the WFB Mortgage (the "2007 Mortgage Modification"). (Dkt. 121 at ¶ 28). The parties to the 2007 Mortgage Modification were (i) Washington Federal Bank (as Mortgagee), and (ii) Bridgeview Bank as trustee of the Trust (as Mortgagor). (Dkt. 121-7 at 2). The 2007 Mortgage Modification was properly recorded on June 11, 2008 in the Cook County Recorder of Deeds as Document Number 0816333206. (*Id.*). Importantly, attached to the 2007 Mortgage Modification

is the certification of a notary public, Jeannine D. Johnson, who certified that *Padilla appeared before her at the signing of the 2007 Mortgage Modification* on July 31, 2007.[4] (*Id.* at 5).

On the very same day – July 31, 2007 – Washington Federal Bank, Kowalski, *and Padilla* executed a change in terms agreement which increased the underlying indebtedness secured by the WFB Mortgage ("2007 Note Modification"). (Dkt. 121-7 at 7-9). The signatures to the 2007 Note Modification were attested to by Jane V. Tran. (*Id.* at 7). The 2007 Note Modification, *which Padilla signed*, explicitly acknowledged that the WFM Mortgage secured the indebtedness owed from Padilla and Kowalski. (*Id.* at 7). Accordingly, Padilla knew of the WFB Mortgage by July 31, 2007 (at the very latest), when she executed the 2007 Note Modification.

### IV.    PROCEDURAL BACKGROUND

In May 2019, Plaintiff JP Morgan sued in the Circuit Court of Cook County to foreclose on the Property. In August 2019, Defendant Federal Deposit Insurance Corporation removed the action to this Court. (Dkt. 1). On February 6, 2020, Padilla impleaded First Midwest by way of her original Third-Party Complaint against First Midwest. (Dkt. 33 at 10-18). Padilla alleged that First Midwest breached its fiduciary duties to her, breached warranties on certain mortgages, and negligently supervised its employees. (*Id.*). On May 28, 2020, First Midwest moved to dismiss the Third-Party Complaint, raising several arguments, including that Padilla's pleading was time-barred. (Dkt. 54). On November 4, 2020, the Court ruled on First Midwest's Motion to Dismiss and adopted First Midwest's argument that Padilla's signature on the 2004 and 2007 note extensions/modifications established First Midwest's statute of limitations defense. On November 4, 2020, the Court dismissed the Third-Party Complaint, with prejudice, "[b]ecause Padilla cannot remedy the defects in her third-party complaint related to timeliness...." (Dkt. 98 at 11). The

---

[4] Ms. Johnson was an employee of Bridgeview.

Court did not rule on First Midwest's argument that Padilla was on record notice.

Padilla moved for reconsideration of the with-prejudice dismissal. The Court granted her leave to file an amended pleading. On March 19, 2021, Padilla filed the Amended Complaint against First Midwest, dropping her claims for negligent supervision and breach of warranty, and focusing solely on her breach of fiduciary duty claim. (Dkt. 121). Padilla's breach of fiduciary duty claim is largely the same as in the original Third-Party Complaint, but Padilla adds several forgery allegations in the hope that those allegations will prohibit dismissal.

## V. ARGUMENT

### A. PADILLA'S BREACH OF FIDUCIARY DUTY CLAIM IS TIME BARRED

Padilla's claim for breach of fiduciary duty is time barred. Padilla contends that Bridgeview Bank breached its fiduciary duty to her by purportedly failing to obtain her authorization before executing certain mortgages and modifications. (Dkt. 121 at ¶ 43). According to Padilla, she suffered injury because the Property was encumbered by two mortgages without her knowledge and/or consent. (*Id.* at ¶ 44). Breach of fiduciary duty is "subject to a five-year statute of limitations, measured from the accrual of the cause of action." *Clark*, 142 F. Supp. 2d at 1074–75 (N.D. Ill. 2001) (citing 735 ILCS 5/13-205). Illinois "tolls the statute of limitations until the plaintiff knew or reasonably should have known that he has been injured and that his injury was wrongfully caused." *Id.* at 1075. However, the public records and the exhibits Padilla attaches to the Amended Complaint establish that Padilla had actual knowledge of the encumbrances on the Property (and, thus, of her alleged injury) more than five years ago. Padilla was also on constructive notice of the encumbrances because they were each publicly recorded far outside the limitations period. As such, Padilla's claim is time barred.

### i. Padilla Had Actual Notice of Encumbrances on the Property

Padilla's claim is barred because she had actual knowledge of the encumbrances against

the Property more than five years before she sued First Midwest. In 2005, HomeComings Financial Network, Inc. filed a foreclosure action in the Circuit Court of Cook County (Case No. 05-CH-12978) seeking to foreclose against the WMB Mortgage and named Padilla as a party. (See, Ex. A). As the October 31, 2005 docket entry from the foreclosure action shows, a Special Process Server personally served Padilla with summons and a copy of the complaint. (See, Ex. B). The affidavit of service indicates that Padilla was served on October 25, 2005 at 1:00 p.m. The process server's field sheet indicates that he served a white-female approximately 40 years of age, and Padilla ***signed*** the field sheet. (*See*, Ex. C). Accordingly, there is no question that Padilla had actual notice of the WMB Mortgage by 2005, at the latest.[5]

In addition, the exhibits to Padilla's own pleading establish that she had actual notice of the encumbrances outside of the limitation period. Padilla alleges that she first became aware that Bridgeview Bank had executed the WMB and WFB Mortgages during Kowalski's bankruptcy proceeding in 2018. (Dkt. 121 at ¶ 35). For purposes of a motion to dismiss, however, the exhibits to a complaint control over any contradictory allegations within the complaint. *Ogden Martin*, 179 F.3d at 529. As explained more specifically below, the exhibits Padilla attaches to the Amended Complaint unequivocally establish that she had actual knowledge that the Property was encumbered when: (i) she executed the 2004 Note Extension; (ii) she attached the sworn statement of Jeannine Johnson indicating that Padilla appeared and acknowledged the execution of the 2007 Mortgage Modification; and (iii) she executed the 2007 Note Modification.

On November 1, 2004, the Trust executed the 2004 Mortgage Modification with

---

[5] On a Rule 12(b)(6) motion, the Court may take judicial notice of the filings from the foreclosure action without converting it into a summary judgment motion. *See Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994) (holding that the "district court properly considered the public court documents [filed in an earlier state case] in deciding the defendants' motions to dismiss...."); *see also In the Matter of Gorokhovsky*, No 17-28901-BEH, 2018 WL 3325716, at *2 (Bankr. E.D. Wis. July 5, 2018) (holding that district courts "may take judicial notice of the state court docket under Federal Rule of Evidence 201.").

Washington Federal Bank. (Dkt. 121-6 at 2). On the same date, as part of the 2004 Mortgage Modification, Kowalski *and Padilla* executed the 2004 Note Modification – an increase of the underlying indebtedness secured by the WFB Mortgage. (*Id.* at 7). The 2004 Note Modification acknowledges that the WFB Mortgage secured the indebtedness Padilla and Kowalski owed:

> WHEREAS, on or about August 10, 1999, Lender [Washington Federal] and Borrower [Kowalski and Padilla] entered into a loan agreement ("Loan") whereby Lender lent to Borrower the sum of FOUR HUNDRED THOUSAND AND NO/100 DOLLARS, ($400,000.00), ("Loan Amount") as evidenced by a note secured by a certain Mortgage ("**Mortgage**") from Borrower . . . recorded in the Recorder of Deeds of Cook County Illinois on August 20, 1999 as Document No. 99797136.
>
> *   *   *
>
> WHEREAS, Borrower has requested that lender extend the Maturity Date of the loan, evidenced by the note and secured by the **mortgage**;
>
> *   *   *
>
> All other terms of the Note and Mortgage, not heretofore modified, shall remain in full force and effect. The Borrower [Kowalski and Padilla] agrees to continue to perform all of the covenants of the Borrower and Mortgagor under the terms of the original note and **mortgage**.

