IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | | |
|---|---|---|
| JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:19-CV-05770 |
| ROBERT KOWALSKI a/k/a ROBERT M. KOWALSKI; UNKNOWN OWNERS AND NON-RECORD CLAIMANTS; CHICAGO TITLE LAND TRUST COMPANY s/i/i TO BRIDGEVIEW BANK GROUP f/k/a BRIDGEVIEW BANK AND TRUST COMPANY, AS TRUSTEE UNDER TRUST AGREEMENT DATED APRIL 24, 1993 AND KNOWN AS TRUST NUMBER 1-2228; MARTHA PADILLA; FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR WASHINGTON FEDERAL BANK FOR SAVINGS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Thomas M. Durkin |
| Defendants. | ) | |

**FEDERAL DEPOSIT INSURANCE CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SECOND AMENDED COUNTERCLAIM AGAINST COUNTER-DEFENDANT MARTHA PADILLA**

Defendant/Counter-Plaintiff, Federal Deposit Insurance Corporation, as Receiver for Washington Federal Bank for Savings ("FDIC-R"), for its Memorandum of Law in Support of its Motion for Summary Judgment on Second Amended Counterclaim ("Counterclaim") against counter-defendant, Martha Padilla ("Padilla"), pursuant to Federal Rule of Civil Procedure 56 and LR 56.1, states as follows:

## INTRODUCTION

FDIC-R seeks to foreclose upon its mortgage dated August 10, 1999, recorded August 20, 1999 ("the Mortgage") and signed by the land trustee of Bridgeview Bank & Trust Company trust

no. 1-2228 ("Bridgeview Trust No. 1-2228") holding title to the property at 1512 W. Polk. Chicago, Illinois ("the Polk property"). The Mortgage secures a note payable to Washington Federal Bank for Savings ("WFB") for $400,000 signed by Bridgeview Trust No. 1-2228 and Robert Kowalski ("Kowalski"), one of the beneficiaries of the land trust. Martha Padilla ("Padilla"), Kowalski's wife at the time, was as of the date of the mortgage and remains a beneficiary of trust 1-2228 and currently resides at the Polk property. The Mortgage was subsequently modified on three occasions, each time signed by Bridgeview Trust No. 1-2228, eventually increasing the principal indebtedness to $637,219.63. Padilla's signature appeared on note extensions and modifications after March 31, 2003 when the principal balance on the loan was increased from $400,000. The mortgage loan matured on January 1, 2014. FDIC-R is not seeking any deficiency judgment from Padilla, only from Kowalski who is in bankruptcy but was denied a discharge.

Padilla denies the validity of the mortgage loan documents because she alleges that she did not consent, as a beneficial owner with the power of direction, to the land trustee signing the mortgage loan documents and Padilla further alleges that WFB acted improperly by not requesting or requiring submission of proper documentation of the land trust to show who had authority to sign the mortgage loan documents. Padilla also maintains that her signature was not authorized on the note extensions and modifications executed after March 31, 2003, which was a part of a scheme to conceal a non-performing loan. Padilla claims to have had no personal knowledge of this conduct. Padilla alleges the mortgage loan documents were procured fraudulently and, consequently, the Mortgage is invalid. Padilla further claims that the extensions were invalid and therefore, foreclosure of the Mortgage is barred by the statute of limitations.

6038890/1/13664.014

A lender can rely on a representation in a mortgage that the land trustee is authorized to sign the mortgage. No further inquiry or documentation is needed. As receiver, FDIC-R can rely on the loan documents to enforce them. And, under applicable law, FDIC-R is not subject to any claim of fraud, unless Padilla can prove the fraud exception that her signature was procured by fraud. Yet, Padilla claims her signature was never procured. The fraud exception is inapplicable.

In addition, the claim that Padilla's signature was unauthorized is made as to as to loan extensions. She was not a signatory to the original Note in 1999. Padilla is not being held personally liable for the indebtedness. Padilla is not contesting Kowalski's signatures. The Mortgage and subsequent modifications were properly executed by the land trustee. Padilla's signatures are thus superfluous. Consequently, the Mortgage is an enforceable lien against the Polk property and can be foreclosed.

Finally, the mortgage loan matured in January 2014. FDIC was appointed as receiver in December 2017. The Counterclaim was filed in January 2020. The statute of limitations is 6 years after appointment as receiver under FIRREA and 10 years from default under Illinois law. Since FDIC-R can rely on the loan documents, the Counterclaim was timely filed under either statute.

