IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JP Morgan Chase Bank, National Association, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-CV-5770 |
| | ) |
| Robert Kowalski, a/k/a Robert M. Kowalski, | ) Judge Thomas M. Durkin |
| Unknown Owners and Non-Record Claimants; | ) |
| Chicago Title Land Trust Company s/i/i to | ) |
| Bridgeview Bank Group f/k/a Bridgeview Bank | ) |
| and Trust Company, as trustee under trust | ) |
| agreement dated April 24, 1993 and known as | ) |
| Trust Number 1-2228, Martha Padilla, Federal | ) |
| Deposit Insurance Corporation, as receiver for | ) |
| Washington Federal Bank for Savings, | ) |
| | ) |
| Defendants. | ) |

**COUNTER-DEFENDANT MARTHA PADILLA'S RESPONSE TO FEDERAL DEPOSIT INSURANCE CORPORATION'S STATEMENT OF MATERIAL FACTS**

Counter-Defendant, Martha Padilla, by and through her attorneys, Ziccardi Law Offices, pursuant to Rule 56 and 56.1(b) of the Local Rules of the United States District Court for the Northern District of Illinois, and for her Response to the Federal Deposit Insurance Corporation's Statement of Material Facts in Support of its Motion for Summary Judgment, hereby states as follows:

1. The property at 1512 W. Polk, Chicago, Illinois ("the Polk property") was placed in a land trust at Bridgeview Bank & Trust Company, as trustee under trust no. 1-2228 ("Bridgeview Trust No. 1-2228") on April 24, 1993 with Robert Kowalski ("Kowalski") as sole beneficiary. (Padilla dep. pp. 19-20). Relevant pages of Padilla's deposition are attached hereto as Exhibit A.

**RESPONSE:** Padilla admits the facts set forth in this paragraph 1.

2. Kowalski married Padilla on May 20, 1989. (Padilla dep. p.9)

**RESPONSE:** Padilla admits the facts set forth in this paragraph 2.

    3.    Kowalski bought the Polk property for about $200,000 and built the house for another $225,000, wherein Kowalski and Padilla moved in either November 1995 or 1996. (Padilla dep. pp. 15-16, 126)

**RESPONSE:** Padilla admits the facts set forth in this paragraph 3.

    4.    Padilla assumed that monies were borrowed to construct the house. (Padilla dep. p. 16)

**RESPONSE:** Padilla admits the facts set forth in this paragraph 4.

    5.    On September 5, 1997, the beneficial interest in Bridgeview Trust No. 1-2228 was transferred to Kowalski and Padilla, as tenants by the entirety. (Padilla dep p. 40)

**RESPONSE:** Padilla admits the facts set forth in this paragraph 5.

    6.    The transfer of the beneficial interest occurred because it was the personal residence and Padilla wanted to have an ownership interest in that residence. (Padilla dep. p. 40)

**RESPONSE:** Padilla admits the facts set forth in this paragraph 6.

    7.    When Padilla became a beneficiary of the land trust, she relied upon Kowalski's statement to her that there were no liens against the real estate. (Padilla dep. pp. 43, 44)

**RESPONSE:** Padilla admits the facts set forth in this paragraph 7.

    8.    On or about August 10, 1999, Robert Kowalski ("Kowalski") executed a Note payable to Washington Federal Bank for Savings ("WFB") in the original principal sum of $400,000 ("the Note"). (Woods afft. para. 5) The affidavit of Janina Woods is attached hereto as Exhibit B.

**RESPONSE:** Padilla admits that the FDIC has attached as Exhibit B the affidavit of Janina

Woods to its Statement of Facts, but denies that said affidavit is accurate as it is not based on the

Affiant's personal knowledge that Kowalski and/or Padilla actually executed documents as therein asserted. Answering further, Padilla admits that what appears to be a promissory note dated August 10, 1999 executed by Robert Kowalski is attached to Woods' Affidavit, but denies that Kowalski had the authority to unilaterally execute a promissory note secured by a mortgage on the Polk Property.

