IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JP Morgan Chase Bank, National Association, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Robert Kowalski, a/k/a Robert M. Kowalski, ) <br> Unknown Owners and Non-Record Claimants; ) <br> Chicago Title Land Trust Company s/i/i to ) <br> Bridgeview Bank Group f/k/a Bridgeview Bank ) <br> and Trust Company, as trustee under trust ) <br> agreement dated April 24, 1993 and known as ) <br> Trust Number 1-2228, Martha Padilla, Federal ) <br> Deposit Insurance Corporation, as receiver for ) <br> Washington Federal Bank for Savings, ) <br> ) <br> Defendants. ) | Case No. 19 CV 5770 |

**DEFENDANT MARTHA PADILLA'S STATEMENT OF ADDITIONAL
MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(d)**

The defendant, Martha Padilla ("Padilla"), by and through her attorneys, Ziccardi Law Offices, and for her Statement of Additional Material Facts Pursuant to Local Rule 56.1(d), hereby states as follows:

1. At the time of its creation, Robert Kowalski ("Kowalski") was the sole beneficiary of, and solely had power of direction over, Bridgeview Trust No. 1-2228 (the "Land Trust"), but on September 5, 1997, the Land Trust Agreement (the "Agreement") was amended (the "Amendment") to add Padilla as a beneficiary, as well as to provide that Padilla, along with Kowalski, had power of direction over the Land Trust. Copies of the Trust Agreement and Amendment are attached hereto as Exhibit A.

2. As a result of the Amendment, Bridgeview Bank, as trustee of the Land Trust, could not transfer or encumber the property held by the Land Trust without the prior written

authorization of both Kowalski and Padilla. In particular, the Agreement provides, in pertinent part:

> On the written direction of the party or parties designated on the reverse side hereof as having the power of direction, the trustee will make deeds for, or deeds conveying directly to a trust Grantee, or mortgages or trust deeds … or execute leases or otherwise deal with the title to the trust property including cash or other assets subject to the trust. Ex. A, p. 2.

3. Prior to the Amendment of the Land Trust, in October 1996, Kowalski obtained a loan from Southwest Federal Savings & Loan secured by the Property. In connection with said loan, Kowalski executed a letter of direction authorizing the Trustee to execute the documents and to furnish a certified copy of the Trust Agreement. Said letter of direction is attached hereto as Exhibit B.

4. Padilla went to the Bridgeview Bank branch with Kowalski to execute the Amendment. She had attended numerous functions and events, and as a result, the bank officers were aware that she, along with Kowalski, was a co-beneficial owner, and had joint power of direction, of the Land Trust. *See*, transcript of deposition of Martha Padilla, attached hereto as Exhibit C, p. 41-42.

5. At no time did Padilla execute a letter of direction authorizing the Trustee to execute the WFBS Mortgage. Ex. C, p. 48, l. 2-8.

6. No one has ever been able to produce a signed letter of direction authorizing the Trustee to execute the WFBS Mortgage. Ex. C, p. 51, l. 1-10.

7. During interviews with the FDIC as part of Kowalski's bankruptcy, Padilla advised that she had not authorized any loans on the Property, and that she never signed a letter of direction authorizing any loans on the Property. Ex. C, p. 49, l. 15 – p. 50, l. 9.

8. In Padilla's opinion, Washington Federal Bank was not entitled to rely on the Trustee's execution of the mortgage because it did not do its due diligence to ensure Kowalski was the sole beneficiary on the Land Trust and had authority to direct execution of the mortgage. Had it done so, it would have seen that Padilla had a beneficial interest in, and power of direction over, the Land Trust. Ex. C, p. 52, l. 13 – p. 54, l. 7.

9. Padilla was not aware that the WFBS Mortgage was modified July 28, 2000. Ex. C, p. 57, l. 6-8.

10. Prior to this lawsuit, Padilla had not seen the August 1, 2000 Extension to Note which was only signed by Kowalski in connection with the WFBS Mortgage. Ex. C, p. 59, l. 6-10. *See also*, Extension to Note, attached to FDIC's Statement of Facts as Exhibit B.6.

