IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JP MORGAN CHASE BANK, NATIONAL ASSOCIATION )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>ROBERT KOWALSKI, AKA ROBERT M. )<br>KOWALSKI; UNKNOWN OWNERS AND )<br>NON-RECORD CLAIMANTS; CHICAGO )<br>TITLE LAND TRUST COMPANY s/i/i TO )<br>BRIDGEVIEW BANK GROUP FKA )<br>BRIDGEVIEW BANK AND TRUST )<br>COMPANY, AS TRUSTEE UNDER TRUST )<br>AGREEMENT DATED APRIL 24, 1993 AND )<br>KNOWN AS TRUST NUMBER 1-2228; )<br>MARTHA PADILLA; FEDERAL DEPOSIT )<br>INSURANCE CORPORATION, AS )<br>RECEIVER FOR WASHINGTON FEDERAL )<br>BANK FOR SAVINGS, )<br>)<br>Defendants. ) | Case No. 1:19-cv-05770<br><br>Judge Thomas M. Durkin |

**FEDERAL DEPOSIT INSURANCE CORPORATION'S REPLY TO MARTHA PADILLA'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

Defendant/Counter-Plaintiff, Federal Deposit Insurance Corporation, as receiver for Washington Federal Bank for Savings (FDIC-R) for its Reply to the Response of Counter-Defendant, Martha Padilla ("Padilla") to FDIC-R's Motion for Summary Judgment ("Motion") states as follows:

### Introduction

FDIC-R seeks to foreclose upon its mortgage dated August 10, 1999 ("the Mortgage") and signed by the record owner, the land trustee of Bridgeview Bank & Trust Company trust no. 1-2228 ("Bridgeview Trust No. 1-2228"), conveying a lien interest in the property at 1512 W. Polk,

Chicago, Illinois ("the Polk property"). The Mortgage secures a note payable to Washington Federal Bank for Savings ("WFB") for $400,000, signed by Bridgeview Trust No. 1-2228 and Robert Kowalski ("Kowalski"), one of the beneficiaries of the land trust. The Mortgage was subsequently modified on three occasions, each time signed by Bridgeview Trust No. 1-2228, to reflect the eventual increase in the principal indebtedness to $637,219.63. These mortgage modifications were supported by note extensions or note modifications all signed by Kowalski. The Note, as extended, matured on January 1, 2014.

Padilla raises two affirmative defenses. First, she contests the validity of the Mortgage because WFB made the loan apparently without obtaining a letter of direction and because the mortgage loan was purportedly procured fraudulently. Padilla also claims that note extensions after 2003 were invalid since her signatures were forged and therefore, foreclosure of the Mortgage is barred by the statute of limitations.

FDIC-R's Motion points out that a lender can rely on a representation in a mortgage that the land trustee is authorized to sign the mortgage. No further inquiry or documentation is needed. Further, as receiver, FDIC-R can rely on the loan documents to enforce them, unless an exception for fraud in the factum can be proven. Padilla was not a signatory to the Note, only Kowalski, whose signature she does not contest. The Mortgage and subsequent modifications were executed by the land trustee. Padilla's signatures on note extensions starting 4 years after the original loan was made were superfluous since she was not personally obligated on the indebtedness. Consequently, Padilla has no defense to enforcement of the Mortgage as an enforceable lien against the Polk property. The fraud exception has not been established and as such, the defense of fraud is barred against FDIC-R.

FDIC-R's Motion further explained that the mortgage loan matured in January 2014. FDIC was appointed as receiver in December 2017. The Counterclaim was filed in January 2020. The statute of limitations is 6 years after appointment as receiver under FIRREA and 10 years from default under Illinois law. Since FDIC-R can rely on the loan documents, the Counterclaim was timely filed.

Padilla's arguments in her Response are based on several false premises, including the following:

- WFB knew of the fraud on Padilla.

- Since the beneficial interest was held in tenants by the entirety, Padilla's signature was required to have a valid mortgage.

- A letter of direction was required for WFB to have a valid mortgage.

