IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JP MORGAN CHASE BANK, NATIONAL ASSOCIATION ) ) <br> Plaintiff, ) ) <br> v. ) ) ) ) <br> ROBERT KOWALSKI, AKA ROBERT M. ) <br> KOWALSKI; UNKNOWN OWNERS AND ) <br> NON-RECORD CLAIMANTS; CHICAGO ) <br> TITLE LAND TRUST COMPANY s/i/i TO ) <br> BRIDGEVIEW BANK GROUP FKA ) <br> BRIDGEVIEW BANK AND TRUST ) <br> COMPANY, AS TRUSTEE UNDER TRUST ) <br> AGREEMENT DATED APRIL 24, 1993 AND ) <br> KNOWN AS TRUST NUMBER 1-2228; ) <br> MARTHA PADILLA; FEDERAL DEPOSIT ) <br> INSURANCE CORPORATION, AS ) <br> RECEIVER FOR WASHINGTON FEDERAL ) <br> BANK FOR SAVINGS, ) ) <br> Defendants. ) | Case No. 1:19-cv-05770 <br><br> Judge Thomas M. Durkin |

**FDIC-R'S RESPONSES TO MARTHA PADILLA'S STATEMENT OF ADDITIONAL MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(d)**

1.      At the time of its creation, Robert Kowalski ("Kowalski") was the sole beneficiary of, and solely had power of direction over, Bridgeview Trust No. 1-2228 (the "Land Trust"), but on September 15, 1997, the Land Trust Agreement (the "Agreement") was amended (the "Amendment") to add Padilla as a beneficiary, as well as to provide that Padilla, along with Kowalski, had power of direction over the Land Trust. Copies of the Trust Agreement and Amendment are attached hereto as Exhibit A.

    **RESPONSE**: Admits

2.      As a result of the Amendment, Bridgeview Bank, as trustee of the Land Trust, could not transfer or encumber the property held by the Land Trust without the prior written authorization of both Kowalski and Padilla. In particular, the Agreement provides, in pertinent part:

>    On the written direction of the party or parties designated on the reverse side hereof as having the power of direction, the trustee will make deeds for, or deeds conveying directly to a trust Grantee, or mortgages or trust

>deeds … or execute leases or otherwise deal with the title to the trust property including cash or other assets subject to the trust. Ex. A, p. 2.

**RESPONSE**: Admits the language in the Trust Agreement between the Land Trustee, Kowalski and Padilla

3. Prior to the Amendment of the Land Trust, in October 1996, Kowalski obtained a loan from Southwest Federal Savings & Loan secured by the Property. In connection with said loan, Kowalski executed a letter of direction authorizing the Trustee to execute the documents and to furnish a certified copy of the Trust Agreement. Said letter of direction is attached hereto as Exhibit B.

**RESPONSE**: Admits.

4. Padilla went to the Bridgeview Bank branch with Kowalski to execute the Amendment. She had attended numerous functions and events, and as a result, the bank officers were aware that she, along with Kowalski, was a co-beneficial owner, and had joint power of direction, of the Land Trust. See, transcript of deposition of Martha Padilla, attached hereto as Exhibit C, p. 41-42.

**RESPONSE**: Padilla fails to fully support this statement of fact with admissible evidence pursuant to Local Rule 56.1, so this statement is not properly before this Court. FDIC-R denies that the bank officers "were aware" as that is inadmissible hearsay under Fed R. Evid 801, 802. FDIC-R admits the remaining portion of Additional Statement of Fact No. 4.

5. At no time did Padilla execute a letter of direction authorizing the Trustee to execute the WFBS Mortgage. Ex. C, p. 48, 2-8.

**RESPONSE**: Admits that was Padilla's testimony.

6. No one has ever been able to produce a signed letter of direction authorizing the Trustee to execute the WFBS Mortgage. Ex. C, p. 51, 1-10.

**RESPONSE**: Admits that FDIC-R has not produced a signed letter of direction.

7. During interviews with the FDIC as part of Kowalski's bankruptcy, Padilla advised that she had not authorized any loans on the Property, and that she never signed a letter of direction authorizing any loans on the Property. Ex. C, p. 49, 1-15; p.50, 1-9.