(*Id.*) (emphasis added). Because Padilla signed this document, she had actual knowledge of her alleged injury (*i.e.*, an encumbrance on the property) by 2004, at the latest.

Similarly, on July 31, 2007, the Trust executed the 2007 Mortgage Modification with Washington Federal Bank. (Dkt. 121-7 at 2). Padilla attaches as an exhibit to the Amended Complaint the certification of a notary public, Jeannine D. Johnson, establishing that *Padilla appeared before her at the signing of the 2007 Mortgage Modification* that day. (*Id.* at 5). **There is no allegation that Ms. Johnson's sworn statement attached to the Amended Complaint is false.** Also on July 31, 2007, and as part of the 2007 Mortgage Modification, Kowalski and Padilla executed the 2007 Note Modification, which increased the underlying indebtedness secured by the WFB Mortgage. (*Id.* at 7). The 2007 Note Modification specifically acknowledges that the indebtedness Padilla and Kowalski owed was secured by the WFB Mortgage:

> WHERAS, Borrower has requested that Lender increase the Loan amount and grant an

10

additional advance to the Borrower in the sum of $31,000.00, to be secured by the existing **Mortgage**....

&ast;  &ast;  &ast;

That as of July 31, 2007, the amount secured by the **Mortgage** from Borrower to Lender, shall be deemed to be the principal sum of $637,219.63.

(*Id.* at 9-10) (emphasis added). Padilla signed this document, so she had actual knowledge of her alleged injury by 2007, if not earlier. Because Padilla had actual knowledge of her alleged injury by 2004, her claim is barred by the five-year statute of limitations. The Amended Complaint should, thus, be dismissed under Rule 12(b)(6) for the same reason as the original Third-Party Complaint.[6] (*See* Dkt. 98).

### ii. Padilla's Forgery Allegations Do Not Prevent Dismissal

In the hopes of avoiding dismissal on the same basis as the original Third-Party Complaint, Padilla adds new allegations that someone forged her signatures on the 2004 Note Modification and the 2007 Note Modification. (Dkt. 121 at ¶¶ 24-27, 31-24). These new forgery allegations do not, however, forestall dismissal. Exhibits to a pleading control over inconsistent allegations within the pleading. *Ogden Martin*, 179 F.3d at 529. Padilla's forgery allegations should not avoid this Court's dismissal of Padilla's Amended Complaint. Padilla's forgery allegations are not well-pleaded under Rule 9. "Forgery is a form of fraud, ... and fraud alleged in a suit in a federal court must be pleaded with particularity...." *Johnson v. Pushpin Holdings, LLC*, 821 F.3d 871, 876 (7th Cir. 2016). Even where the claim itself is not fraud-based, Rule 9 applies to any factual averments of fraudulent conduct. *Borsellino*, 477 F.3d 502, 507 (7th Cir. 2007). Satisfying

---

[6] Padilla's actual knowledge of a single encumbrance (the WFB Mortgage) bars her *entire* breach of fiduciary duty claim – not merely the portion relating to the WFB Mortgage. Although Padilla alleges that the Property was also improperly encumbered by the WMB Mortgage, *all* the encumbrances arise out of the same nucleus of operative facts and, thus, constitute the same injury. (The number of encumbrances goes to the extent of the alleged injury, not whether there are multiple claims.) Also, actual knowledge of the WFB Mortgage gave rise to a duty to investigate whether there were any other encumbrances on the Property, and, thus, placed Padilla on inquiry notice of the WMB Mortgage. (*See* Dkt. 98 at 6-7).

Rule 9 means providing the "'the who, what, when, where, and how.'" *Id.*

Padilla fails to supply these facts. Instead, Padilla alleges, "Upon information and belief, Kowalski, or someone acting at his direction, signed Padilla's name…." (Dkt. 121 at ¶¶ 25, 27, 32, 34). Allegations based on "information and belief" typically do not satisfy Rule 9. But when pleading on information and belief, "[e]ven with limited information, we expect plaintiffs to attempt to describe the 'who, what, when, where, and how' of the fraud, so that opposing parties can respond effectively." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 949 (7th Cir. 2013). Padilla manifestly has not satisfied this standard. Indeed, she does not even attempt to allege the "when, where, and how." As to the "who," Padilla alleges that the forger could have been Kowalski "or someone acting at his direction"; that is, it could have been *any* person besides Padilla. (Dkt. 121 at ¶¶ 25, 27, 32, 34). In *Beyrer*, the Seventh Circuit held that even a much narrower allegation – that "CSB and/or Mr. Savoree made the [fraudulent] promise" – did not satisfy the "who" aspect of Rule 9, even though the plaintiff suffered information asymmetries. 722 F.3d at 949. If an allegation suggesting only two possible parties does not satisfy Rule 9, Padilla's allegations – which lack any information whatsoever – certainly do not suffice.

Because Padilla's allegations of forgery do not meet the heightened pleading standard of Rule 9, they are not "well-pleaded" and the Court need not take them as true for purposes of a Rule 12(b)(6) motion to dismiss. This leaves things exactly where they were when the Court dismissed the original Third-Party Complaint – *i.e.*, without any allegations of forgery. Moreover, Padilla's allegations of forgery do not explain away the certification of the notary public attached to the Amended Complaint establishing that Padilla was *present at the signing of the 2007 Mortgage Modification*[7] (Dkt. 121-7 at 2). The Court must take as true exhibits attached to a complaint over

---

[7] Nor does it explain away the fact that Padilla was personally served with the WMB Mortgage as part of a 2005 foreclosure action. (See, Exhibits A-C).

the allegations contained in the complaint. In this case, Padilla attached to her pleading a sworn statement that indicates that she was present when the 2007 Mortgage Modification was executed. This statement must be taken as true. In fact, Padilla does not even attempt to refute the sworn statement contained in her own pleading. This, in itself, establishes Padilla's actual knowledge of the encumbrances on the Property, whether or not Padilla actually signed the Note Modifications.

### iii.     Padilla Had Constructive Notice of the Encumbrances on the Property

Even if Padilla did not have actual notice of the encumbrances on the Property (which she did) Padilla certainly had constructive notice. A party knows or should know of an injury when the party "possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct had occurred." *Janousek v. Katten Muchin Rosenman LLP*, 2015 IL App (1st) 142989, ¶ 13. "When a party knew or reasonably should have known his or her injury was wrongfully caused raises a question of fact, unless only one conclusion can be drawn at some particular point from undisputed facts." *Id.* Here, the sole possible conclusion that can be drawn from the Amended Complaint is that Padilla knew or should have known of the encumbrances on the Property far outside the limitations period.

The WMB Mortgage, WFB Mortgage, 2000 Mortgage Modification, 2004 Mortgage Modification, and 2007 Mortgage Modification were each publicly recorded in the Cook County Recorder of Deeds between 1998 and 2008. (*See supra*). "Public records operate as constructive notice to those persons ... who, for their own protection, are bound to search for them." *Garrett v. Simpson*, 115 Ill. App. 62, 64 (1st Dist. 1904). For several reasons, Padilla was bound to search the Cook County Recorder of Deeds to investigate potential encumbrances on the property:

*First*, Padilla alleges she had the power of direction over the Trust. (Dkt. 121 at ¶ 7). Holders of the power of direction owe fiduciary duties to all other holders of the beneficial interest (here, Kowalski and Padilla as TBE). 765 ILCS 435/15. Padilla, thus, had a concomitant duty to

keep herself apprised of all publicly recorded encumbrances on the Trust's sole asset. Searching the Cook County Recorder of Deeds, even intermittently, would have helped protect her in that regard.