## **RELEVANT FACTS**

Kowalski bought the Polk property on or about April 23, 1993 and deeded it into a land trust at Bridgeview Bank & Trust Company, trust no. 1-2228 ("Bridgeview Trust No. 1-2228") with Kowalski as the sole beneficiary. (Stmt of Facts para 1, 3) He bought the property for about $200,000 and built a house for $225,000. (Stmt of Facts para 3) In November 1995 or 1996, Kowalski and his wife, Padilla, moved into their home. (Stmt of Facts para 3)

On September 5, 1997, the beneficial interest in Bridgeview Trust No. 1-2228 was assigned to Kowalski and Padilla, as tenants by the entirety, because Padilla wanted an ownership interest

in her personal residence. (Stmt of Facts para 5) When Padilla became a beneficial owner, she relied on Kowalski's statement that there were no liens on the Polk property. (Stmt of Facts para 7)

On August 10, 1999, Kowalski executed a Note payable to WFB in the original amount of $400,000 ("the Note"). (Stmt of Facts para 8) The loan proceeds went to refinance a loan made by Bridgeview Bank & Trust Company to Kowalski and Bridgeview Trust No. 1-2228 for $395,000, to repay a prior mortgage on 1510 W. Polk, which was an adjacent property that Kowalski bought, built a three-flat and sold. (Stmt of Facts para 9) The Note was secured by the Mortgage dated August 10, 1999 executed by Bridgeview Trust No. 1-2228, encumbering the Polk property, and recorded on August 20, 1999. (Stmt of Facts para 10) The Note was extended on August 1, 2000, April 2, 2001, May 31, 2001, and March 31, 2003, each time executed by Kowalski to extend the maturity date. (Stmt of Facts para 13, 14, 15, 16) A Note Modification Agreement was executed by Kowalski and Padilla on November 1, 2004, extending the maturity date and increasing the principal sum on the Note to $606,284.92. (Stmt of Facts para 17) As a condition of the modification, a Modification of Mortgage was also executed on November 1, 2004 by Bridgeview Trust No. 1-2228 and recorded on February 1, 2005. (Stmt of Facts para 18)

The Note was subsequently extended on October 1, 2005, extending the maturity date. (Stmt of Facts para 19) A Note Modification Agreement was executed by Kowalski and Padilla dated July 31, 2007, increasing the principal sum on the Note to $637,219.63 and extending the maturity date. (Stmt of Facts para 20). As a condition of the modification, a Modification of Mortgage was also executed on July 31, 2007 by Bridgeview Trust No. 1-2228 and Kowalski and recorded on August 11, 2008. (Stmt of Facts para 21) Further Extensions to Note were executed by Kowalski and Padilla on January 1, 2008 and January 1, 2012. (Stmt of Facts para 22, 23)

On December 15, 2017, the Federal Deposit Insurance Corporation was appointed as receiver of WFB. (Stmt of Facts para 25) FDIC-R is the owner and holder of the Note and Mortgage. (Stmt of Facts para 26) The Note matured on January 1, 2014. (Stmt of Facts para 23) There is due and owing for principal the sum of $637,219.63, interest through November 2, 2021 of $195,553.64, escrow for homeowners insurance of $20,559.19, late fees of $637.03 and advances for inspection/valuation fees of $564.00. Interest continues to accrue at the per diem rate of $139.66. (Stmt of Facts para 27)

## LEGAL ARGUMENT

### A.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In resolving summary judgment motions, "facts must be viewed in the light most favorable to," and all reasonable inferences from that evidence must be drawn in favor of, the nonmoving party—but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Blasius v. Angel Auto., Inc.*, 839 F. 3d 639, 644 (7th Cir. 2016) (citing *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016)).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F. 3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (citation omitted)). After "a properly supported motion for summary

judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation omitted); *see also Modrowski*, 712 F. 3d at 1169 (stating party opposing summary judgment "must go beyond the pleadings *(e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor"). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

  B.  **Prima Facia Proof of Entitlement to Foreclose Mortgage and Note**

The owner and holder of a note and mortgage is *prima facie* proof of entitlement to foreclose that note and mortgage. *CitiMortgage Inc. v. Sconyers*, 2014 Ill App (1st) 130023 (1st Dist. 2014). No party disputes FDIC-R's ownership or possession of the mortgage loan documents. (See Stmt of Facts para 26) Once the mortgagee (FDIC-R) presents *prima facie* evidence of its right to foreclose, then it is incumbent upon the defendant (Padilla) to present evidence supporting any defense. *Id*.