9. The loan proceeds went to refinance a loan made by Bridgeview Bank & Trust Company to Bridgeview Trust No. 1-2228 and Kowalski for $395,000 on or about December 19, 1996, which note describes its collateral to be a mortgage on 1510 W. Polk, an adjacent parcel that Kowalski bought, built a three-flat and sold. (Woods afft. para. 6; Padilla dep. p. 17)

**RESPONSE:** Padilla admits the facts set forth in this paragraph 9.

10. As collateral security for the Note, Bridgeview Trust No. 1-2228 executed and delivered to WFB a Mortgage dated August 10, 1999, encumbering the Polk Property, which was recorded on August 20, 1999 with the Cook County Recorder of Deeds as document no. 99797136 ("the Mortgage"), (Woods afft. para. 7)

**RESPONSE:** Padilla admits only that what purports to be a mortgage dated August 10, 1999 executed by Bridgeview Bank as trustee of Trust no. 1-2228 in favor of WFB was recorded against the Property on August 20, 1999 with the recording number as alleged. Padilla denies the validity of said mortgage based on the facts set forth in her Rule 56.1(d) Statement of Facts, ¶ 5-8.

11. The Mortgage provides that "Borrower (Bridgeview Trust No. 1-2228) is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property…." (Woods afft. para. 8)

**RESPONSE:** Padilla admits only that the Mortgage contained the quoted language. Padilla denies the validity of said mortgage based on the facts set forth in her Rule 56.1(d) Statement of Facts, ¶ 5-8.

3

    12.    On or about July 28, 2000, Bridgeview Trust No. 1-2228 executed a Modification of Mortgage recorded with the Cook County Recorder as document no. 00926448. (Woods afft. Para. 9)

**RESPONSE**: Padilla admits only that on or about July 28, 2000, Bridgeview Bank, as trustee, executed a Modification of Mortgage which was recorded with the Cook County Recorder of Deeds. Padilla denies the validity of said Modification of Mortgage based on the facts set forth in her Rule 56.1(d) Statement of Facts, ¶ 5-8.

    13.    On or about August 1, 2000, Kowalski executed and delivered to WFB an Extension to Note, extending the maturity date to March 31, 2001. (Woods afft. para. 10)

**RESPONSE**: Padilla admits that what appears to be an Extension to Note dated August 1, 2000 executed by Robert Kowalski is attached to Woods' Affidavit, but denies that Kowalski had the authority to unilaterally execute a promissory note secured by a mortgage on the Polk Property.

    14.    On or about April 2, 2001, Kowalski executed and delivered to WFB an Extension to Note, extending the maturity date to April 2, 2002. (Woods afft. para. 11)

**RESPONSE**: Padilla admits that what appears to be an Extension to Note dated April 2, 2001 executed by Robert Kowalski is attached to Woods' Affidavit, but denies that Kowalski had the authority to unilaterally execute a promissory note secured by a mortgage on the Polk Property.

    15.    On or about May 31, 2001, Kowalski and Bridgeview Trust No. 1-2228 executed and delivered to WFB an Extension to Note, extending the maturity date to March 31, 2003. (Woods afft. para. 12)

**RESPONSE**: Padilla admits that what appears to be an Extension to Note dated May 31, 2001 executed by Robert Kowalski and Bridgeview Bank as trustee is attached to Woods' Affidavit, but denies that Kowalski had the authority to unilaterally execute a promissory note secured by a

mortgage on the Polk Property, and denies that Bridgeview Bank had authority to execute said Extension to Note.

16. On or about March 31, 2003, Kowalski and Padilla executed and delivered to WFB an Extension to Note, extending the maturity date to November 1, 2004. (Woods afft. para. 13)

**RESPONSE:** Padilla denies the facts set forth in this paragraph 16.

17. On or about November 1, 2004, Kowalski and Padilla executed and delivered to WFB a Note Modification Agreement, extending the maturity date to October 1, 2005 and advancing an additional $156,284.92, increasing the principal sum on the Note to $606,284.92. (Woods afft. para. 14)

**RESPONSE:** Padilla denies the facts set forth in this paragraph 17.

18. On or about November 1, 2004, Bridgeview Trust No. 1-2228 executed a Modification of Mortgage, which was recorded with the Cook County Recorder on February 1, 2005 as document no. 0503233116. (Woods afft. para. 15)

**RESPONSE:** Padilla admits that what appears to be a Modification of Mortgage dated November 1, 2004 executed by Bridgeview Bank as trustee and recorded with the Cook County Recorder of Deeds is attached to Woods' Affidavit, but denies that denies that Bridgeview Bank had authority to execute said Modification of Mortgage.