11. Prior to this lawsuit, Padilla had not seen the April 2, 2001 Extension to Note which was only signed by Kowalski in connection with the WFBS Mortgage. Ex. C, p. 59, l. 11 – p. 60, l. 7. *See also*, Extension to Note, attached to FDIC's Statement of Facts as Exhibit B.7.

12. Padilla had not seen the May 31, 2001 Extension to Note Kowalski signed in connection with the WFBS Mortgage until she saw it in connection with Kowalski's bankruptcy. Ex. C, p. 62, l. 5-15. *See also*, Extension to Note attached to FDIC's Statement of Facts as Exhibit B.8.

13. Although her signature appears to be on the May 31, 2003 Extension to Note, Padilla did not sign it. The signature is not hers, and she was never at the bank to sign it. Ex. C, p. 62, l. 16 – p. 63, l. 12. *See also*, Extension to Note attached to FDIC's Statement of Facts as Exhibit B.9.

14. Although her signature appears to be on the November 1, 2004 Extension to Note, Padilla did not sign it. The signature is not hers, and she was never at the bank to sign it. Ex. C,

p. 76, l. 15 – p. 77, l. 1.  *See also*, Extension to Note dated November 1, 2004 attached hereto as Exhibit D.

15. Padilla was not aware that the Trustee executed a modification of mortgage of the WFBS Mortgage effective as of November 1, 2004.  Ex. C, p. 78, l. 1-20.  *See also*, Modification of Mortgage attached to FDIC's Statement of Facts as Exhibit B.14.

16. The October 1, 2005 Note Modification Agreement purports to be signed in two places by Padilla, but neither signature is hers.  Ex. C, p. 77, l. 11-24.  *See also*, Modification of Mortgage attached to FDIC's Statement of Facts as Exhibit B.10.

17. Although her signature appears to be on the October 1, 2005 Extension to Note, Padilla did not sign it.  Ex. C, p. 80, l. 12-24.  *See also*, Extension to Note attached to FDIC's Statement of Facts as Exhibit B.15.

18. The July 31, 2007 First Payment notice purports to bear Padilla's signature, but she did not sign it.  Ex. C, p. 90, l. 13-20.  *See also,* Ex. E, attached hereto.

19. The July 31, 2007 Modification of Mortgage was executed by the Trustee, but Padilla never executed a letter of direction authorizing the Trustee to sign this document.  Ex. C, p. 90, l. 21 – p. 91, l. 9.  *See also*, Modification of Mortgage attached to FDIC's Statement of Facts as Exhibit B.18.

20. The January 1, 2008 Note Modification Agreement purports to be signed by Padilla, but she did not sign it.  Similarly, the Consent and Acknowledgement of Guarantor purports to bear her signature, but she did not sign that, nor was she ever a guarantor under the loan.  Ex. C, p. 89, l. 15 – p. 90, l. 12.  *See also*, Note Modification Agreement attached to FDIC's Statement of Facts as Exhibit B.17.

21. Although her signature appears to be on the January 1, 2008 Extension to Note, Padilla did not sign it. Ex. C, p. 92, l. 16-21. *See also*, Extension to Note attached to FDIC's Statement of Facts as Exhibit B.19.

22. Although her signature appears to be on the January 1, 2012 Extension to Note, Padilla did not sign it. Ex. C, p. 93, l. 6-14. *See also*, Extension to Note attached to FDIC's Statement of Facts as Exhibit B.20.

23. Padilla's handwriting expert concluded it is highly probable that the signatures on the Extensions to Note dated March 31, 2003, November 1, 2004, October 1, 2005, January 1, 2008, and January 1, 2012 were not signed by Padilla. *See,* Midwest Questioned Documents Report, attached hereto as Exhibit F, p. 6.

24. Padilla's handwriting expert concluded it is highly probable that the signatures on the Note Modification Agreements dated November 1, 2004 and July 31, 2007 were not signed by Padilla. Ex. F, p. 6.

25. The FDIC is not in possession of any letter of direction executed by Padilla authorizing the Trustee of the Land Trust to execute the WFBS Mortgage, or any of the extensions or modifications thereto. *See*, FDIC's Responses to Padilla's Requests to Admit Facts, #13-17, attached hereto as Exhibit G.