- Padilla's signatures on note extensions were forged and therefore the extensions were not valid.[1]

- FDIC-R has not produced any documents that are part of a "normal mortgage loan file."

- The exception of fraud in the factum has been shown.

Padilla has the burden to prove her defenses. She relies upon inadmissible evidence— (i) an audit report dated November 6, 2018 by the Office of Inspector General, Department of Treasury, providing results of a material loss review to determine, *inter alia*, the causes of WFB's failure ("DOT report"); (ii) a federal indictment (neither the DOT report or Indictment mention the Mortgage or the Polk property); and (iii) an expert report wherein, without factual support, the

---

[1] Padilla denies Kowalski had the authority to unilaterally execute the Note and Mortgage and to sign note modifications and extensions after March 31, 2003. See Response to FDIC-R's Statement of Facts Paragraphs 8, 13-17, 19-23. Padilla denies that Bridgeview Bank had authority to execute the mortgage modifications. See Response to FDIC-R's Statement of Facts Paragraphs 18, 21. These denials did not include a specific reference to any part of the admissible record to support the denial. As a result, each statement of fact is deemed admitted. See L.R. 56.1 (a), (b) (3) (B); see also *Malec v. Sanford,* 191 F.R.D. 581-584 (N.D. Ill. 2000).

3

expert is opining on legal conclusions without any reference to methodology. The Mortgage is enforceable based upon the representations in the Mortgage. Whether Kowalski signed the Note and note extensions and Padilla's signatures, whether forged or not, are irrelevant; do not affect the validity of the Mortgage or Note nor bar their enforcement. Summary judgment against Padilla is warranted.

### Standard of Review

"Summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact". *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F. 3d 504, 510 (7th Cir. 2010). This Court should be mindful that "[o]nly disputes over facts that might affect the outcome of the lawsuit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Likewise, a "mere scintilla of evidence" is insufficient—on its own—to prove a genuine issue of material fact. *Natl Inspection & Repairs, Inc. v. George S. May Int'l Co.,* 600 F.3d 878, 882 (7th Cir. 2010). As the Seventh Circuit has admonished, summary judgment is the "put up or shut up" stage in litigation, *Johnson v. Cambridge Industries, Inc.*, 325 F. 3d 892, 901 (7th Cir. 2003), when a party opposing summary judgment must "wheel out all its artillery" to show there is a viable case that should proceed to trial. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F. 3d 1264, 1270 (7th Cir. 1996).

In opposition to summary judgment, Padilla relies on irrelevant and inadmissible facts. Padilla's premises based on such facts must be disregarded. The Response fails to demonstrate that there are genuine issues of material fact upon which this Court could properly find an enforceable defense to defeat foreclosure of the Mortgage.

4

6158695/1/13664.014

**Argument**

A.     **There is No Admissible Evidence of Fraud to Invalidate the Mortgage**

Padilla admits that she must prove her affirmative defense since FDIC-R has established its *prima facie* case. (Response, p. 5). She claims that she has produced "a deluge" of admissible proof. Padilla is wrong.

First, Padilla claims that FDIC-R cannot produce documents that are part of a "normal mortgage loan file", whatever that means, as somehow implying that this failure shows fraud. (Response p. 6). However, FDIC-R did produce the 1999 mortgage loan file in response to Padilla's first document request. Those documents reveal, *inter alia*, a Uniform Residential Loan Application, tax returns, an appraisal of the Property prior to granting the Mortgage, a 2-page certification by Bridgeview Bank of the land trust agreement, a Loan Settlement Statement, ALTA Statement, Property Insurance Declaration and title policy. (FDIC-R Add. Stmt of Facts, Para. 31).[2] The fact that there is no letter of direction in this mound of documents does not mean the transaction is invalid. Padilla does not reference any law to that effect. Rather, as pointed out in the Motion (Motion, p. 6), a lender may rely on a land trustee's representation that it has the power and authority to execute an instrument where title to the real estate is the primary importance. See: *Gross v. Gross*, 324 Ill App. 3d 872, 875 (1st Dist. 2001); see also *MB Financial Bank, N.A. v. Chicago Title Land Trust Co,* 2019 Ill App (2d) 170659-U, attached as Exhibit A to Padilla's Response. The Mortgage contained language warranting the land trustee's authority to execute the Mortgage. No further verification was needed.