**RESPONSE**: Admits that was Padilla's testimony.

8. In Padilla's opinion, Washington Federal Bank was not entitled to rely on the Trustee's execution of the mortgage because it did not do its diligence to ensure Kowalski was the sole beneficiary on the Land Trust and had authority to direct execution of the mortgage. Had it done so, it would have seen that Padilla had a beneficial interest in, and power of direction over, the Land Trust. Ex. C, p. 52, 1-13; p. 54, 1-7.

2

**RESPONSE**: Padilla fails to support this statement of fact with admissible evidence pursuant to Local Rule 56.1, so this statement is not properly before this Court. FDIC-R denies the statement as it is inadmissible under Fed. R. Evid. 701 as a legal conclusion and Padilla has no factual foundation to support the conclusion as Padilla's own counsel raised at the deposition. Ex. C. p. 51, 11-19; p. 52, 1-3, 7-9.

9. Padilla was not aware that the WFBS Mortgage was modified July 28, 2000. Ex. C, p. 57, 6-8.

**RESPONSE**: Admits that was Padilla's testimony.

10. Prior to this lawsuit, Padilla had not seen the August 1, 2000 Extension to Note which was only signed by Kowalski in connection with WFBS Mortgage. Ex. C, p. 59, 1. 6-10. See also, Extension to Note, attached to FDIC's Statement of Facts as Exhibit B.6.

**RESPONSE**: Admits that was Padilla's testimony.

11. Prior to this lawsuit, Padilla had not seen the April 2, 2001 Extension to Note which was only signed by Kowalski in connection with the WFBS Mortgage. Ex. C, p. 59, 1-11; p. 60, 1-7. See also, Extension to Note attached to FDIC's Statement of Facts as Exhibit B.7.

**RESPONSE**: Admits that was Padilla's testimony.

12. Padilla had not seen the May 31, 2001 Extension to Note Kowalski signed in connection with the WFBS Mortgage until she saw it in connection with Kowalski's bankruptcy. Ex. C, p. 62, 5-15. See also, Extension to Note attached to FDIC's Statement of Facts as Exhibit B.8.

**RESPONSE**: Admits that was Padilla's testimony.

13. Although her signature appears to be on the May 31, 2003 Extension of Note, Padilla did not sign it. The signature is not hers, and she was never at the bank to sign it. Ex. C, p. 62, 1-16; p. 63, 1-12. See also, Extension to Note attached to FDIC's Statement of Facts as Exhibit B.9.

**RESPONSE**: Admits that was Padilla's testimony.

14. Although her signature appears to be on the November 1, 2004 Extension to Note, Padilla did not sign it. The signature is not hers, and she was never at the bank to sign it. Ex. C, p. 76, 1-15; p. 77, 1.. See also, Extension to Note dated November 1, 2004 attached hereto as Exhibit D.

**RESPONSE**: Admits that was Padilla's testimony.

15. Padilla was not aware that the Trustee executed a modification of mortgage on the WFBS Mortgage effective as of November 1, 2004. Ex. C, p. 78, 1-20. See also, Modification of Mortgage attached to FDIC's Statement of Facts as Exhibit B.14.

**RESPONSE**: Admits that was Padilla's testimony.

16. The October 1, 2005 Note Modification Agreement purports to be signed in two places by Padilla, but neither signature is hers. Ex. C, p. 77, 11-24. See also, Modification of Mortgage attached to FDIC's Statement of Facts as Exhibit B.10.

**RESPONSE**: Admits that was Padilla's testimony.

17. Although her signature appears to be on the October 1, 2005 Extension to Note, Padilla did not sign it. Ex. C, p. 80, 12-24. See also, Extension to Note attached to FDIC's Statement of Facts as Exhibit B.15.

**RESPONSE**: Admits that was Padilla's testimony.

18. The July 31, 2007 First Payment notice purports to bear Padilla's signature, but she did not sign it. Ex. C, p. 90, 13-20. See also, Ex. E, attached hereto.