*Second*, Padilla filed for divorce from Kowalski in 2014 (more than five years before suing First Midwest). Because the beneficial interest in the Trust was held as a tenancy by the entirety – a legal entity that does not survive divorce (*see* 765 ILCS 1005/1c) – Padilla had occasion to investigate the status of the Property and any encumbrances on it. Searching the Cook County Recorder of Deeds would have served to protect her interests during the divorce proceedings.

*Third*, Padilla alleges that during the 2014 divorce proceeding, she "subpoenaed documents from Washington Federal Bank for Savings pertaining to various loans, including loans on the Property." (Dkt. 121 at ¶ 36). If Padilla had occasion to subpoena documents concerning loans on the Property, she necessarily also had occasion to check the Recorder of Deeds. Further, searching the Cook County Recorder of Deeds would have protected Padilla from the adverse consequences of the subpoena recipients in the divorce proceeding not responding fully.

For all these reasons, Padilla was on constructive notice of the encumbrances on the Property by 1998 (or, at the latest, by 2008). Because Padilla had constructive notice more than five years before she sued First Midwest, her claim is barred by the statute of limitations. 735 ILCS 5/13-205; *Clark*, 142 F. Supp. 2d at 1074–75. When, as here, a "plaintiff effectively pleads [her]self out of court by alleging facts sufficient to establish a statute of limitations defense, dismissal is appropriate." *Reyes*, 585 F. Supp. 2d 1010 (N.D. Ill. 2008). First Midwest respectfully requests that the Court dismiss the Amended Complaint, with prejudice, under Rule 12(b)(6).

**B.    PADILLA LACKS STANDING TO SUE FIRST MIDWEST**

Padilla lacks standing to bring a claim for breach of fiduciary duty against First Midwest. Padilla was not, as she claims, the holder of a beneficial interest in the Trust. On the contrary,

Kowalski assigned the beneficial interest in the Trust to "Robert M. Kowalski and Martha Padilla, his wife, *as tenants by the entirety*, not as joint tenants and not as tenants in common." (Dkt. 121-2 at 2) (emphasis added). "A tenancy by the entirety allows spouses (and only spouses) to own property *together as a single legal entity.*" *Loventhal v. Edelson*, 844 F.3d 662, 663 (7th Cir. 2016) (emphasis added) ("[T]he Joint Tenancy Act forbids any construal of the trust that would sever the tenancy by the entirety."); 765 ILCS 1005/1c. Thus, the **_only_** legal entity that the Trustee could possibly have owed any duties to was "Robert M. Kowalski and Martha Padilla, his wife, as tenants by the entirety" – not Kowalski individually, and not Padilla individually. Because the Trustee never owed Padilla any fiduciary duties individually, she – as an individual – could not have suffered any "injury in fact" traceable to the actions of the Trustee. Accordingly, Padilla has no standing to sue individually. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (reciting the elements of Article III standing). The Court must, therefore, dismiss Padilla's claim under Rule 12(b)(1).

## VI.   CONCLUSION

Because First Midwest never owed any duties to Padilla individually, she lacks standing to sue First Midwest, and the Court should dismiss her claim against First Midwest under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). Alternatively, because the Amended Complaint establishes that Padilla's claim is time-barred, the Court should dismiss her claim against First Midwest, with prejudice, under Federal Rule of Civil Procedure 12(b)(6).

Dated:  June 17, 2021

Respectfully submitted,

**FIRST MIDWEST BANK,**

By:  ___/s/ Adam B. Rome_____
One of Its Attorneys

Adam B. Rome (IL # 6278341)
Zachary P. Mulcrone (IL # 6300387)
GREIMAN, ROME & GRIESMEYER, LLC
205 West Randolph, Ste. 2300
Chicago, Illinois 60606
312-428-2750
arome@grglegal.com
zmulcrone@grglegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to those participants registered with the ECF System.

By:  */s/ Adam B. Rome*
    Adam B. Rome (ARDC #6278341)
    GREIMAN, ROME & GRIESMEYER, LLC
    205 West Randolph St., Ste. 2300
    Chicago, Illinois 60606
    (312) 428-2750
    (312) 332-2781 (facsimile)
    arome@grglegal.com

# EXHIBIT A

Cook County #21762

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

HomeComings Financial Network, Inc.
PLAINTIFF

Vs.

Robert M. Kowalski; Bridgeview Bank Group f/k/a
Bridgeview Bank and Trust Company u/t/a dated
4/24/1993 a/k/a Trust No. 1-2228; Unknown
Beneficiaries of Bridgeview Bank Group f/k/a
Bridgeview Bank and Trust Company u/t/a dated
4/24/1993 a/k/a Trust No. 1-2228; Washington Federal
Bank for Savings; Unknown Owners and Nonrecord
Claimants; Martha Padilla
DEFENDANTS

No. 05 CH 12978



## 2nd AMENDED COMPLAINT TO FORECLOSE MORTGAGE

NOW COMES the Plaintiff, HOMECOMINGS FINANCIAL NETWORK, INC., by and through
its attorneys, CODILIS & ASSOCIATES, P.C., complaining of the defendants herein and, pursuant
to 735 ILCS 5/15-1101, states as follows:

1. Plaintiff files this Complaint to Foreclose the mortgage, trust deed or other conveyance in the
nature of a mortgage (hereinafter called "Mortgage") hereinafter described, and names the persons
identified in the above caption as "Defendants", as parties hereto.

2. Attached as "EXHIBIT A" is a true copy of the Mortgage. Attached as "EXHIBIT B" is a true
copy of the Note secured thereby.

3. Information concerning said Mortgage:

    (A) Nature of the instrument: Mortgage.

    (B) Date of the Mortgage: 5/8/1998

    (C) Name of mortgagor(s):

        Bridgeview Bank Group f/k/a Bridgeview Bank and Trust Company u/t/a dated
        4/24/1993 a/k/a Trust No. 1-2228

    (D) Name of the mortgagee:

        Washington Mutual Bank, FA

(E) Date and Place of Recording or Registering:

5/18/1998
Office of the Recorder of Deeds of Cook County Illinois

(F) Identification of Recording: Document No. 98410464

(G) Interest subject to the mortgage: Fee Simple.

(H) Amount of original indebtedness:

(1) Original Indebtedness: $382,000.00

(I) Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

LOT 47 IN THE SOUTH 1/2 OF BLOCK 41 IN LAFLIN AND LOOMIS RESUBDIVISON OF BLOCKS 5, 16, 21, 30, 31, 32, 33 AND 41 AND SUBDIVISION OF BLOCKS 6, 9, 19 AND 20 IN CANAL TRUSTEES' RESUBDIVISION OF THE WEST 1/2 AND THE WEST 1/2 OF THE NORTHEAST QUARTER OF SECTION 17, TOWNSHIP 39 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JANUARY 31, 1863 IN BOOK 161 OF MAPS, PAGE 75 AND RE-RECORDED DECEMBER 31, 1872 IN BOOK 3 OF PLATS, PAGES 65 AND 66 IN COOK COUNTY, ILLINOIS.

**COMMONLY KNOWN AS:** 1512 Polk Street
Chicago, IL 60607

**TAX PARCEL NUMBER:** 17-17-301-032
17-17-301-046 (partial)

(J) Statement as to defaults: Mortgagors have not paid the monthly installments of principal, taxes, interest and insurance for 06/01/2004, through the present; the principal balance due on the Note and the Mortgage is $353,279.78, plus interest, costs, advances and fees. Interest accrues pursuant to the note.