 As to validity of a mortgage, under Illinois law, a mortgagee (FDIC-R) may rely on the land trustee's warranty that it has the authority to execute the mortgage. *Gross v. Gross*, 324 Ill. App. 3d 872, 875-876 (5th Dist. 2001) (husband's forgery of wife's signature on letter of direction does not invalidate mortgage signed by the land trustee). Such a warranty is contained in the subject mortgage. (see Stmt of Facts para 12) Production of the land trust documents prior to execution was not necessary in the face of the warranty.

6

Thus, Padilla must come forward with evidence that would reasonably permit the court to find in her favor on a material question, or the court must enter summary judgment against her. As will be discussed, Padilla has not made any evidentiary showing sufficient to establish that a genuine issue of fact exists.

### C. Reliance on Loan Documents Not Vitiated by Fraud in the Factum

As to the ability to raise a fraud claim against the FDIC-R, in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S. Ct. 676, 86 L. Ed. 956 (1942), the United States Supreme Court established an equitable doctrine that barred a counterparty to a failed bank from raising any defense against the FDIC based on a secret agreement. *Id*. at 461. The Supreme Court later expanded the meaning of agreement to "schemes and arrangements" that involved outright misrepresentations and misleading half-truths. *Langley v. FDIC*, 484 U.S. 86, 92-96, 108 S. Ct. 396, 98 L. Ed. 2d 340 (1987). "This doctrine places limits on the use to which 'side deals' can be put to defeat obligations created in documents on file in a bank." *Resolution Trust Corp. v. Midwest Fed. Sav. Bank of Minot*, 36 F.3d 785, 789 (9th Cir. 1993). This doctrine has been partially codified in 12 U.S.C. § 1823(e). This statute is more specific than *D'Oench* about the requirements of a writing: agreements affecting assets must be approved by the board of directors and carried officially on the records of the failed institution. 12 U.S.C. § 1823(e)(1). The purposes of *D'Oench* and Section 1823 (e) are:

- To allow the FDIC to rely on a bank's records in evaluating the bank's assets;
- To ensure consideration of unusual loan transactions by senior bank officials; and
- To prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears to be headed for failure.

*Langley*, *supra*. at 91-92.

As to FDIC-R's motion to strike Padilla's defenses, this court held that – at the pleadings stage – Padilla may be able to assert the exception of fraud in the factum to the *D'Oench* rule that FDIC is immune from claims of oral misrepresentations. (Dkt No. 117) The court made clear that its ruling was at least in part based upon the early stage of the case and that the matter could be raised at summary judgment.

Fraud in the factum is defined as "fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." *See Langley v. FDIC*, 484 U.S. 86, 93, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). According to *Langley*, fraud in the factum takes the instrument out of Section 1823 (e) because it would render the instrument entirely void, thus leaving no right, title or interest that could be diminished or defeated. Fraud in the factum, also called fraud in the execution, "arises when a party executes an agreement with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986). Similarly, under Illinois law, fraud in the factum involves a misrepresentation as to the very nature of the instrument itself. If the other party neither knows nor has any reason to know of the character of the instrument, the effect of the misrepresentation is that there is no contract at all. *Christinson v. Venturi Construction Co.*, 109 Ill. App. 3d 34 (5th Dist. 1982). Hence, if a signature is obtained by misstating the contents of the document, that is tantamount to fraud.

Here, Padilla is not contending she signed any instrument. Her signature was not procured at all according to her, let alone procured by fraud. The fraud in the execution exception is not applicable.