19. On or about October 1, 2005, Kowalski and Padilla executed and delivered to WFB an Extension to Note, extending the maturity date to January 1, 2008. (Woods afft. para. 16)

**RESPONSE:** Padilla denies the facts set forth in this paragraph 19.

20. On or about July 31, 2007, Kowalski and Padilla executed and delivered to WFB a Note Modification Agreement, advancing an additional $31,000 thereby increasing the principal sum on the note to $637,219.63 and extending the maturity date to September 30, 2008. (Woods afft. para. 17)

**RESPONSE:** Padilla denies the facts set forth in this paragraph 20.

    21.    On or about July 31, 2007, Bridgeview Trust No. 1-2228 executed a Modification of Mortgage, which was recorded with the Cook County Recorder of Deeds on August 11, 2008 as document no. 091633206. (Woods afft. para. 18)

**RESPONSE:** Padilla admits that what appears to be a Modification of Mortgage dated July 31, 2007 executed by Bridgeview Bank as trustee and recorded with the Cook County Recorder of Deeds is attached to Woods' Affidavit, but denies that Bridgeview Bank had authority to execute said Modification of Mortgage.

    22.    On or about January 1, 2008, Kowalski and Padilla executed and delivered to WFB an Extension to Note, extending the maturity date to January 1, 2012. (Woods afft. para. 19)

**RESPONSE:** Padilla denies the facts set forth in this paragraph 22.

    23.    On or about January 1, 2012, Kowalski and Padilla executed and delivered to WFB an Extension to Note, extending the maturity date to January 1, 2014. (Woods afft. para. 20)

**RESPONSE:** Padilla denies the facts set forth in this paragraph 23.

    24.    The Note and its modifications have now matured. (Woods afft. para. 21)

**RESPONSE:** Padilla admits that the maturity dates on the purported Note and its modification have matured. Padilla denies the validity of said Note and its modifications based on the facts set forth in her Rule 56.1(d) Statement of Facts, ¶ 5-8.

    25.    On December 15, 2017, the Federal Deposit insurance Corporation was appointed, and accepted, as Receiver of WFB. (Woods afft. para. 3)

**RESPONSE:** Padilla admits the facts set forth in this paragraph 25.

    26.    FDIC-R is the owner and holder of the Note and Mortgage and all modifications and extensions. (Woods afft. para. 22)

**RESPONSE:** Padilla admits the facts set forth in this paragraph 26. Padilla denies the validity of the Note and Mortgage, including all modifications and extensions, based on the facts set forth in her Rule 56.1(d) Statement of Facts, ¶ 5-26.

27. There is due and owing as of November 2, 2021, the principal sum of $637,219.63, interest of $195,553.64, escrow for homeowners' insurance of $20,559.19, late fees of $637.03 and advance for inspection/valuation fee of $564.00, for a total balance of $854,533.49, interest continues to accrue at the per diem rate of $193.66. (Woods afft. para. 23)

**RESPONSE:** Padilla denies the facts set forth in this paragraph 27.

28. The divorce judgment between Padilla and Kowalski was entered on December 15, 2019 and Padilla was to take title to the Polk property. (Padilla dep pp. 9-10)

**RESPONSE:** Padilla admits the facts set forth in this paragraph 28.

29. Padilla's claim that as a part of the fraudulent scheme that Kowalski did not submit, and WFB did not request, documentation from the land trust, is based on a lack of documents produced in discovery from the WFB loan file or by Bridgeview Trust No. 1-2228. (Padilla dep. p. 113)

**RESPONSE:** Padilla admits the facts set forth in this paragraph 29. Based on the facts set forth in her Rule 56.1(d) Statement of Facts, ¶ 5-26, Padilla denies that her claim is solely based on the lack of documentation from the FDIC and Bridgeview Bank.

30. Padilla's defense that the note extensions and mortgage modifications were to conceal a non-performing loan is based on a lack of documents and an Inspector General report by the Department of Treasury that doesn't mention the Polk property. (Padilla dep. pp. 114-115)

**RESPONSE:** Padilla admits the facts set forth in this paragraph 29. Based on the facts set forth in her Rule 56.1(d) Statement of Facts, ¶ 5-26, Padilla denies that her claim is solely based on the Inspector General report and lack of documentation from the FDIC and Bridgeview Bank.

Respectfully submitted,

MARTHA PADILLA

By:     s/ Joseph R. Ziccardi
Attorney for Defendant Padilla

Joseph R. Ziccardi, Esq.
**ZICCARDI LAW OFFICES**
77 W. Washington Street, Suite 705
Chicago, Illinois 60602-3641
312-372-3477
jziccardi@ziccardilaw.com