26. Since Kowalski and Padilla had joint power of direction over the Land Trust, they both had to agree to and sign a letter of direction for the Land Trustee to act. Because no letter of direction has been produced, the mortgage sought to be foreclosed against Padilla is invalid and cannot be enforced against her. *See*, Expert Report of Randolph Hughes, p. 2, attached hereto as Exhibit H.

27. When a letter of direction is created, copies of it are retained by all parties – the Land Trustee, title company, mortgage lender, attorneys and the beneficiaries – to the transaction. Ex. H, p. 2.

28. Banks lending money on property held in land trusts normally require a certified copy of the trust agreement so it can determine who holds power of direction over the land trust. The certified copy of the land trust agreement is kept with the signed letter of direction as proof that those with power of direction have authorized the land trustee to execute the loan documents. Ex. H, p. 2.

29. The FDIC has no knowledge or information as to the documents Washington Federal Bank for Savings required Kowalski to submit to obtain the loan, or any of the extensions to the promissory note or modifications of the mortgage. *See*, FDIC's Answers to Padilla's Supplemental Interrogatories, #10-11, attached hereto as Exhibit I.

30. The Department of Treasury's Inspector General ("OIG") prepared a report as to the basis of the failure of Washington Federal Bank for Savings. A copy of that report is attached hereto as Exhibit J. Although that report does not specifically identify the Polk Property (or any property specifically), it details the scheme occurring at Washington Federal Bank for Savings. Ex. C, p. 114, l. 1 – p. 115, l. 10.

31. OIG determined that bank examiners missed significant red flags at WFBS and that the bank president and other bank employee had been regularly falsifying loan payments on loans totaling at least $68 million. Ex. J, p. 2-7.

32. The WFBS employees who purported to witness Padilla's signature on the various loan extension documents knew Padilla and were aware of her interest in the Property, but they have been indicted as part of the fraudulent scheme at Washington Federal Bank for

Savings. Ex. C, p. 116, l. 3-16. *See also*, Fourth Superseding Indictment (the "Indictment"), attached hereto as Ex. K.

33. As detailed in the Indictment, WFBS granted loans to Kowalski without the expectation of repayment. Ex. K, ¶ 8-9.

34. In particular, various WFBS board members and bank employees, including Jane Tran and Alicia Mandujano, created false notes, loan modification agreements and other documents, altered appraisals to inflate valuations, to make it appear that loans to Kowalski were properly documented and performing loans. Ex. K, ¶ 32-34.

35. Representatives of Washington Federal Bank knew that the extensions and modifications of mortgage were procured by fraud, as they attested to Padilla's signature when she did not appear before them and sign the documents. Padilla's name was not on the original loan documents, but then suddenly began appearing. Ex. C, p. 117, l. 8 – p. 118, l. 4.

36. The FDIC was unable to produce any IRS form 1099s issued to Kowalski or Padilla. *See*, FDIC's Responses to Padilla's Supplemental Requests for Production attached hereto as Exhibit L, no. 11.

37. WFBS did not issue any demands for payment for default of the WFBS Mortgage; instead, the only demands for payment were made by the FDIC's servicer, Planet Home Finance. Ex. L, no. 2.

38. WFBS, and the former bank president, John Gembara, filed motions to quash the subpoenas Padilla issued in her divorce case to prevent discovery of information regarding the WFBS Mortgage. Ex. C, p. 135, l. 16-21.

39. Kowalski was not required to repay the fraudulent loans received from Washington Federal Bank for Savings. Ex. C, ¶ 12; Ex. K, ¶ 8.

40. The only payment history of payments purportedly made on the WFBS Mortgage show payments beginning in March 2007. *See*, payment history, attached hereto as Exhibit M.

                                                    Respectfully submitted,

                                                    MARTHA PADILLA

                                     By:      s/ Joseph R. Ziccardi
                                                   Attorney for Defendant Padilla

Joseph R. Ziccardi, Esq.
**ZICCARDI LAW OFFICES**
77 W. Washington Street, Suite 705
Chicago, Illinois 60602-3641
312-372-3477
jziccardi@ziccardilaw.com