---

[2] FDIC-R is compelled to file An Additional Statement of Material Facts to correct the record because a) Padilla misstates in her additional facts #29 that FDIC-R had no knowledge as to documents submitted for the mortgage loan when FDIC-R produced those documents in discovery, (b) Padilla misstates that WFB did not obtain a certification of the land trust agreement and c) Padilla submits an expert report without disclosing and producing the deposition testimony which illuminates the purported inadmissible opinions in the report.

5

Also, Padilla tries to draw inferences of fraud from a payment history for the last 7 years where no payments were made, the inability to produce Form 1099s, demands for payment produced starting in 2018 after FDIC-R became receiver and WFB filing a motion to quash subpoena in Padilla's divorce case. (Response p. 7). But fraud must be proven with clear and convincing evidence. *Proimos v. Fair Automotive Repair, Inc.*, 808 F.2d 1273, 1276 (7th Cir. 1987). The Court must make reasonable inferences in Padilla's favor; however, the Court cannot do so when the factual foundation is wholly lacking. *McGee v. Brae Transportation Inc.,* 1985 WL 4894 (N.D. Ill 1985). The above unrelated, incongruous events do not provide a proper factual foundation to rise to the heightened level of proof of fraud.

Second, Padilla cannot rely on the Fourth Superseding Indictment ("Indictment") to support her fraud claim. Padilla admits the Indictment does not mention the Property or the Mortgage. (Response p. 7). Notwithstanding, indictments are not evidence. *Scholes v. Afr. Enter., Inc*. 854 F. Supp. 1315, 1324 (N.D. Ill. 1994). An indictment is conclusory, contains only hearsay and is of no probative value. *See United States v. Garcia*, 562 F.2d 411, 417 (7th Cir. 1977). The allegations made in the Indictment cannot be relied upon by the Court as evidence to support Padilla's opposition to the Motion.

Third, Padilla cannot rely upon the DOT report. That report does not mention the Property or the Mortgage. It is axiomatic that the first step in the summary judgment process is to ask whether the evidentiary record establishes a genuine issue of material fact for trial. *Liberty Lobby*, 477 U.S. at 247–48. A fact is "material" if it "might affect the outcome of the suit" under applicable substantive law. *Id.* This Court must determine and only consider facts it believes relevant to the material issues. *See Kibler v. U.S.,* 46 F. Supp. 3d 844 (C.D. Ill. 2014). Relevant evidence is evidence that has any tendency to make the existence of a fact of consequence to the determination

6

of the matter (i.e., "material fact") more probable or less probable than it would be without the evidence. .*FRE 401*. Generally, all relevant evidence is admissible, and irrelevant evidence is inadmissible. *FRE 402*. The court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *FRE* 403.

One, the DOT report should be excluded as unduly prejudicial because it is not sufficiently probative as to fraud complained of by Padilla in this Mortgage transaction. *See Eason v. Flemings Cos., Inc.*, 4 F.3d 989 (5th Cir. 1993) (affirming district court's exclusion of a General Accounting Office report as the "report was a general attack on EEOC investigations . . . [and therefore it was] reasonable . . . to conclude that the report was not sufficiently probative of the EEOC's investigation of [the plaintiff's] charges.") (emphasis in original); *Wells Fargo Bank, N.A. v. LaSalle Bank Nat. Ass'n,* 2011 WL 6300948, at *3 (D. Nev. Dec. 15, 2011) (excluding an office of the comptroller audit as irrelevant because the audit did not involve the MFG program at issue and was unduly prejudicial by confusing the issues).