**RESPONSE**: Admits that was Padilla's testimony.

19. The July 31, 2007 Modification of Mortgage was executed by the Trustee, but Padilla never executed a letter of direction authorizing the Trustee to sign this document. Ex. C, p. 90, 1-21; p. 91, 1-9. See also, Modification of Mortgage attached to FDIC's Statement of Facts as Exhibit B.18.

**RESPONSE**: Admits that was Padilla's testimony.

20. The January 1, 2008 Note Modification Agreement purports to be signed by Padilla, but she did not sign it. Similarly, the Consent and Acknowledgement of Guarantor purports to bear her signature, but she did not sign that, nor was she ever a guarantor under the loan. Ex. C, p. 89, 1- 1; p. 90, 1- 12. See also, Note Modification Agreement attached to FDIC's Statement of Facts as Exhibit B.17.

**RESPONSE**: Admits that was Padilla's testimony.

21. Although her signature appears to be on the January 1, 2008 Extension to Note, Padilla did not sign it. Ex. C, p. 92, 16-21. See also, Extension to Note attached to FDIC's Statement of Facts as Exhibit B.19.

**RESPONSE**: Admits that was Padilla's testimony.

6146037/1/13664.014

22. Although her signature appears to be on the January 1, 2012 Extension to Note, Padilla did not sign it. Ex. C, p. 93, 6-14. See also, Extension to Note attached to FDIC's Statement of Facts as Exhibit B.20.

**RESPONSE**: Admits that was Padilla's testimony.

23. Padilla's handwriting expert concluded it is highly probably that the signatures on the Extensions to Note dated March 31, 2003, November 1, 2004, October 1, 2005, January 1, 2008, and January 1, 2012 were not signed by Padilla. See, Midwest Questioned Documents Report, attached hereto as Exhibit F, p. 6.

**RESPONSE**: Admits that was the expert's opinion.

24. Padilla's handwriting expert concluded it is highly probable that the signatures on the Note Modification Agreements dated November 1, 2004 and July 31, 2007 were not signed by Padilla. Ex. F, p. 6.

**RESPONSE**: Admits that was the expert's opinion.

25. The FDIC is not in possession of any letter of direction executed by Padilla authorizing the Trustee of the Land Trust to execute the WFBS Mortgage, or any of the extensions or modifications thereto. See, FDIC's Responses to Padilla's Requests to Admit Facts, #13-17, attached hereto as Exhibit G.

**RESPONSE**: Admits.

26. Since Kowalski and Padilla had joint power of direction over the Land Trust, they both had to agree to and sign a letter of direction for the Land Trustee to act. Because no letter of direction has been produced, the mortgage sought to be foreclosed against Padilla is invalid and cannot be enforced against her. See, Expert Report of Randolph Hughes, p. 2, attached hereto as Exhibit H.

**RESPONSE**: Padilla fails to support this statement of fact with admissible evidence pursuant to Local Rule 56.1, so it is not properly before this Court. FDIC-R denies the statement as the opinion in the Report is inadmissible under *Fed R. Evid. 702* and *Fed.R.Civ.P. 26 (a) (2)*. "In order for an 'expert report to create a genuine issue of fact, it must provide not merely…conclusions, but the basis for the conclusions.'" *Bourke v. Conger*, 639 F.3d 344, 348 (7th Cir. 201). The opinion must reference methodology and the data considered. See: *Rule 26 (a) (2)*. Also, expert testimony is prohibited as to legal questions. *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) ("expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible"). Finally, expert testimony must be consistent with the law; otherwise it is inadmissible. *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 796 (N.D. Ill. 2005). Under Illinois law, a third party, such as a lender, can rely on the trustee's representation that it has the power and authority to execute an instrument. *Gross v. Gross*, 324 Ill. App. 3d 872, 875 (1st Dist. 2001). And, since under the Land Trust Beneficial Disclosure Act whoever makes an affirmation as to the identification of beneficiaries

6146037/1/13664.014

in a land trust shall be subject to perjury, a party can rely on a certification from a land trustee as accurate. *765 ILCS 405/3*.