(K) Name of present owner(s) of said premises:
Bridgeview Bank Group f/k/a Bridgeview Bank and Trust Company u/t/a dated 4/24/1993 a/k/a Trust No. 1-2228

(L) Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated and alleged to be subordinate and inferior to the mortgage of the Plaintiff:

Unknown Beneficiaries of Bridgeview Bank Group f/k/a Bridgeview Bank and Trust Company u/t/a dated 4/24/1993 a/k/a Trust No. 1-2228, by virtue of the fact, upon information and belief, he/she or they is/are beneficiaries of Bridgeview Bank Group f/k/a

Bridgeview Bank and Trust Company u/t/a dated 4/24/1993 a/k/a Trust No. 1-2228, and may have some interest in the subject real estate; the lien and interest of the beneficiaries of this land trust is subordinate and inferior to the lien and interest of the Plaintiff as the holder of the subject mortgage;

Washington Federal Bank for Savings, by virtue of a Mortgage executed by Bridgeview Bank Group f/k/a Bridgeview Bank and Trust Company, as Trustee u/t/a dated 4/24/93 a/k/a Trust No. 1-2228, dated August 10, 1999 modified July 28, 2000 modified on November 1, 2004, and Recorded/registered on August 20, 1999 modification recorded November 27, 2000 modification recorded February 1, 2005 in the office of the Recorder/Registrar of Deeds of Cook County, Illinois, as Document No. 99797136 modified by 00926448 modified by 0503233116, to secure a note in the principal sum of $400,000.00 modified to 450,000.00 modified to $606,284.92;

Martha Padilla, by virtue of the fact that on information and belief he/she is the spouse of Robert M. Kowalski and may have some interest in the subject real estate.

(M) Names of persons personally liable for payment on the Note:

Robert M. Kowalski

(N) Capacity in which Plaintiff brings this foreclosure: Plaintiff is the legal holder of the indebtedness or the servicing agent for the legal holder of the indebtedness. Furthermore, if applicable, an assignment of mortgage was recorded as follows:

Assignment recorded as Document Number:

(O) Facts in support of a redemption period shorter than the longer of 7 months from the date the mortgagor or, if more than one, all the mortgagors have been served with summons or by publication or have otherwise submitted to the jurisdiction of the court, or 3 months from the entry of the judgment of foreclosure, whichever is later, if sought:

The redemption period shall be determined pursuant to 735 ILCS 5/15-1603.

(P) Statement that the right of redemption has been waived by all owners of redemption: There has been no executed waiver of redemption by all owners of redemption, however Plaintiff alleges that it is not precluded from accepting such a waiver of redemption by the filing of this complaint.

(Q) Facts in support of request for attorneys' fees and of costs and expenses, if applicable: The subject mortgage provides for payment of attorney fees, court costs, and expenses in the event of a default by the mortgagors.

(R)  Facts in support of a request for appointment of mortgagee in possession of or for appointment of a receiver, and identity of such receiver, if sought:  Unless otherwise alleged, Plaintiff will pray for said relief after the filing of the instant foreclosure action by separate petition if such relief of sought.

(S)  Offer to the mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale, if sought: No allegation of an offer is made however Plaintiff alleges that it is not precluded from making or accepting such offer by the filing of the instant foreclosure action.

(T)  Name or names of defendants whose rights to possess the mortgaged real estate, after the confirmation of a foreclosure sale, is sought to be terminated and, if not elsewhere stated, the facts in support thereof:

Robert M. Kowalski,  Martha Padilla;

4.  Plaintiff avers that in addition to persons designated by name herein and the Unknown Defendants hereinbefore referred to, there are other persons, and/or non-record claimants who are interested in this action and who have or claim some right, title, interest or lien in, to or upon the real estate, or some part thereof, in this Complaint described, including but not limited to the following:

Unknown Owners and NonRecord Claimants, if any.


That the name of each of such persons is unknown to Plaintiff and on diligent inquiry cannot be ascertained, and all such persons are therefore made party defendants to this action by the name and description of UNKNOWN OWNERS and NONRECORD CLAIMANTS.

## **REQUEST FOR RELIEF**

**PLAINTIFF REQUESTS:**

(i)  A judgment of foreclosure and sale.

(ii)  An order granting a shortened redemption period, if sought.

(iii)  A personal judgment for deficiency, if applicable and sought.

(iv)  An order granting possession, if sought.

(v)  An order placing the mortgagee in possession or appointing a receiver, if sought.

(vi)     A judgment for attorneys' fees, costs and expenses, if sought.

(vii)    For the Appointment of a Selling Officer, if deemed appropriate by this court.

(viii)   Such other and further relief as the Court deems just.


HomeComings Financial Network, Inc.

BY:

CODILIS & ASSOCIATES, P.C.
Its Attorneys

Codilis & Associates, P.C.
Attorneys for Plaintiff
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
Cook #21762
ARDC #00468002
14-05-8038
Client # 0680762127

70410404

7530/0254 03 001 Page 1 of 11
1998-05-18 13:01:38
Cook County Recorder        41.00

PREPARED BY AND
AFTER RECORDING MAIL TO:

Washington Mutual Bank
P.O. BOX 92357
los Angeles, CA 90009-2356

EXHIBIT #     A

# 0818901456

----- SPACE ABOVE THIS LINE FOR RECORDING DATA -----

COUNTY CODE: 016
OFFICE NUMBER:   254
LOAN NO.: 1-890145-6

# MORTGAGE
## ADJUSTABLE INTEREST RATE MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on May 8, 1998
The mortgagor is
**BRIDGEVIEW BANK AND TRUST COMPANY, AS TRUSTEE UNDER TRUST AGREEMENT DATED
APRIL 24,1993 AND KNOWN AS TRUST NUMBER 1-2228**

("Borrower").
This Security Instrument is given to
**Washington Mutual Bank, FA**

which is organized and existing under the laws of     **THE UNITED STATES OF AMERICA**     , and whose
address is
**9451 CORBIN AVENUE, NORTHRIDGE, CA  91324**
("Lender"). Borrower owes Lender the principal sum of
**THREE HUNDRED EIGHTY TWO THOUSAND AND 00/100**
Dollars (U.S. **$382,000.00**     ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due
and payable on     **June 1, 2028**     . This Security Instrument secures to Lender: (a) the repayment of the
debt evidenced by the Note, with interest, and all renewals  extensions and modifications of the Note; (b) the
payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument
and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following
described property located in     **COOK**     County, Illinois:
**AS PER LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART
HEREOF KNOWN AS SCHEDULE 'A'.**

**PIN/TAX ID:**     17-17-301-032-0000

which has the address of **1512 POLK STREET**

**CHICAGO**
Illinois **60607**          ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also
be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property."
BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances
of record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.
THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
**ILLINOIS**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3014   9/90  (page 1 of 6 pages)
tL064R04 (R3/95)

# BOX 333-CTI

98410464 Page 2 of 11

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of Paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under Paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under Paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under Paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in Paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with Paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall

Form 3014 9/90 *(page 2 of 6 pages)*

98410464 Page 3 of 11

give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraphs 1 and 2 or change the amount of the payments. If under Paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in Paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this Paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

Form 3014  9/90  *(page 3 of 6 pages)*

98410464 Page 4 of 11

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

**Form 3014  9/90**   *(page 4 of 6 pages)*

98410464

Loan No.: 1-890145-6

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with Paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Form 3014  9/90  (page 5 of 6 pages)