In addition, Padilla is not saying the Mortgage, its subsequent modifications and the Note were forged. She is complaining about note extensions and modifications executed starting four

8

years later. She is not claiming that Kowalski's signature was unauthorized. While the alleged forgery of her signatures might be disreputable, it is immaterial to the status of Kowalski's mortgage loan where Padilla's signature was not required. See; *Issawi v. American Educational Services*, 2018 WL 1318049 (S.D. Ill. 2018) (borrower had the authority, without the signatures of her cosigners, to execute a forbearance agreement and alleged forgery of her parents' signatures, while reprehensible, is immaterial to the status of her loans where those signatures were not required for the forbearance.); *Lincoln National Life Insurance Company v. Eli Inzlicht-Sprei,* 2020 WL 1536346, *9, fn.19 (E.D. N.Y 2020) (assertion that signature on a Viatical Settlement Application was forged was "likely superfluous" because trustee alone whose signature was not at issue had full discretion and authority to sign.) It is Kowalski's and only his signature that matters as to enforcement of the Note and subsequent extensions. A claim of forgery of a superfluous signature is not a valid defense to summary judgment.

### D. The Foreclosure is Not Barred by the Applicable Statute of Limitations

Padilla also raises the defense of statute of limitations. Under 12 U.S.C. Section 1821(d)(14)(A), FDIC-R has six years after appointment as receiver to file a mortgage foreclosure claim if the limitations period has not yet expired. Padilla tries to overcome this time frame by alleging that the Mortgage would have been due earlier if she had learned of the extensions and had them invalidated. However, FDIC as receiver may, as a matter of law, reasonably rely on the documents in the loan file contemporaneous with the making of a loan. *See D'Oench Duhme & Co. v. F.D.I.C., supra*. FDIC-R can rely on the note extensions in determining when it can file suit. The mortgage loan matured on January 1, 2014. There is 10 years to file a mortgage foreclosure under Illinois law. *See* 735 ILCS 5/13-206. FDIC became receiver on December 15, 2017. The counterclaim to foreclose was filed on January 8, 2020, well within the 6-year limitation period

9

under FIRREA and the 10-year limitation period under Illinois law. A limitation defense does not apply here.

## CONCLUSION

Padilla cannot present any legally sufficient facts to defeat foreclosure of the Note and Mortgage. Accordingly, FDIC-R is entitled to summary judgment as a matter of law.

Dated: November 4, 2021

Respectfully submitted,

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Washington Federal Bank for Savings,** Defendant/Counter-Plaintiff,

By: /s/ *Eric S. Rein*
One of Its Attorneys

Eric S. Rein (rrein@hmblaw.com)
ARDC #6181305
Matthew R. Barrett (mbarrett@hmblaw.com)
ARDC #6308549
**HORWOOD MARCUS & BERK CHARTERED**
500 West Madison Street, Suite 3700
Chicago, Illinois 60661
(312) 606-3200

James M. Dash (jdash@carlsondash.com)
ARDC #6200504
Jordana E. Thomadsen (jthomadsen@carlsondash.com)
*Admitted pro hac vice*
**CARLSON DASH, LLC**
216 S. Jefferson Street, Suite 504
Chicago, Illinois 60661
(312) 382-1600

10

**CERTIFICATE OF SERVICE**

The undersigned attorney of record hereby certifies that he caused a true and correct copy of the foregoing **FEDERAL DEPOSIT INSURANCE CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SECOND AMENDED COUNTERCLAIM** to be served upon other counsel of record listed below by electronic mail and by placing same in a properly addressed envelope, first-class postage prepaid, and by depositing same in the U.S. Mail located at 500 West Madison Street, Chicago, Illinois 60661 on November 4, 2021, addressed as follows:

Alan Samuel Kaufman
Edward R. Peterka
Manley Deas Kochalski LLC
1 East Wacker Drive, Suite 1250
Chicago, Illinois 60601
ask@manleydeas.com
erpeterka@manleydeas.com

Joseph R. Ziccardi
Gabriella Moretti
Ziccardi Law Offices
77 W. Washington, Suite 705
Chicago, Illinois 60602
jziccardi@ziccardilaw.com
gmoretti@ziccardilaw.com

Adam B. Rome
Zachary Mulcrone
Greiman, Rome & Griesmeyer, LLC
2 N. LaSalle St., Suite 1601
Chicago, IL 60602
arome@grglegal.com
zmulcrone@grglegal.com

Shana A. Shifrin
Burke, Warren, MacKay & Seritella, P.C.
330 N. Wabash Avenue, 21st Floor
Chicago, Illinois 60611
sshifrin@burkelaw.com

Peter M. King
King Holloway Lipinski LLC
526 Crescent Boulevard, Suite 318
Glen Ellyn, Illinois 60137
pking@khl-law.com

/s/ *Eric S. Rein*

6038890/1/13664.014