Two, the DOT report should be excluded as it is a government report to which a future jury would give undue weight. When the "impact of such unfair prejudice would further be enhanced because the report bears the imprimatur of the federal government, leading the jury to grant these statements undue weight," it is proper to exclude such evidence. *Yates v. Ford Motor Co*., No., 2015 WL 2189774, at *16 (E.D.N.C. May 11, 2015); see also *United States v. Dukes*, 242 F. App'x 37, 55 (4th Cir. 2007) ("It is . . . human nature to rely upon an opinion carrying the imprimatur of an entire state."); *Gehl by Reed v. Soo Line R. Co*., 967 F.2d 1204, 1208 (8th Cir. 1992) (affirming district court's exclusion of a Department of Transportation study under Rule 403 due to danger that "government reports, even if not particularly probative, will nonetheless sway the jury by their aura of special reliability and trustworthiness.").

Hence, the DOT report cannot be admitted as evidence because its probative value is substantially outweighed by a danger of implying to a future jury that a fraud occurred in this particular mortgage transaction. Padilla has only presented irrelevant, inadmissible and incongruous evidence. She does not have a viable defense of fraud to defeat enforcement of the Mortgage.

**B.  FDIC-R Can Rely on the Representations Alone in the Mortgage in Making the Loan**

Padilla disagrees with legal authority establishing that a lender can rely on representations in a mortgage and not seek any further assurance of a land trustee's authority to act. (Response p. 9). Padilla maintains that a lender must obtain a letter of direction before making a mortgage loan on property held in a land trust. (Id.) Padilla conflates the duties of a land trustee with the duties of a lender and does not refer to any legal authority to support her argument.

**1.  Legal Authority Establishes that Lenders Can Rely on the Land Trustee's Warranty**

Padilla argues the legal authority relied upon by FDIC-R in the Motion is inapplicable because it is dicta and if a lender knows of alleged infirmities in a letter of direction and the trustee's authority to act, a bank is not entitled to rely on the trustee's signature on a mortgage. The decision in *Gross, supra.* was not dicta. In fact, the case attached by Padilla as Exhibit A, *MB Financial, supra*., cited the same proposition. Most importantly, although making broad general statements (Response p. 10), Padilla has made no evidentiary showing that WFB knew of infirmities at the time the Mortgage was made. Padilla only infers the WFB knew because her signature appeared well after-the-fact on note extensions and Kowalski and bank officials were indicted for criminal conduct in the operations of WFB. As discussed, the Indictment is inadmissible. Only reasonable inferences must be drawn in favor of Padilla and a signature on

8

documents four years after the mortgage loan is made is not a reasonable inference that WFB knew of infirmities when it made the loan.

The only evidence, which Padilla fails to recognize, is the 2-page certified trust agreement in the loan file that shows that Kowalski is the sole beneficiary of the land trust with the sole power of direction. (FDIC-R Add. Stmt of Facts, Para. 31). No assignment of beneficial interest was in the WFB file. Under the Land Trust Beneficial Disclosure Act, whoever makes an affirmation as to the identification of beneficiaries in a land trust, shall be subject to perjury. *765 ILCS 405/3*. Padilla's proffered expert witness admitted that WFB could rely on the certification as accurate. (FDIC-R Add. Stmt. of Facts Para. 39). Thus, a reasonable inference is that the land trustee was making a truthful disclosure and based on that disclosure, WFB knew that the sole beneficiary and holder of the power of direction authorized the mortgage loan by signing the Note.

Moreover, Padilla misconstrues the purpose of a letter of direction in this context. While Padilla focuses on ensuring a land trustee has proper authority to act (Response p. 9), this Motion is about a lender's conduct. The land trustee's duty is to ensure it has the authority to act. Where the lender is concerned that a land trustee has the power and authority to execute the mortgage, the lender may rely upon the warranties of the land trustee in the form of language in a mortgage (*Gross, supra.*). Indeed, the hypothetical set out I Padilla's Response the degree to which her argument has conflated the issues. Padilla argues that unless are required to possess a letter of direction, "anyone can walk into a bank and claim to be a land trustee, swear such is true on the mortgage document and then exit the bank with $500,000 in a mortgage and leave the unknowing landowner-who has never heard of the charlatan—holding the bag. (Response p. 9) Of course, here, Bridgeview Trust 1-2228 *was* the title holder of the Property, and the true land trustee *did* sign the mortgage. The absurd result Padilla's Response offers merely emphasizes that in the

9

present case, the Mortgage *was* signed by the undisputed title owner. The Court should decline Padilla's request to make new law requiring lenders to possess letters of direction when making loans secured by property held in a land trust.