27. When a letter of direction is created, copies of it are retained by all parties – the Land Trustee, title company, mortgage lender, attorneys and the beneficiaries – to the transaction. Ex. H, p. 2.

**RESPONSE**: Padilla fails to support this statement of fact with admissible evidence pursuant to Local Rule 56.1, so it is not properly before this Court. FDIC-R denies the statement as the opinion in the Report is inadmissible under Fed R. Evid. 702 and Fed.R.Civ.P. 26 (a) (2). "In order for an 'expert report to create a genuine issue of fact, it must provide not merely…conclusions, but the basis for the conclusions.'" *Bourke v. Conger*, 639 F.3d 344, 348 (7th Cir. 2010). The opinion must reference methodology and the data considered. See: Rule 26 (a) (2).

28. Banks lending money on property held in land trusts normally require a certified copy of the trust agreement so it can determine who holds power of direction over the land trust. The certified copy of the land trust agreement is kept with the signed letter of direction as proof that those with power of direction have authorized the land trustee to execute the loan documents. Ex. H, p. 2.

**RESPONSE**: Padilla fails to support this statement of fact with admissible evidence pursuant to Local Rule 56.1, so it is not properly before this Court. FDIC-R denies the statement as the opinion in the Report is inadmissible under Fed R. Evid. 702 and Fed.R.Civ.P. 26 (a) (2). "In order for an 'expert report to create a genuine issue of fact, it must provide not merely…conclusions, but the basis for the conclusions.'" *Bourke v. Conger*, 639 F.3d 344, 348 (7th Cir. 2010). The opinion must reference methodology and the data considered. See: Rule 26 (a) (2).

29. The FDIC has no knowledge or information as to the documents Washington Federal Bank for Savings required Kowalski to submit to obtain the loan, or any of the extensions to the promissory note or modifications of the mortgage. See, FDIC's Answers to Padilla's Supplemental Interrogatories, #10-11, attached hereto as Exhibit I.

**RESPONSE**: Denies. FDIC-R answered in the identified Answers to Supplemental Interrogatories that it had in its possession the documents in Polk mortgage loan file and was entitled to rely on those loan records. See FDIC-R Additional Stmt of Facts Para. 31 as to those loan records in the bank file.

30. The Department of Treasury's Inspector General ("OIG") prepared a report as to the basis of the failure of Washington Federal Bank for Savings. A copy of that report is attached hereto as Exhibit J. Although that report does not specifically identify the Polk Property (or any property specifically), it details the scheme occurring at Washington Federal Bank for Savings. Ex. C, p. 114, 1. 1 – p. 115, 1. 10.

6

**RESPONSE**: Admits that the report provided results of a material loss review to determine, *inter alia*, the causes of Washington Federal Bank for Savings ("WFB")'s failure. The report criticized the bank examiners' oversight. The report does not address in any way the Mortgage or the Polk Property. However, Padilla fails to support this statement of fact with admissible evidence pursuant to Local Rule 56.1, so this statement is not properly before this Court. FDIC-R denies the admissibility of the report under Fed. R. Evid. 403 as its probative value is substantially outweighed by the danger of unfair prejudice. One, the report should be excluded as unduly prejudicial because it is not sufficiently probative as to fraud complained of by Padilla in this Mortgage loan transaction. See *Eason v. Flemings Cos., Inc*., 4 F.3d 989 (5th Cir. 1993). Two, since the particular transaction is not the subject of the report, the "impact of such unfair prejudice would further be enhanced because the report bears the imprimatur of the federal government, leading a future jury to grant these statements undue weight," and as such, it is proper to exclude such evidence. *Yates v. Ford Motor Co.,* No. 5:12-CV-752-FL, 2015 WL 2189774, at *16 (E.D.N.C. May 11, 2015).

31. OIG determined that bank examiners missed significant red flags at WFBS and that the bank president and other bank employees had been regularly falsifying loan payments on loans totaling at least $68 million. Ex. J, p. 2-7.