98410464 Page 6 of 11

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**23. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable line(s)]

| | | |
|---|---|---|
| X Adjustable Rate Rider | ___ Condominium Rider | ___ 1-4 Family Rider |
| ___ Graduated Payment Rider | ___ Planned Unit Development Rider | ___ Biweekly Payment Rider |
| ___ Balloon Rider | ___ Rate Improvement Rider | ___ Second Home Rider |
| X Other(s) [specify] ILLINOIS LAND TRUST RIDER | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:
**BRIDGEVIEW BANK AND TRUST COMPANY, AS TRUSTEE UNDER TRUST AGREEMENT DATED APRIL 24, 1993 AND KNOWN AS TRUST NUMBER 1-2228**

_____   _____ T.O. (Seal)
TITLE   Peter J. Haleas, Trust Officer   --Borrower

_____   _____ (Seal)
   --Borrower

_____   _____ (Seal)
ATTEST   Marilyn Tzakis, Senior Vice President   --Borrower

   _____ (Seal)
   --Borrower

———————————— [Space Below This Line For Acknowledgment] ————————————

State of Illinois,   Cook   County ss:

I,   Jo Schofield   , a Notary Public in and for said county and state, do hereby certify that   Peter J. Haleas, Trust Officer and Marilyn Tzakis, Senior Vice President   are personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that   they signed and delivered the said instrument as   their   free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this   8th   day of   May   ' 1998

My Commission expires:   1/20/2001

_____
Notary Public

This instrument was prepared by:
**PAT PASSER**
**650 EAST ALGONQUIN ROAD**
**SUITE 105**
**SCHAUMBURG, IL 60173**

"OFFICIAL SEAL"
JO SCHOFIELD
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 01/20/2001

98410464 Page 7 of 11

 **Washington Mutual**

**LEGAL DESCRIPTION ATTACHMENT**

LOAN NUMBER: 1-890145-6          SCHEDULE "A"

LOT 47 AND THE SOUTH 85.0 FEET OF THE EAST 7.5 FEET OF LOT 46 IN THE SOUTH 1/2 OF BLOCK 41 IN LAFLIN AND LOOMIS RESUBDIVISION OF BLOCKS 5, 16, 21, 30, 31, 32, 33 AND 41 AND SUBDIVISION OF BLOCKS 6, 9, 19 AND 20 IN CANAL TRUSTEES' RESUBDIVISION OF THE WEST 1/2 AND THE WEST 1/2 OF THE NORTHEAST QUARTER OF SECTION 17, TOWNSHIP 39 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO PLAT THEREOF RECORDED JANUARY 31, 1863 IN BOOK 161 OF MAPS, PAGE 75 AND RE-RECORDED DECEMBER 31, 1872 IN BOOK 3 OF PLATS, PAGES 65 AND 66 IN COOK COUNTY, ILLINOIS.

GF054R03 (R3/98)                    Page 1

78410464 Page 8 of 11

**ADJUSTABLE RATE RIDER**
**(12-MTA Index - Rate Caps)**

MTA 1/1
2213
DO

Loan No.: 1-890145-6

THIS ADJUSTABLE RATE RIDER is made this **8th day of May, 1998** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **Washington Mutual Bank, FA**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**1512 POLK STREET, CHICAGO, IL 60607**
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **5.875%**. The Note provides for changes in the interest rate and the monthly payments, as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of **June, 1999** and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."
**(B) The Index**
Beginning with the First Interest Rate Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average determined as set forth below, of the monthly yields ("Monthly Yields") on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (G.13)." The Twelve-Month Average is determined by adding together the Monthly Yields for the most recent twelve months and dividing by 12. The most recent index figure available as of 15 days before each Interest Rate Change Date is called the "Current Index."

ALL TERMS AND CONDITIONS CONTINUED ON THE BACK OF THIS RIDER
ARE PART OF THIS RIDER

GF692R01 (R1/98)

(page 1 of 3 pages)

If the Index is no longer available, the Note Holder will choose a new index and a new rate differential to result in a rate similar to the rate in effect at that time. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **2.875** percentage points ( **2.875%** ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **7.875%** or less than **3.875%** . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than **9.950%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

*(page 2 of 3 pages)*

98410464 Page 10 of 11

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained on both sides of this Adjustable Rate Rider.

BRIDGEVIEW BANK AND TRUST COMPANY, AS TRUSTEE UNDER TRUST AGREEMENT DATED APRIL 24, 1998 AND KNOWN AS TRUST NUMBER 1-2228

_____ T.O. (Seal)     _____ (Seal)
Peter J. Hadeas     Trust Officer

ATTEST _____ (Seal)     _____ (Seal)
Marilyn Tjakis, Senior Vice President

_____ (Seal)     _____ (Seal)

*(Sign Original Only)*

*(page 3 of 3 pages)*

98410464 Page 11 of 11

**ILLINOIS LAND TRUST
RIDER**

Loan No.: 1-890145-6

THIS RIDER dated          May 8, 1998          changes and adds to the Mortgage (the "Security Instrument")
signed by the Borrower (the "Borrower") this day. The Security Instrument secures Borrower's Note (the "Note") to
**Washington Mutual Bank, FA**

(the "Lender"), also signed this day, and covers the property as described in the Security Instrument and located at:
     **1512 POLK STREET
     CHICAGO, IL 60607**
                              (Property Address)
ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
1.  The word "Borrower," whenever used in the Security Instrument to describe the Trustee, is hereby amended to read "Mortgagor."

2.  The following provision of paragraph 3 on page 1 of the Security Instrument, as reprinted below, is hereby deleted so long as borrower is an Illinois Land Trust, otherwise it shall remain in full force and effect:

    Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

3.  Non-Uniform Covenant #23 of the Security Instrument is hereby amended to read as follows:

    23.  WAIVER OF HOMESTEAD AND REDEMPTION. Borrower hereby waives all right of homestead exemption in the Property. To the extent permitted by applicable law, Borrower hereby waives all right of redemption on behalf of Borrower and on behalf of all other persons acquiring any interest or title in the Property subsequent to the date of this Instrument, and on behalf of any person beneficially interested in Borrower.

4.  This Security Instrument is executed by
    **BRIDGEVIEW BANK AND TRUST COMAPNY**
    (the "Trustee"), not personally, but as Trustee as aforesaid in the exercise of the power and authority conferred upon and vested in it as such Trustee and
    **BRIDGEVIEW BANK AND TRUST COMAPNY**
    hereby warrants that it possesses full power and authority to execute this Instrument and it is expressly understood and agreed that nothing herein shall be construed as creating any liability on the Trustee personally to pay the Note or any interest that may accrue thereon, or any indebtedness accruing hereunder, or to perform any covenant either expressed or implied herein contained; all such liability, if any, being expressly waived by each taker and holder hereof, but nothing herein contained shall modify or discharge the personal liability expressly assumed by any guarantor, co-signor, surety or endorser of the indebtedness secured hereby.

BY SIGNING BELOW, the undersigned accept and agree to the terms and covenants contained in this Rider.