> 2. **Padilla's Proffered Expert Report is Inadmissible and Contradicts Legal Authority**.

Padilla contends that it is standard bank practice to require a certified copy of the land trust agreement to verify who holds the power of direction. (Response p. 10). Whether or not that practice is correct, that certified land trust agreement was in the possession of WFB. (FDIC-R Add. Stmt of Facts, Para. 31.) Padilla goes further to maintain that a letter of direction is required to make a mortgage valid. (Response p. 11). Padilla's sole support for that proposition is a purported expert opinion by Randy Hughes. (Id.) As FDIC-R argues in its motion to strike, Padilla fails to support this statement of fact with admissible evidence. The opinion is inadmissible under FRE. 702 and Fed.R.Civ.P. 26 (a) (2) because it fails to reference methodology and the data considered. Remarkably, Padilla's proffered expert contradicts the purported opinion in the Report by admitting at his deposition: (i) there is no law to support his opinion that a power of direction is required to render a mortgage enforceable and (ii) there are "so many different ways" of entering into a loan with land trustees that "it's hard to say" there is a uniform practice. (FDIC-R Add. Stmt of Facts Para. 32, 41).

Padilla cannot assure herself of a trial merely by trotting out in response to a motion for summary judgment her expert's naked conclusion about an ultimate issue—"Because no letter of direction has been produced for either the mortgage, …the mortgage sought to be foreclosed by the FDIC are invalid and cannot be enforced against Padilla." (Padilla Add. Stmt of Facts Para 26).

Padilla has the burden to establish an expert's report's admissibility. *Lewis v. CITGO Petroleum Corp.*, 561 F. 3d 698, 706 (7th Cir. 2009). She has not and cannot meet that burden.

As stated, admissibility of expert's opinions is governed by FRE 702 and Fed. R. Civ. P. 26 (a) (2). Expert testimony is admissible under FRE 702 if the technical or specialized knowledge of the expert "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Kumho Tire Co. v, Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed. 2d 238 (1999). "It is well-established that expert testimony cannot be based on subjective belief or speculation. *Zenith Elecs. Corp. v. WH-TV Broad Corp.,* 395 F.3d 416, 418 (7th Cir. 2005). "In order for an 'expert report to create a genuine issue of fact, it must provide not merely…conclusions, but the basis for the conclusions.'" *Bourke v. Conger*, 639 F.3d 344, 348 (7th Cir. 2010). The Seventh Circuit has repeatedly admonished litigants: "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process". *Mid-State Fertilizer Co. v. Exchange Nat'l Bank,* 877 F.2d 1333, 1339 (7th Cir. 1989).

A bottom line is all the proffered expert report offers. The proffered report fails to reference any methodology used to afford this Court the ability to access the reliability and soundness of his opinion. It is not clear what analysis was made. The proffered report simply renders an opinion without reviewing the entire bank loan file. (FDIC-R Add. Stmt of Facts, Para 34). The proffered expert has never been involved in a situation where a bank solely relies upon the language in a mortgage. (FDIC-R Add. Stmt. of Facts, Para. 42); *Int'l Surplus Lines Ins. Co. v. Fireman's Fund Ins. Co.,* 1992 WL 22223, at *3 (N.D. Ill. 1992) ("An expert cannot testify regarding the meaning that a trade gives a contract provision if he has never seen such a provision."). The value to the trier of fact of a hired expert's opinion is highly suspect when the party hiring him has put words in his mouth-or in this case, in his report, leaving the proffered expert, in essence, a mere puppet.

11

Moreover, the Federal Rules of Evidence prohibit testimony concerning legal questions. *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) ("expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible"). Surprisingly, the proffered expert admits he is offering a legal conclusion. (FDIC-R Add. Stmt of Facts, Para 43).