**RESPONSE**: Padilla fails to support this statement of fact with admissible evidence pursuant to Local Rule 56.1, so this statement is not properly before this Court. FDIC-R denies the admissibility of the statements from the report under Fed. R. Evid. 403 as its probative value is substantially outweighed by the danger of unfair prejudice. One, the report should be excluded as unduly prejudicial because it is not sufficiently probative as to fraud complained of by Padilla in this Mortgage transaction. *See Eason v. Flemings Cos., Inc*., 4 F.3d 989 (5th Cir. 1993). Two, the "impact of such unfair prejudice would further be enhanced because the report bears the imprimatur of the federal government, leading a future jury to grant these statements undue weight," and as such, it is proper to exclude such evidence. *Yates v. Ford Motor Co*., No. 5:12-CV-752-FL, 2015 WL 2189774, at *16 (E.D.N.C. May 11, 2015).

32. The WFBS employees who purported to witness Padilla's signature on the various loan extension documents knew Padilla and were aware of her interest in the Property, but they have been indicted as part of the fraudulent scheme at Washington Federal Bank for Savings. Ex. C, p. 116, 1. 3-16. See also, Fourth Superseding Indictment (the "Indictment"), attached hereto as Ex. K.

**RESPONSE**: Denies that Padilla testified about discussions with WFB employees and in fact, she said she could not recall any discussions. Ex. C, p. 116, 19-10. Further, Padilla fails to support this statement of fact with admissible evidence pursuant to Local Rule 56.1, so this statement is not properly before this Court. The statement that employees were "aware" is inadmissible hearsay under Fed R. Evid 801, 802. Also, statements based on the Indictment are inadmissible as indictments are not evidence. *Scholes v. Afr. Enter., Inc*. 854 F. Supp. 1315, 1324 (N.D. Ill. 1994). An indictment is conclusory, contains only hearsay and is of no probative value. See *United States v. Garcia*, 562 F.2d 411, 417 (7th Cir. 1977).

7

33. As detailed in the Indictment, WFBS granted loans to Kowalski without the expectation of repayment. Ex. K, ¶ 8-9.

**RESPONSE**: Denies. Padilla fails to support this statement of fact with admissible evidence pursuant to Local Rule 56.1, so this statement is not properly before this Court. Statements based on the Indictment are inadmissible as indictments are not evidence. *Scholes v. Afr. Enter., Inc*. 854 F. Supp. 1315, 1324 (N.D. Ill. 1994). An indictment is conclusory, contains only hearsay and is of no probative value. See *United States v. Garcia,* 562 F.2d 411, 417 (7th Cir. 1977).

34. In particular, various WFBS board members and bank employees, including Jane Tran and Alicia Mandujano, created false notes, loan modification agreements and other documents, altered appraisals to inflate valuations, to make it appear that loans to Kowalski were properly documented and performing loans. Ex. K, ¶ 32-34.

**RESPONSE**: Denies. Padilla fails to support this statement of fact with admissible evidence pursuant to Local Rule 56.1, so this statement is not properly before this Court. Statements based on the Indictment are inadmissible as indictments are not evidence. *Scholes v. Afr. Enter., Inc*. 854 F. Supp. 1315, 1324 (N.D. Ill. 1994). An indictment is conclusory, contains only hearsay and is of no probative value. See *United States v. Garcia*, 562 F.2d 411, 417 (7th Cir. 1977).

35. Representatives of Washington Federal Bank knew that the extensions and modifications of mortgage were procured by fraud, as they attested to Padilla's signature when she did not appear before them and sign the documents. Padilla's name was not on the original loan documents, but then suddenly began appearing. Ex. C, p. 117, 1. 8 – p. 118, 1. 4.

**RESPONSE**: Admits that Padilla's signature did not appear on the original loan documents. Padilla fails to support this statement of fact with admissible evidence pursuant to Local Rule 56.1, so this statement is not properly before this Court. FDIC-R denies that WFB representatives "knew" as that is inadmissible hearsay under Fed R. Evid 801, 802.

36. The FDIC was unable to produce any IRS form 1099s issued to Kowalski or Padilla. See, FDIC's Responses to Padilla's Supplemental Requests for Production attached hereto as Exhibit L, no. 11.