BRIDGEVIEW BANK AND TRUST COMPANY, AS TRUSTEE UNDER TRUST AGREEMENT DATED
APRIL 24, 1992 AND KNOWN AS TRUST NUMBER 1-2228

By _____          _____
TITLE  Peter J. Haleas, Trust Officer

ATTEST: _____
          Marilyn Tzakis, Senior Vice President

IL149R04 (R3/95)

**EXHIBIT #** _____

**ADJUSTABLE RATE NOTE**
(12-MTA Index--Rate Caps)

MTA 1/1
2213
DO

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

Loan No: 1-890145-6

May 8, 1998                              (City) SCHAUMBURG                    [State] IL

1612 POLK STREET, CHICAGO, IL 60607
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S.     $362,000.00    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
Washington Mutual Bank, FA

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of     5.875%   .  The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on     July, 1998          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on June 1, 2028          I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at
9451 CORBIN AVENUE, NORTHRIDGE, CA 91324
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $2,259.68        . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of     June, 1999      and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the First Interest Rate Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average determined as set forth below, of the monthly yields ("Monthly Yields") on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (G.13)." The Twelve-Month Average is determined by adding together the Monthly Yields for the most recent twelve months and dividing by 12. The most recent Index figure available as of 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index and a new rate differential to result in a rate similar to the rate in effect at that time. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding     2.875       percentage points (  2.875%   ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than     7.875% or less than     3.875% Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than    9.950% .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.
BRIDGEVIEW BANK AND TRUST COMPANY, AS TRUSTEE UNDER TRUST AGREEMENT
DATED APRIL 20, 1993 AND KNOWN AS TRUST NUMBER 1-2228

BY _____ (Seal)
Peter J. Haleas, Trust Officer                                    -Borrower

_____ (Seal)
ROBERT M KOWALSKI                                    -Borrower

ATTEST _____ (Seal)
Marilyn Yzskie, Senior Vice President                                    -Borrower

_____ (Seal)
                                    -Borrower

*(Sign Original Only)*

SPACE BELOW THIS LINE RESERVED FOR ENDORSEMENTS

Calendar Number 58

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - CHANCERY DIVISION

HomeComings Financial Network, Inc.
                    PLAINTIFF

                Vs.

Robert M. Kowalski; et. al.
                    DEFENDANTS

No. 05 CH 12978

## __ORDER__

The above cause coming on to be heard on Plaintiff's motion to substitute Washington Mutual Bank as party Plaintiff and the Court being advised in the premises;

IT IS HEREBY ORDERED that:

    1. Washington Mutual Bank is substituted as party Plaintiff in this action.

    2. The caption in all subsequent pleadings shall reflect Washington Mutual Bank as the Plaintiff
herein.

Enter: _____

Dated: _____

Jeff Dovitz
Codilis & Associates, P.C.
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
14-05-8038
Cook #21762

# EXHIBIT B

```
CICSKHPD 06/11/21 05-CH-12978              C H A N C E R Y   D I V I S I O N                          PAGE   1

                                                                          DISPOSED     07/22/08

05-CH-12978   58  HOMECOMINGS FINANCIAL NET   V.  KOWALSKI      ROBERT    M
                  WASHINGTON MUTUAL BANK
                                                  BRIDGEVIEW BANKGROUP
                                                  UNKNOWN BENEFICIAIES
                                                  WASHINGTON FEDERAL BANK
                                                  UNKNOWN OWNERS
                                                  NONRECORD CLAIMANTS
                                                  PADILLA MARTHA

                                                  KOWALSKI         ROBERT      M
08/03/05  HOMECOMINGS FINANCIAL NET               274.00
0003      MORTGAGE FORECLOSURE COMPLAINT FILED
21762     CODILIS ERNEST J JR       15W030 N FRONTAGE RD    BURR RIDGE            60527

08/03/05  HOMECOMINGS FINANCIAL
2806      AFFIDAVIT AS TO UNKNOWN OWNERS FILED

08/03/05  HOMECOMINGS FINANCIAL NET               KARKULA PAUL A.
4519      CASE SET ON CASE MANAGEMENT CALL 12/22/05 ROOM 2810 0000000

08/08/05  CODILIS ERNEST J JR                     KARKULA PAUL A.
3149      MOTION TO APPOINT SPECIAL PROCESS SERVER

08/08/05  HOMECOMINGS FI ANCIAL NET               KARKULA PAUL A.
4209      APPOINT SPECIAL DEPUTY - ALLOWED - ROOM 2810 CH050460727

09/12/05  BRIDGEVIEW BANK
2120      SUMMONS - RETD P.S.

09/12/05  WASHINGTON FEDERAL
2120      SUMMONS - RETD P.S.

09/12/05  KOWALSKI        ROBERT
2220      SUMMONS - RETD N.S.

09/12/05  HOMECOMINGS
2803      AFFIDAVIT FOR SERVICE BY PUBLICATION FILED

09/12/05  KOWALSKI        ROBERT
2832      AFFIDAVIT OF SPECIAL PROCESS SERVER

09/12/05  BRIDGEVIEW BANK
2832      AFFIDAVIT OF SPECIAL PROCESS SERVER

09/12/05  WASHINGTON FEDERAL
2832      AFFIDAVIT OF SPECIAL PROCESS SERVER

09/12/05  KOWALSKI        ROBERT
3121      ALIAS SUMMONS ISSUED AND RETURNABLE       6.00

09/19/05  HOMECOMINGS
2874      CERTIFICATE OF MAILING NOTICE BY PUBLICATION

09/20/05  HOMECOMINGS FINANCIAL NET
1500      MOTION SCHEDULED (MOTION COUNTER ONLY) 10/03/05   1:00 P.M.

09/20/05  HOMECOMINGS FINANCIAL NET
1526      ***FILE AMENDED PLEADING(SET FOR MOTION HEARI 10/03/05   1:00 P.M.
```

```
09/26/05  KOWALSKI ROBERT
2121      ALIAS SUMMONS - RETD P.S.

09/26/05  KOWALSKI ROBERT
2832      AFFIDAVIT OF SPECIAL PROCESS SERVER

10/03/05  HOMECOMINGS FINANCIAL
2871      CERTIFICATE OF MAILING FILED

10/03/05  CODILIS ERNEST J JR
3011      AMENDED COMPLAINT FILED

10/03/05  CODILIS ERNEST J JR
3303      NOTICE OF MOTION FILED

10/03/05  CODILIS ERNEST J JR
3390      MOTION FILED

10/03/05  HOMECOMINGS FI ANCIAL NET                  KARKULA PAUL A.
4292      AMEND COMPLAINT OR PETITION - ALLOWED - ROOM 2810 CH050553400

10/04/05  HOMECOMINGS
2873      CERTIFICATE OF PUBLICATION FILED

10/21/05  BRIDGEVIEW BANKGROUP
0900      APPEARANCE FILED - FEE PAID - 143.00                   CHICAGO
26508     TISHLER & WALD              200 S. WACKER #3000

10/31/05  PADILLA MARTHA
2220      SUMMONS - RETD N.S.

10/31/05  PADILLA MARTHA
2832      AFFIDAVIT OF SPECIAL PROCESS SERVER

11/01/05  HOMECOMINGS FINANCIAL NET
1500      MOTION SCHEDULED (MOTION COUNTER ONLY) 12/12/05  1:00 P.M.

11/01/05  HOMECOMINGS FINANCIAL NET
1531      ***JUDG. OF FORECLOSURE & SALE(SET FOR MOTION 12/12/05  1:00 P.M.

11/04/05  KOWALSKI      ROBERT
3004      EXHIBITS FILED

11/04/05  GUTMAN JEFFREY K
3109      ANSWER TO COMPLAINT FILED

11/04/05  KOWALSKI      ROBERT
3342      NOTICE TO PRODUCE FILED

11/04/05  KOWALSKI      ROBERT
3372      PROOF OF SERVICE FILED

11/10/05  HOMECOMINGS FINANCIAL NET                  KARKULA PAUL A.
3498      CASE MGMT CALL NOTICE MAILED ROOM 2810 12/22/05  9:15 A.M.

11/14/05  KOWALSKI      ROBERT
0900      APPEARANCE FILED - FEE PAID - 143.00                   CHICAGO
14025     GUTMAN JEFFREY K            4018 N LINCOLN AVE
```