In addition, Rule 26 (a) (2) requires a written report that confirms the basis and reasons for an opinion and the data considered. The proffered conclusory report fails to meet the standards for disclosure set out in Rule 26 (a) (2). Thus, the report is inadmissible under Fed.R.Evid. 702 and Rule 26 (a) (2).[3]

Padilla presents no genuine material facts to dispute that FDIC-R can rely on the language in the Mortgage to support enforcement.

### C. Padilla Cannot Show an Exception to the Fraud Exclusion to Allow Her Defense to Proceed

Padilla argues her affirmative defense is not barred by *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942) or *12. U.S.C. Section 1823 (e)* because she has established fraud in the factum by: a) the Indictment of WFB officials for making loans without expecting repayment while making it appear the loans were performing through note extensions; and b) the forgery of her signatures on note extensions. (Response p. 12, 13). Padilla relies upon a Texas state court case, *Commonwealth Land Title Ins. Co. v. Nelson*, 889 S.W. 2d 312 (Tex App. 1994), to purportedly

---

[3] FDIC-R has filed a motion to strike the expert report pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) and Federal Rule of Evidence 702. The opinions are not sufficiently reliable. They lack the necessary link between the conclusions reached and a recognized underlying scientific method. Hence, the proffered report is inadmissible evidence.

establish that since her signature was forged, the note extensions are *void ab initio* and therefore, Padilla can assert her defense against FDIC-R.

Padilla's reliance on *Nelson* is misplaced. There, in connection with the sale of real estate, several documents were forged, including a subordination agreement. The *Nelson* court held that because the subordination agreement was forged when the sale took place, the failed bank that acquired title did not get a first lien and thus the forgery claim could not be defeated by *D'Oench* or *Section 1823 (e)* because they cannot revive a void instrument. In this matter, the alleged forgery and initial Mortgage and Note transaction took place at different times. The subsequent alleged forged note extensions cannot affect the legality of the prior loan transaction where the signatures of the signing parties are not contested. The Mortgage and Note are not void instruments.

Moreover, Padilla presents no authority that her purported signature on the note extensions render those instruments, together with the mortgage modification, void when Kowalski's and the land trustees' signatures are genuine and only their signatures are necessary to extend the Note and modify the Mortgage. As FDIC-R argued in its Motion (Motion, p. 9), the Padilla signatures are superfluous. See also: *General Electric Capital Corporation v. Inacomp Financial Services Inc.*, 1996 WL 277960 (N.D. Ill. 1996) ("a single forgery would not invalidate the lease since as to Shimberg and Advanced, the contract remained valid"); *Midwest Finance and Loan Co. v. Gazdecki*, 1934 WL 1779 (OH App. 1934) ("the forgery of a part of a signature on a promissory note does not invalidate the instrument as to the genuine signatures, in the hands of a holder in due course.").

Thus, the affirmative defense of fraud is barred by *D'Oench* and *Section 1823 (e)*. No exception applies.

### D. Padilla's Signature on The Mortgage Was Not Required

Padilla maintains that her signature is mandated since the beneficial interest was held as tenants by the entirety. (Response p. 14). Padilla relies upon *735 ILCS 5/12-112*. However, she misstates the statute in her Response by omitting the complete preamble when quoting the statute. The statute correctly reads: "Any real property, any beneficial interest in a land trust, or any interest in real property **held in a revocable inter vivos trust or revocable inter vivos trusts created for estate planning purposes**…" (Emphasis added for missing portion of statute). An inter vivos trust is defined as a transfer of property during the lifetime of the settlor. *Kahn v. First Nat. Bank of Chicago,* 216 Ill. App. 3d 272, 276, n.1 (1st Dist. 1991). Padilla fails to show that this beneficial interest was held in an inter vivos trust and thus her reliance on Section 12-112 is incorrect.

Padilla also inaccurately states that the Mortgage was signed by Kowalski. (Response p. 14). Rather, it was signed by the land trustee. The certified copy of the land trust agreement provides that the trustee may make mortgages or trust deeds. (FDIC-R Add. Stmt of Facts, Para. 31). Padilla's signature was not required by the land trust agreement. "A beneficiary who chooses the advantage of the land trust form of ownership may not also act contrary to the terms of the agreement as if he had legal and equitable title when it suits his convenience*." Department of Conservation v. Franzen*, 43 Ill. App. 3d 374, 380 (1st Dist. 1976). Padilla's argument fails by the terms of the land trust agreement.