**RESPONSE**: Admits that no Form 1099s were in the bank loan file.

37. WFBS did not issue any demands for payment for default of the WFBS Mortgage; instead, the only demands for payment were made by the FDIC's servicer, Planet Home Finance. Ex. L, no. 2.

**RESPONSE**: Admits that the only demands for payment in FDIC-R's possession were by its servicer.

8

38. WFBS, and the former bank president, John Gembara, filed motions to quash the subpoenas Padilla issued in her divorce case to prevent discovery of information regarding the WFBS Mortgage. Ex. C, p. 135, 1. 16-21.

**RESPONSE**: Admits that was Padilla's testimony.

39. Kowalski was not required to repay the fraudulent loans received from Washington Federal Bank for Savings. Ex. C, ¶ 12; Ex. K, ¶ 8.

**RESPONSE**: Denies as the support references Ex. C, which is Padilla's deposition testimony and there is no paragraph 12. And, Padilla fails to support this statement of fact with admissible evidence pursuant to Local Rule 56.1, so this statement is not properly before this Court. The Indictment is inadmissible as indictments are not evidence. *Scholes v. Afr. Enter., Inc*. 854 F. Supp. 1315, 1324 (N.D. Ill. 1994). An indictment is conclusory, contains only hearsay and is of no probative value. See *United States v. Garcia*, 562 F.2d 411, 417 (7th Cir. 1977).

40. The only payment history of payments purportedly made on the WFBS Mortgage show payments beginning in March 2007. See, payment history, attached hereto as Exhibit M.

**RESPONSE**: Admits the payment history beginning March 2007 attached as Ex. M.

Dated: January 5, 2022

Respectfully submitted,

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Washington Federal Bank for Savings,**

Defendant/Counter-Plaintiff,

By: /s/ Eric S. Rein
       One of Its Attorneys

Eric S. Rein (rrein@hmblaw.com)
ARDC #6181305
Matthew R. Barrett (mbarrett@hmblaw.com)
ARDC #6308549
**HORWOOD MARCUS & BERK CHARTERED**
500 West Madison Street, Suite 3700
Chicago, Illinois 60661
(312) 606-3200

6146037/1/13664.014

James M. Dash (jdash@carlsondash.com)
ARDC #6200504
Jordana E. Thomadsen (jthomadsen@carlsondash.com)
*Admitted pro hac vice*
**CARLSON DASH, LLC**
216 S. Jefferson Street, Suite 504
Chicago, Illinois 60661
(312) 382-1600

**CERTIFICATE OF SERVICE**

The undersigned attorney of record hereby certifies that he caused a true and correct copy of the foregoing **FDIC-R'S RESPONSES TO MARTHA PADILLA'S STATEMENT OF ADDITIONAL MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(d)** to be served upon other counsel of record listed below by electronic mail and by placing same in a properly addressed envelope, first-class postage prepaid, and by depositing same in the U.S. Mail located at 500 West Madison Street, Chicago, Illinois 60661 on January 5, 2022, addressed as follows:

Alan Samuel Kaufman
Edward R. Peterka
Manley Deas Kochalski LLC
1 East Wacker Drive, Suite 1250
Chicago, Illinois 60601
ask@manleydeas.com
erpeterka@manleydeas.com

Joseph R. Ziccardi
Gabriella Moretti
Ziccardi Law Offices
77 W. Washington, Suite 705
Chicago, Illinois 60602
jziccardi@ziccardilaw.com
gmoretti@ziccardilaw.com

Adam B. Rome
Zachary Mulcrone
Greiman, Rome & Griesmeyer, LLC
2 N. LaSalle St., Suite 1601
Chicago, IL 60602
arome@grglegal.com
zmulcrone@grglegal.com

Shana A. Shifrin
Burke, Warren, MacKay & Seritella, P.C.
330 N. Wabash Avenue, 21st Floor
Chicago, Illinois 60611
sshifrin@burkelaw.com

Peter M. King
King Holloway Lipinski LLC
526 Crescent Boulevard, Suite 318
Glen Ellyn, Illinois 60137
pking@khl-law.com

/s/ Eric S. Rein