60606

60618

```
08/28/06  HOMECOMINGS FI ANCIAL NET                      SIMKO  DARRYL B.
4331      STRIKE FROM CASE MANAGEMENT CALL - ALLOWED ROOM 2008  CH060543452

09/26/06  HOMECOMINGS FI ANCIAL NET              SIMKO  DARRYL B.
8005      DISMISSED FOR WANT OF PROSECUTION ROOM 2803  CH060600882

07/25/07  HOMECOMINGS FINANCIAL NET
1500      MOTION SCHEDULED (MOTION COUNTER ONLY) 08/09/07   9:30 A.M.

07/25/07  HOMECOMINGS FINANCIAL NET
1534      ***MISC.MOTION(SET FOR MOTION HEARING) 08/09/07   9:30 A.M.

08/03/07  CODILIS ERNEST J JR
3509      MOTION TO VACATE ORDER

08/09/07  KOWALSKI      ROBERT            SIMKO  DARRYL B.
4217      CONTINUANCE - ALLOWED - 09/20/07 ROOM 2803  CH070611133

08/09/07  KOWALSKI      ROBERT            SIMKO  DARRYL B.
4319      SET BRIEFING SCHEDULE - ALLOWED - ROOM 2803  CH070611133

08/14/07  KOWALSKI ROBERT
3117      ANSWER TO MOTION FILED

08/24/07  CODILIS ERNEST J JR
3004      EXHIBITS FILED

08/24/07  CODILIS ERNEST J JR
3100      ANSWER FILED

08/24/07  CODILIS ERNEST J JR
3331      NOTICE OF FILING FILED

08/24/07  CODILIS ERNEST J JR
3372      PROOF OF SERVICE FILED

09/20/07  CODILIS ERNEST J JR
3004      EXHIBITS FILED

09/20/07  CODILIS ERNEST J JR
3011      AMENDED COMPLAINT FILED

09/20/07  CODILIS ERNEST J JR
3303      NOTICE OF MOTION FILED

09/20/07  CODILIS ERNEST J JR
3372      PROOF OF SERVICE FILED

09/20/07  CODILIS ERNEST J JR
3376      REQUEST FILED

09/20/07  CODILIS ERNEST J JR
3390      MOTION FILED

09/20/07  CODILIS ERNEST J JR.
3509      MOTION TO VACATE ORDER

09/20/07  HOMECOMINGS FI ANCIAL NET              SIMKO  DARRYL B.
4200      AMEND - ALLOWED - ROOM 2803  CH070723507
```

09/20/07 HOMECOMINGS FI ANCIAL NET                    SIMKO DARRYL B.
4231     FILE AMENDMENT OR ADDITIONAL OR AMENDED PLEADINGS - ALLOWED - ROOM 2803 CH070723506

09/20/07 HOMECOMINGS FI ANCIAL NET            SIMKO DARRYL B.
4292     AMEND COMPLAINT OR PETITION - ALLOWED - ROOM 2803 CH070723506

09/20/07 HOMECOMINGS FI ANCIAL NET        SIMKO DARRYL B.
4957     REINSTATE CASE - ALLOWED - ROOM 2803 CH070723507

09/20/07 HOMECOMINGS FI ANCIAL NET        SIMKO DARRYL B.
4964     ORDER VACATING D.W.P. ROOM 2803 CH070723507

10/10/07 KOWALSKI      ROBERT
3105     ANSWER TO AMENDED COMPLAINT FILED

02/22/08 HOMECOMINGS FINANCIAL NET
1500     MOTION SCHEDULED (MOTION COUNTER ONLY) 03/26/08   9:30 A.M.

02/22/08 HOMECOMINGS FINANCIAL NET
1531     ***JUDG. OF FORECLOSURE & SALE(SET FOR MOTION 03/26/08   9:30 A.M.

03/26/08 HOMECOMINGS
2804     AFFIDAVIT AS TO MILITARY SERVICE FILED

03/26/08 CODILIS ERNEST J JR
3303     NOTICE OF MOTION FILED

03/26/08 CODILIS ERNEST J JR
3372     PROOF OF SERVICE FILED

03/26/08 HOMECOMINGS FI ANCIAL NET           SIMKO DARRYL B.
4278     SUBSTITUTE PARTY - ALLOWED - ROOM 2803 CH080310259

03/26/08 HOMECOMINGS FI ANCIAL NET          SIMKO DARRYL B.
4319     SET BRIEFING SCHEDULE - ALLOWED - ROOM 2803 CH080310260

03/26/08 HOMECOMINGS FI ANCIAL NET          SIMKO DARRYL B.
6246     MOTION TO - CONTINUED - 05/14/08 ROOM 2803 CH080310260

03/27/08 HOMECOMINGS FI ANCIAL NET          SIMKO DARRYL B.
4278     SUBSTITUTE PARTY - ALLOWED - ROOM 2803 0000000

03/27/08 HOMECOMINGS FI ANCIAL NET          SIMKO DARRYL B.
4319     SET BRIEFING SCHEDULE - ALLOWED - ROOM 2803 0000000

03/27/08 HOMECOMINGS FI ANCIAL NET          SIMKO DARRYL B.
6246     MOTION TO - CONTINUED - 05/14/08 ROOM 2803 0000000

05/14/08 HOMECOMINGS FI ANCIAL NET          SIMKO DARRYL B.
4240     FILE AFFIDAVITS - ALLOWED - ROOM 2803 CH080534469

05/14/08 KOWALSKI      ROBERT            SIMKO DARRYL B.
4240     FILE AFFIDAVITS - ALLOWED - ROOM 2803 CH080534469

05/14/08 HOMECOMINGS FI ANCIAL NET          SIMKO DARRYL B.
4319     SET BRIEFING SCHEDULE - ALLOWED - ROOM 2803 CH080534469

05/14/08 HOMECOMINGS FI ANCIAL NET          SIMKO DARRYL B.
6246     MOTION TO - CONTINUED - 07/15/08 ROOM 2803 CH080534469

```
06/04/08  WASHINGTON
  2800    AFFIDAVIT FILED

06/04/08  WASHINGTON
  3004    EXHIBITS FILED

06/04/08  WASHINGTON
  3331    NOTICE OF FILING FILED

06/04/08  WASHINGTON
  3372    PROOF OF SERVICE FILED

07/02/08  CODILIS ERNEST J JR
  3390    MOTION FILED

07/15/08  HOMECOMINGS FI ANCIAL NET              SIMKO DARRYL B.
  4217    CONTINUANCE - ALLOWED - 07/22/08 ROOM 2810 CH080702081

07/22/08  HOMECOMINGS FI ANCIAL NET              SIMKO DARRYL B.
  8036    MORTGAGE FORECLOSURE VOLUNTARY DISMISSAL, NON-SUIT OR DISMISS BY AGREEMENT ROOM 2803 CH080732499

06/04/21  HOMECOMINGS FINANCIAL NET
  9926    CASE FILE IMAGED ROOM 0000 CH0000000

              *** END OF DATA FOR CASE 05-CH-12978 ***

CHARGE TO PRINT  05CH12978 IS   54.00 (A828 SBL 06/11/21)
```

I HEREBY CERTIFY THE ABOVE TO BE CORRECT. THIS ORDER IS THE COMMAND OF THE CIRCUIT COURT AND VIOLATION THEREOF IS SUBJECT TO THE PENALTY OF LAW

DATE: 06/11/21

IRIS Y. MARTINEZ
CLERK OF CIRCUIT COURT

IRIS Y. MARTINEZ   JUN 11 2021
CLERK OF THE CIRCUIT COURT OF COOK COUNTY, IL

# EXHIBIT C

INDEXED

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

21762

HomeComings Financial Network, Inc.
PLAINTIFF

Vs.