### E. FDIC-R's Counterclaim Is Not Barred by the Statute of Limitations

Padilla's effort to assert the statute of limitations is premised on an argument that the note extensions are void because her signature was forged. (Response p. 15). Yet, Padilla does not contest that Kowalski's signature was valid or that he solely signed the Note. As discussed in the

14

Motion, Padilla's signature was unnecessary. So long as Kowalski agreed to the note extensions, the maturity date was extended.

As set forth in the Motion (Motion, p. 9), under *12 U.S.C. Section 1821(d)(14)(A)*, FDIC-R has six years after appointment as receiver to file a mortgage foreclosure claim if the limitations period has not yet expired. FDIC-R can rely on the note extensions in determining when it can file suit. The mortgage loan matured on January 1, 2014. There is 10 years to file a mortgage foreclosure under Illinois law. See *735 ILCS 5/13-206*. FDIC became receiver on December 15, 2017. The counterclaim to foreclose was filed on January 8, 2020, well within the 6-year limitation period under Section 1821(d)(14)(A) and the 10-year limitation period under Illinois law. A limitation defense does not apply here.

## Conclusion

Padilla has not met her burden of presenting admissible evidence to support her defenses. As such, FDIC-R is entitled to summary judgment on the two affirmative defenses as a matter of law.

Dated: January 5, 2022                     Respectfully submitted,

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Washington Federal Bank for Savings,**

Defendant/Counter-Plaintiff,

By: /s/ *Eric S. Rein*
        One of Its Attorneys

Eric S. Rein (rrein@hmblaw.com)
ARDC #6181305
Matthew R. Barrett (mbarrett@hmblaw.com)
ARDC #6308549
**HORWOOD MARCUS & BERK CHARTERED**
500 West Madison Street, Suite 3700
Chicago, Illinois 60661
(312) 606-3200

6158695/1/13664.014

James M. Dash (jdash@carlsondash.com)
ARDC #6200504
Jordana E. Thomadsen (jthomadsen@carlsondash.com)
*Admitted pro hac vice*
**CARLSON DASH, LLC**
216 S. Jefferson Street, Suite 504
Chicago, Illinois 60661
(312) 382-1600

**CERTIFICATE OF SERVICE**

The undersigned attorney of record hereby certifies that he caused a true and correct copy of the foregoing **FDIC-R'S REPLY TO MARTHA PADILLA'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT** to be served upon other counsel of record listed below by electronic mail and by placing same in a properly addressed envelope, first-class postage prepaid, and by depositing same in the U.S. Mail located at 500 West Madison Street, Chicago, Illinois 60661 on January 5, 2022, addressed as follows:

Alan Samuel Kaufman
Edward R. Peterka
Manley Deas Kochalski LLC
1 East Wacker Drive, Suite 1250
Chicago, Illinois 60601
ask@manleydeas.com
erpeterka@manleydeas.com

Shana A. Shifrin
Burke, Warren, MacKay & Seritella, P.C.
330 N. Wabash Avenue, 21st Floor
Chicago, Illinois 60611
sshifrin@burkelaw.com

Joseph R. Ziccardi
Gabriella Moretti
Ziccardi Law Offices
77 W. Washington, Suite 705
Chicago, Illinois 60602
jziccardi@ziccardilaw.com
gmoretti@ziccardilaw.com

Peter M. King
King Holloway Lipinski LLC
526 Crescent Boulevard, Suite 318
Glen Ellyn, Illinois 60137
pking@khl-law.com

Adam B. Rome
Zachary Mulcrone
Greiman, Rome & Griesmeyer, LLC
2 N. LaSalle St., Suite 1601
Chicago, IL 60602
arome@grglegal.com
zmulcrone@grglegal.com

/s/ *Eric S. Rein*

6158695/1/13664.014