Robert M. Kowalski; Bridgeview Bank Group f/k/a
Bridgeview Bank and Trust Company u/t/a dated
4/24/1993 a/k/a Trust No. 1-2228; Unknown
Beneficiaries of Bridgeview Bank Group f/k/a
Bridgeview Bank and Trust Company u/t/a dated
4/24/1993 a/k/a Trust No. 1-2228; Washington Federal
Bank for Savings; Unknown Owners and Nonrecord
Claimants; Martha Padilla

No. 05 CH 12978

2-270
2532

DEFENDANTS
## MORTGAGE FORECLOSURE SUMMONS

To Each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the $143.00 fee, in the Office of the Clerk of this Court in Room 802 of the Richard J. Daley Center, 80 W. Washington St., Chicago, Illinois, 60602.

### SEE IMPORTANT INFORMATION ON THE FOLLOWING PAGE

You must file within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.

To the Officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

NOTE: Pursuant to the Fair Debt Collection Practices Act you are advised that this law firm is deemed to be a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

WITNESS, _____, 20__

_____
Clerk of Court

Date of Service _____, 20__

354806

(To be inserted by officer on copy left with defendant or other person)

Codilis & Associates, P.C.
Attorneys for Plaintiff
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
Cook #21762  DuPage #15170
ARDC # 00468002
14-05-8038
Client # 13861869

A mortgage foreclosure is a lawsuit to repossess your house.

# IMPORTANT INFORMATION FOR DEFENDANTS IN A RESIDENTIAL FORECLOSURE

(This information does not apply to commercial foreclosure. Consult an attorney for advice.)

## <u>YOU HAVE RIGHTS DURING THE FORECLOSURE</u>

1. **POSSESSION:** The lawful occupants <u>may</u> be able to live in the house until a judge orders an order of eviction.
2. **OWNERSHIP:** You <u>may</u> have the right to sell the house or refinance the mortgage during the redemption period.
3. **REINSTATEMENT:** You <u>may</u> have the right to bring the mortgage current within 90 days after you receive this summons.
4. **REDEMPTION:** You <u>may</u> have the right to pay off the loan during the redemption period.
5. **SURPLUS:** You have the right to petition for any excess money that results from a foreclosure sale of the house.
6. **WORKOUT OPTIONS:** The mortgage company does not want to foreclose the mortgage if there is any way to avoid it. Call the mortgage company or their attorney to see if there are any other alternatives to foreclosure.
7. **GET ADVICE:** This information is not exhaustive and does not replace the advice of a professional. You may have other options. Get professional advice from a lawyer or a certified housing counselor about your rights and options to avoid foreclosure.
8. **A LAWYER:** If you do not have a lawyer and are able to afford one, you may call one of the following Lawyer Referral Services and ask them to recommend a lawyer for you.
   - Chicago Bar Association Lawyer Referral Service: (312) 554-2001
   - Cook County Bar Association Lawyer Referral Service: (312) 630-1157
   - Other Lawyer Referral Services are listed in your telephone directory.

If you cannot afford a lawyer, you <u>may</u> call one of the following agencies that my be able to provide you with free legal help:
* Legal Assistance Foundation of Chicago: (312) 341-1070
   Horizon Legal Center: (312) 360-9455

   \* Chicago Legal Clinic: (312) 731-1762
   \* Chicago Volunteer Legal Services: (312) 332-1624
    ( \*se habla Español)

## PROCEED WITH CAUTION

You may be contacted by people offering you help with foreclosure. Follow these precautions:

1. Get legal advice before entering into any deal involving your house.
2. Get legal advice before you pay any money to any person offering to help you avoid foreclosure.
3. Do not sign any papers you do not understand.

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY OTHER INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**

**CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

**<u>PLEASE SERVE THE FOLLOWING DEFENDANTS AT THE FOLLOWING ADDRESSES:</u>**

**Martha Padilla, 1512 Polk Street, Chicago, IL 60607 (Cook)**

**T H A N K  Y O U**

14-05-8038

**ProVest, Inc.**                                                                        14-05-8038

977 N. Oaklawn Ave., Suite 109 -- Elmhurst, Illinois -- 60126

IN THE CIRCUIT COURT OF _____ COOK _____ COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

HOMECOMINGS FINANCIAL NETWORK, INC. ET. SEQ.
VS.
ROBERT M. KOWALSKI ET. AL.

CASE NO.

05-CH-l0978

### AFFIDAVIT OF SPECIAL PROCESS SERVER

BRANDON PARIS _____ ,Being first duly sworn on oath desposes and says that he/she was appointed by the Court to serve process in the above mentioned cause and/or is a special appointed process server, a licensed private investigator, and/or an employee/agent of Pro-Vest, Inc, Department of Professional Regulation number 117-001229.

TYPE OF PROCESS: _____ SUMMONS AND AMENDED COMPLAINT _____

DEFENDANT TO BE SERVED: _____ MARTHA PADILLA _____

( ) Served ☒ Non-Served  the within named defendant on  10/25/05  @ 1:00 p-m.

ADDRESS WHERE ATTEMPTED OR SERVED:  1512 POLK STREET

CHICAGO, IL  60607

THE SEX, RACE AND APPROXIMATE AGE OF THE DEFENDANT AND OR OTHER PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:

SEX: F  RACE: W  APPROXIMATE AGE: 40

☒  INDIVIDUAL SERVICE by delivering to the within named defendant a copy of this process personally.

( )  SUBSTITUTE SERVICE by leaving a copy of this process at his/her usual place of abode with : _____
(Relationship) _____ , a person residing therein who is of the age of 13 years or upwards and informed that person of the contents thereof and that further mailed a copy of this process in a sealed envelope with postage paid addressed to the defendant at this/her usual place of abode on _____

( )  CORPORATE OR GOVERNMENT SERVICE by leaving a copy of the process with: _____
(Title): _____ , a person authorized to accept service and informed that person of the contents thereof.

( )  NON-SERVICE for reason that after diligent investigation found

_____
_____
_____
_____

ADDITIONAL COMMENTS:

_____
_____

Signature of Process Server

Subscribed and sworn before me this 26 day of Oct 2005

Signature of Notary Public

OFFICIAL SEAL
LORI M OTEY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/05/09

# ProVest, Inc.

14-05-8038

977 N. Oaklawn Ave., Suite 109 -- Elmhurst, Illinois -- 60126

## FIELD SHEET

Date: 10-12   Server: **BRANDON PARIS**

**PAPER EXPIRES:** 11-12   REFERENCE #: 14-05-8038

DEFENDANT TO SERVE: **MARTHA PADILLA**

ADDRESS: **1512 POLK STREET  CHICAGO, IL  60607**

SPECIAL INSTRUCTIONS:

## ATTEMPTS

| DATE/TIME | COMMENTS |
|---|---|
| 1. 10/14/05 2:45 p.m. | not Home |
| 2. 10/16/05 11:00am. | not Home poss:Bly Jugens |
| 3. 10/18/05 11:00 p.m. | Not Home poss BVCUex |
| 4. 10/21/05 1:00 p.m. | Lives Here nbi, nbor at 1510 Says This |
| 5. | woman does not answer Adoor. |
| 6. 10/22/05 3:00 p.m | does not answer |
| 7. 10/25/05 1:00 p.m. | |
| 8. | |

IS PROPERTY VACANT? No   ARE THE UTILITIES ON? YES

IS THE PROPERTY POSTED FOR SALE? No

ADDITIONAL COMMENTS:

## SERVICE INFORMATION

X SERVED ( ) NON-SERVED   DATE: 10/25/05   TIME: 1:00p m

TYPE OF SERVICE  X PERSONAL  ( ) SUBSTITUTE  ( ) CORPORATE

NAME OF PERSON ACCEPTING SERVICE: Martha Padilla

RELATIONSHIP/TITLE: Defendant

DESCRIPTION:  SEX: F   RACE: W   APPROX. AGE: 40

X Martha Padilla