### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JP MORGAN CHASE BANK, NATIONAL ASSOCIATION,<br><br>        Plaintiff,<br><br>     v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Washington Federal Bank for Savings, et al.,<br><br>        Defendants. | No. 19 C 05770<br><br>Judge Thomas M. Durkin |

### MEMORANDUM OPINION AND ORDER

This case originated with a foreclosure action filed by JP Morgan Chase Bank, N.A. under Illinois law. Chase named several defendants, including the Federal Deposit Insurance Corporation (as Receiver for Washington Federal Bank for Savings, referred to herein as "FDIC-R") and Martha Padilla. Padilla filed an Answer and Affirmative Defenses to Chase's complaint and thereafter filed a third-party complaint against First Midwest Bank (as successor in interest to Bridgeview Bank and Trust, referred to herein as "FMB"). FDIC-R answered and filed a counterclaim against Padilla and others to foreclose a mortgage on the same property as Chase's claim.

1

The following motions are now before the Court: (1) Chase's motion for partial summary judgment on Padilla's First Affirmative Defense, R. 127;[1] (2) FDIC-R's motion for summary judgment on Padilla's affirmative defenses to its Second Amended Counterclaim, R. 169; (3) FDIC-R and Chase's joint motion to strike the expert report of Randy Hughes offered by Padilla, R. 183, 186; and (4) FMB's motion to dismiss Padilla's First Amended Third-Party Complaint, R. 143. A full statement of the resolution of these motions is provided at the conclusion of this opinion.

## Background

On October 5, 1993, Robert Kowalski placed title to the real property located at 1512 W. Polk St. in Chicago in a land trust known as Trust Number 1-2228. Bridgeview Bank and Trust Company was trustee under a trust agreement dated April 24, 1993, with Kowalski as the beneficial owner. Kowalski was Padilla's husband at that time.

On February 18, 1997, the Trust executed a $372,000.00 mortgage on the Polk Property in favor of Washington Federal Bank for Savings ("the 1997 WFB Mortgage"). The 1997 WFB Mortgage was recorded against the Polk Property on February 25, 1997 in the Cook County Recorder of Deeds Office as Document Number 97-128837. R. 127-2 ¶ 2.

---

[1] Chase originally sought summary judgment on Count II of its complaint as well, but subsequently withdrew that portion of its motion.

On September 5, 1997, the Trust was amended to add Padilla as a beneficiary with Kowalski as tenants by the entirety. R. 149 ¶ 2; R. 171 ¶ 5. The amendment also vested power of direction over the Trust in both Kowalski and Padilla. R. 149 ¶ 2.

On May 8, 1998, the Trust executed a $382,000 mortgage on the Polk Property in favor of Washington Mutual Bank, F.A. The mortgage was recorded as Document Number 98410464 and subsequently assigned to Chase (the "Chase Mortgage"). It was re-recorded on November 13, 2013 as Document Number 1332215071. R. 127-2 ¶¶ 3-4. An addendum to the promissory note attached to the mortgage contained the following representation:

> This Instrument (Note) is executed by BRIDGEVIEW BANK AND TRUST COMPANY, AS TRUSTEE UNDER TRUST AGREEMENT DATED APRIL 24, 1993 AND KNOWN AS TRUST NUMBER 1-2228 (the "Trustee"), not personally, but as Trustee as aforesaid in the exercise of the power and authority conferred upon and vested in it as such Trustee and BRIDGEVIEW BANK AND TRUST hereby warrants that it possesses full power and authority to execute this instrument….

R. 33-1, at 24. The Chase Mortgage was used to refinance the 1997 WFB Mortgage and was conditioned upon receiving a complete and unencumbered first mortgage lien interest in the Polk Property as security. R. 127-2 ¶ 5. The balance of the 1997 WFB Mortgage paid with proceeds from the Chase Mortgage totaled $374,999.05. R. 127-2 ¶ 6.

On August 10, 1999, the Trust executed another mortgage on the Polk Property in favor of WFB in the amount of $400,000 ("the 1999 WFB Mortgage"). R. 171 ¶¶ 8, 10. The 1999 WFB Mortgage was recorded with the Cook County Recorder of Deeds as Document Number 99797136. R. 171 ¶ 10. The mortgage documentation includes a provision stating, "Borrower (Bridgeview Trust No. 1-2228) is lawfully seised of the

3

estate hereby conveyed and has the right to mortgage, grant and convey the Property …." R. 171 ¶ 11. The 1999 WFB Mortgage was modified on July 28, 2000 and recorded as Document Number 00926448. R. 171 ¶ 12. Kowalski and/or the Trust extended the promissory note in favor of WFB several times in between the year 2000 and 2012. R. 171 ¶¶ 13-23. Padilla's signature appears on several of the extensions beginning in 2003, but Padilla denies signing them and testified that those signatures are forgeries. R. 176 ¶¶ 13-22. The note matured on January 1, 2014. R. 171 ¶ 23.

On December 15, 2017, the FDIC was appointed as Receiver for WFB. R. 171 ¶ 25. It currently holds the note and mortgage. R. 171 ¶ 26. FDIC-R asserts that the current balanced owed is over $850,000 and that interest continues to accrue at the per diem rate of $139.66. R. 171 ¶ 27.

According to Padilla, the 1997 WFB Mortgage, the Chase Mortgage, and the 1999 WFB Mortgage and subsequent modifications are all invalid. Padilla claims that the 1997 WFB Mortgage is invalid because it was procured through a fraudulent scheme between Kowalski and WFB. R. 149 ¶¶ 14, 15. She claims that both the Chase Mortgage and the 1999 WFB Mortgage (plus its many modifications) are invalid because they were executed without an authorizing letter of direction signed by both Kowalski and Padilla. R. 149 ¶¶ 6-8; R. 176 ¶¶ 5-7. 25.

Bridgeview Bank and Trust Company's trust division was eventually transferred to Bridgeview Bank Group. Bridgeview Bank Group's trust division was then purchased by Chicago Title Land Trust Company in 2010. FMB then purchased Bridgeview Bank Group in 2019. R. 144, at 4-5.

4

## Analysis

I.  <u>Chase's Motion for Partial Summary Judgment on Padilla's First Affirmative Defense</u>

Padilla's first affirmative defense to Chase's foreclosure action is that the Chase Mortgage is invalid because it was not properly authorized by the Trust. Chase moves for partial summary judgment on this defense, arguing that both it and Washington Mutual Bank were entitled to rely on Kowalski's signature and the Trust's representation that it had authority to execute the mortgage.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 2021 WL 4486445, at *1 (7th Cir. Oct. 1, 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The general rule in Illinois is that "a lender is entitled to rely on the trustee's representation that it is authorized to enter into the mortgage." *MB Fin. Bank, N.A. v. Chicago Title Land Tr. Co.*, 2019 WL 457645, at *9 (Ill. App. Ct. Feb. 1, 2019) (citing *In re Marriage of Gross*, 756 N.E.2d 312, 315-16 (Ill. App. Ct. 2001)). An exception to this rule may arise if the lender had "notice of infirmities" in the trustee's signature or authority to act. *See id.* (citing *Grot v. First Bank of Schaumburg*, 684 N.E.2d 1016, 1019).

Padilla argues that this exception applies here because "there is a genuine issue of fact as to whether Chase had notice that the authorization for the loan was invalid." R. 147, at 4. However, Padilla has cited to no evidence supporting her position that Chase, or Washington Mutual before it, had such notice. She speculates that Washington Mutual "must have" been provided with trust documentation, and that such documentation "should have" apprised it of improprieties. R. 147, at 6. She also claims that there is "no evidence whatsoever that the Trustee acted with the proper direction." R. 147, at 5.

Padilla's speculation is insufficient to meet her burden on summary judgment. Not only has she failed to identify more than a "mere scintilla" of evidence, but her arguments would impose a greater burden on Washington Mutual and Chase than Illinois law requires. The Trust explicitly warranted that it was authorized to execute the mortgage, and that is all the evidence Washington Mutual needed of its authority. *See MB Fin.*, 2019 WL 457645, at *18 ("[G]enerally, when a trustee transacts with a third party, the third party may rely on the trustee's warranty that it is authorized

to enter into the transaction. The third party need not investigate or question whether the trustee is acting upon a legitimate letter of direction."). At least as it pertains to Padilla's first affirmative defense, on which Padilla bears the burden of proof, Chase is not required to prove that the Trust acted with proper authorization. *See Firstmerit Bank, N.A. v. Walsh*, 2014 WL 883541, at *3 (N.D. Ill. Mar. 5, 2014) ("Under 735 ILCS 5/15-1504, a plaintiff seeking foreclosure must attach a copy of the mortgage and the note. Once a plaintiff establishes this *prima facie* case for mortgage foreclosure, the burden shifts to the defendants to establish a defense.").

For Padilla's defense to survive summary judgment, she needed to identify specific evidence surrounding the circumstances of the mortgage transaction to find that a genuine issue of fact existed as to whether the third-party bank had notice of a forged letter of direction. For example, the court in *MB Financial* cited evidence that the person who allegedly signed the letter could not have been present in the place where it was signed. *See* 2019 WL 457645, at *18.

In contrast, here Padilla has not explained why Washington Mutual should have known that the terms of the Trust required the mortgage be executed with an authorizing letter of direction signed by both Kowalski and Padilla. Padilla has identified no "smoking gun" document or other evidence that would suggest Washington Mutual should have been on notice that the Trust's authorization was suspect. The only way Washington Mutual could have *potentially* discovered the problem was to disregard the Trust's warranty of authority and delve into the conduct of the beneficiaries to verify they had given such authorization. Washington Mutual

should not be blamed for declining to do so. *See Grot*, 684 N.E.2d at 92-93 ("We are reluctant to use the term 'void' where the rights of an innocent third party have intervened. This is particularly the case when we consider that the actual documents (the note and mortgage) are not forgeries and there is no way for the grantee or mortgagee to determine the forgery of documents between the trustee and its beneficiaries.").

Accordingly, the Court finds that Padilla has not met her burden on summary judgment, and that Chase is entitled to judgment on Padilla's first affirmative defense.

II.   <u>FDIC-R's Motion for Summary Judgment on Padilla's Affirmative Defenses to its Second Amended Counterclaim</u>

FDIC-R also seeks foreclosure on a mortgage against the Polk Property, specifically the 1999 WFB Mortgage. Padilla raised two affirmative defenses: First, that the 1999 WFB Mortgage was invalid as part of a fraudulent scheme involving Kowalski and bank officials. Second, that the foreclosure action was barred by the 10-year statute of limitations because the mortgage matured on July 31, 2000 and was not properly extended.

As Padilla acknowledges, FDIC-R has established a *prima facie* case for foreclosure by providing the mortgage and the note and showing that default occurred. The same rules set out above regarding a third-party lender's right to rely on a trustee's representation of authority apply to WFB. Thus, to succeed in her first affirmative defense, Padilla must show that WFB had "notice of infirmities" in the 1999 Mortgage or its various extensions.

Padilla cites several pieces of evidence in support. First, she cites an absence of documentation within the mortgage loan file that she claims would ordinarily be present. Second, she cites an indictment naming several individuals directly involved with the 1999 WFB Mortgage, including Kowalski and various bank officials. Third, she cites a report from the Treasury Department's Office of the Inspector General that investigated WFB and concluded that the institution failed "because of fraud in the bank's loan activity perpetrated by bank employees."

Padilla's claim cannot survive summary judgment because this evidence has little to no probative value to the issues in this case. First, the Court declines to consider the allegations in the indictment as evidence on summary judgment. Indictments consist of conclusory allegations and are often premised on hearsay or other inadmissible evidence. It is doubtful that the information in the cited indictment, which in any event does not mention the Polk Property, would be admissible at trial except in other forms that Padilla has not identified. Accordingly, the Court does not credit the indictment at this stage. *See Scholes v. African Enter., Inc.*, 854 F. Supp. 1315, 1324 (N.D. Ill. 1994) (refusing to consider allegations in indictment as evidence on summary judgment). Removing the indictment from the mix significantly undermines the support for Padilla's *modus operandi* argument that WFB engaged in a fraudulent scheme in conjunction with Kowalski. Padilla claims that evidence of payment history on the loan is indicative of fraud and should have put WFB on notice, but this is simply an inference from a lack of information and likewise relies on allegations in the indictment.

Padilla's argument premised on the lack of documentation in the loan file establishing its validity is akin to her argument against the Chase Mortgage—that it was incumbent on WFB to obtain and verify a letter of direction notwithstanding the warranty of authority from the Trust. Once again, Padilla seeks to impose a greater burden on WFB than Illinois law demands. It is undisputed that the mortgage documentation warranted to WFB that the Trust had authority to enter into the loan agreement. R. 175 ¶ 11. WFB was not obligated to go behind the warranty and independently verify the Trust's authority. *See MB Fin.*, 2019 WL 457645, at *18. Padilla's citation to the nearly 100-year-old decision in *Paine* is unavailing since that case dealt with an "assumed agent," not a situation where a trustee explicitly warranted its authority to execute the challenged transaction. *See Paine v. Sheridan Tr. & Sav. Bank*, 174 N.E. 368, 370 (Ill. 1930). And as discussed below, Padilla's proffered expert evidence is inadmissible on this point and does not create a triable issue of fact.

All that remains is the Treasury OIG Report concerning the failure of WFB. FDIC-R urges the Court to exclude the report as irrelevant or unduly prejudicial because the report does not mention the Polk Property or the 1999 WFB Mortgage and may be given undue weight by the factfinder as a government report. *See, e.g.*, *Gehl v. Soo Line R.R. Co.*, 967 F.2d 1204, 1208 (8th Cir. 1992) ("There is a danger that government reports, even if not particularly probative, will nonetheless sway the jury by their 'aura of special reliability and trustworthiness.'" (quoting *City of New York v. Pullman Inc.*, 662 F.2d 910, 915 (2d Cir. 1981))). Even assuming the report is

admissible, it is insufficient evidence to create a triable issue of fact. It is a general assessment of WFB's unsound practices and does not purport to investigate the mortgage loan at issue here, giving it limited probative value as to the question of whether WFB knew that the 1999 Mortgage was executed without proper authority. *Cf. Eason v. Fleming Cos.*, 4 F.3d 989, 1993 WL 360736, at *6 (5th Cir.) (unpublished Per Curiam opinion) ("Moreover, because the GAO report is a *general* attack on EEOC investigations, it would have been reasonable for the district court to conclude that the report was not sufficiently probative of the EEOC's investigation of *Eason's* charges.").

Padilla also argues that her signature was required on the initial mortgage documents because her beneficial interest was held with Kowalski as tenants by the entirety. The statute she cites to, 735 ILCS 5/12-112, says nothing about signature requirements, and in any event, the interest was held in trust with the trustee authorized to make mortgages or trust deeds under the terms of the land trust agreement. The trustee represented its authority to mortgage the property to WFB. Padilla's insistence that both her and Kowalski's signatures were nonetheless required is simply another attempt to undermine the validity of the Trust's representation, which as explained above is ineffective as against WFB. *See Marquette Bank v. Heartland Bank & Tr. Co.*, 41 N.E.3d 1007, 1010-11 (Ill. App. Ct. 2015) (foreclosure of mortgage executed by land trustee was effective against both beneficiaries' interest even though it was held as tenants by the entirety and debt was held by only one beneficiary); *see also Dep't of Conservation v. Franzen*, 356

11

N.E.2d 1245, 1250 (Ill. App. Ct. 1976) ("[A] beneficiary who chooses the advantage of the land trust form of ownership may not also act contrary to the terms of the agreement as if he had legal and equitable title when it suits his convenience.").

In summary, Padilla has not produced sufficient evidence to invoke the exception to the general rule from *Gross* that a third-party lender may rely on a trustee's representation of authority. FDIC-R is therefore entitled to summary judgment on her first affirmative defense.

For the same reasons, WFB and FDIC-R were entitled to rely on the extensions and modifications of the 1999 Mortgage executed by the Trust that delayed its maturity date until January 1, 2014. Because that maturity date is effective for purposes of establishing the timeliness of FDIC-R's foreclosure action, Padilla's statute of limitations defense fails. FDIC was appointed as receiver on December 15, 2017 and filed its counterclaim to foreclose on January 8, 2020, within the 6-year limitation period under 12 U.S.C. § 1821(d)(14)(A) (running from the time FDIC was appointed as receiver) and the 10-year limitation period under 735 ILCS 5/13-115 (running from the time a right of action accrued).

## III. FDIC-R and Chase's Joint Motion to Strike the Proffered Expert Report of Randy Hughes

FDIC-R and Chase each ask the Court to strike the expert report from Randy Hughes submitted by Padilla with her oppositions to their substantive motions. The joint motion contends that Hughes's report does not comply with the requirements of Federal Rule of Civil Procedure 26(a)(2)(B) and is inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993). The

joint motion asserts that Hughes is unqualified to offer his opinions, has not sufficiently set forth his methodology or supporting facts, and has offered inadmissible legal opinions.

Hughes's report is a short 4-page document that lists a set of documents he reviewed and purports to draw on his own experience with land trusts. Relevant here, he opines that a letter of direction will normally be provided to a lender and that the mortgages sought to be foreclosed by Chase and FDIC-R are invalid because no such letter has been produced for either mortgage.

Given the discussion above, much of Hughes's report is irrelevant, as it pertains to whether the Trust had actual authority to execute the mortgages at issue, not whether the banks were entitled to rely on the Trust's representations that it did. These portions would not assist the trier of fact and are inadmissible. *See Owens v. Auxilium Pharms., Inc.*, 895 F.3d 971, 972-73 (7th Cir. 2018). Furthermore, regardless of whether Hughes's factual premise regarding the usual practice of lenders is correct, his opinion that the banks' failures to procure letters of direction rendered the mortgages invalid is contrary to law and therefore inadmissible. *Loeffel Steel Prods. Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005). For these reasons, the Court grants the joint motion and strikes the Hughes report from the summary judgment record.

IV.     FMB's Motion to Dismiss Padilla's First Amended Third-Party Complaint

Padilla's third-party complaint against FMB asserts a claim for breach of fiduciary duty arising from Bridgeview Bank and Trust's failure to obtain proper authorization from the beneficiaries of the Trust (specifically, Padilla) before

executing the mortgages at issue in this case. FMB is named as a defendant as successor to Bridgeview Bank and Trust. FMB has moved to dismiss the fiduciary duty claim.

The Court previously granted a motion to dismiss the third-party complaint on the basis that Padilla's signatures on the 2004 and 2007 mortgage modification documents showed she had actual notice of the mortgages early enough to render her claim untimely. *See* R. 98. Padilla moved for reconsideration, asserting that her signatures on those documents were forgeries and that her complaint had simply neglected to clearly allege as much. The Court granted Padilla's motion and permitted leave to file the instant First Amended Third-Party Complaint. R. 117.

FMB advances three arguments for dismissal: (1) Padilla's claim is time barred because she had actual notice of the complained-of mortgages outside the limitations period, (2) Padilla's claim is time barred because she had constructive notice of the mortgages outside the limitations period, and (3) Padilla lacks standing to sue.

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic

14

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

a. <u>Actual Notice</u>

As in its original motion, FMB argues that Padilla's claim is time barred because she had notice of the fraudulent mortgages as early as 2004, placing her claims outside the 5-year statute of limitations under 735 ILCS 5/13-205. In support, FMB argues that: (1) an October 25, 2005, Padilla was personally served with a summons and copy of the Chase Mortgage in a separate foreclosure action; (2) Padilla executed the 2004 note modification; (3) Padilla executed the 2007 note modification; and (4) a sworn statement of Jeannine Johnson attached to Padilla's complaint indicates that Padilla was present when the 2007 mortgage modification was executed.

The Court will not consider the summons from the prior foreclosure at this stage. Ordinarily on a motion to dismiss, a court cannot consider matters outside the pleadings without converting the motion to one for summary judgment and allowing a reasonable opportunity for discovery. *See* Fed. R. Civ. P. 12(b); *Wright v. Associated*

*Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994). A narrow exception exists allowing consideration of documents attached to a motion to dismiss if the documents are referred to in the plaintiff's complaint, central to her claim, and undisputedly authentic. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *Markin v. Chebemma, Inc.*, 2010 WL 1191868, at *5 (N.D. Ill. Mar. 25, 2010).

None of these requirements are met as to the summons. It is not referenced in Padilla's complaint, nor is it central to her claim against FMB. Its authenticity is also not beyond reasonable dispute. Padilla identifies several discrepancies in the document, including contradictory indications on the affidavit of service and the state court docket that Padilla both was and was not served, and that her purported signature on the service document apparently bears little resemblance to her actual signature.

FMB proposes that the Court can take judicial notice of the *fact* that Padilla was served in the prior foreclosure action but fails to explain how the Court could do so without reliance on the document itself. That Padilla was served with summons in a foreclosure action on October 25, 2005 is not a fact generally known within the Court's territorial jurisdiction, nor one "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *Grimes v. Navigant Consulting, Inc.*, 185 F. Supp. 2d 906 (N.D. Ill. 2002) (taking judicial notice of published historical stock prices on a motion to dismiss). Judicial notice is inappropriate.

FMB next relies on the 2004 and 2007 note modifications that bear Padilla's signature. The Court cited these documents in dismissing Padilla's original third-party complaint, but she has now added additional allegations that these signatures were forged, which would logically defeat notice if true. FMB argues that Padilla's forgery allegations do not satisfy Rule 9(b) and should be disregarded, which would put her complaint right back where it was when the Court initially dismissed it.

Rule 9(b)'s heightened pleading requirements apply to claims of fraud and those that "sound in fraud"—that is, claims that are "premised upon a course of fraudulent conduct." *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 508 (7th Cir. 2007). This may include the forgery allegations—although Padilla claims the forgeries are not the basis of her lawsuit against FMB, they are undoubtedly "factual averments" of fraudulent conduct. *See id.*

Regardless, assuming Rule 9(b) applies to these particular allegations, the Court declines to dismiss the complaint on this ground because Padilla has limited means of supplying any additional facts to supplement them. "[T]he particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998). It is unrealistic to expect a victim of forgery to possess knowledge of the misdeed enough to answer the who, what, where, when, and how. *See id.* (noting that exception to Rule 9(b) is most likely to apply when a plaintiff alleges a fraud against one or more third parties). Padilla's forgery allegations are not a central portion of her claim, which is otherwise pled in plenty of detail. They should be

resolved on a more complete record, rather than dismissed on a technical pleading standard.

Finally, FMB relies on a document attached to Padilla's complaint that contains a notarized signature that purports to show that Padilla was present when the 2007 mortgage modification was executed. While this document can be considered on a motion to dismiss, its effect is not clear enough to warrant dismissal. The parties dispute whether the notary's signature and sworn statement pertain to Padilla's alleged presence, and Padilla asserts that this document was also tainted by fraud and forgery. But this issue comes down to a factual dispute between sworn statements by Padilla and the notary. Such a dispute cannot be resolved on a motion to dismiss.

Given the above discussion, the Court cannot at this stage conclude that Padilla had actual notice of the mortgages at issue as would render her claims untimely.

b. <u>Constructive Notice</u>

FMB premises its constructive notice argument on 735 ILCS 5/15-1503(a), which provides as follows:

> A notice of foreclosure, whether the foreclosure is initiated by complaint or counterclaim, made in accordance with this Section and recorded in the county in which the mortgaged real estate is located shall be constructive notice of the pendency of the foreclosure to every person claiming an interest in or lien on the mortgaged real estate, **whose interest or lien has not been recorded prior to the recording of such notice of foreclosure.** (emphasis added)

FMB claims that the recorded notice of foreclosure operates as constructive notice on Padilla at least as early as December 27, 2004. However, FMB omits the emphasized section quoted above, which states that notice is only imputed on a person whose

18

interest has not been recorded prior to the recording of such notice of foreclosure. Padilla's interest arose when the Trust was amended in 1997 to add her as a beneficiary, long before the cited notice of foreclosure. Section 5/15-1503(a) therefore does not impute notice on Padilla.

FMB also argues that Padilla's knowledge is demonstrated by her subpoena to WMB during her 2014 divorce proceedings requesting document "pertaining to various loans, including loans on the [Polk] Property." This argument relies on inferences about what Padilla knew and why she issued that subpoena, more akin to actual knowledge than constructive knowledge. Parties issue broad subpoenas for lots of categories of documents without certainty that any such documents exist, if for no other reason than to confirm their absence. The Court will not doom Padilla's instant claim by ascribing a speculative intent to this unrelated document request.

Alternatively, FMB argues that Padilla had constructive knowledge because she was obliged to search public records for any encumbrances on the Polk Property, which would have revealed the various recorded mortgages and subsequent modifications. As Padilla notes, record notice is ordinarily imputed to a purchaser, since one who purchases an interest in real property should be prudent enough to search for any existing encumbrances beforehand. *See In re Ehrlich*, 59 B.R. 646, 650 (Bankr. N.D. Ill. 1986). At no time did Padilla make any sort of purchase that would have put her in such a position. FMB argues that Padilla, as a holder of the power of direction for the Trust, owed fiduciary duties to all holders of the beneficial interest (herself and Kowalski as tenants by the entirety), she was obligated to check the

19

recorder of deeds. FMB cites a single case from over 125 years ago in support, and it says nothing about imposing constructive notice in a situation like the one presented here. For now, suffice to say there are a multitude of reasons why it may not have been necessary for Padilla to periodically verify that her husband had not taken out secret mortgages on their own home.

The Court recognizes that Padilla's sworn testimony, attached to her complaint, that she never signed or received any documentation putting her on notice of the subject mortgages over the course of many years may strain credulity. Nonetheless, her allegations are accepted as true at this stage, and she has alleged an expansive scheme by which Kowalski apparently hid these transactions, which allegedly did not operate as typical mortgages. Should discovery yield contrary evidence establishing earlier notice, dismissal may again prove appropriate.

c. <u>Standing</u>

Finally, FMB claims that Bridgeview Bank and Trust only owed a duty of care to Kowalski and Padilla as tenants by the entirety, not to either of them individually, and that Padilla therefore has no standing to sue. "To meet the minimum standing requirements of Article III, a plaintiff must prove three elements: (1) he or she suffered or will suffer a concrete and particularized injury that is actual or imminent; (2) the injury is fairly traceable to the defendant's action; and (3) it is likely that the injury will be redressed by a favorable decision." *H.O.P.E., Inc. v. Alden Gardens of Bloomingdale, Inc.*, 2017 WL 4339823, at *4 (N.D. Ill. Sept. 29, 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

FMB argues that any duty the Trust owed was to Kowalski and Padilla together as tenants by the entirety, which is a separate legal entity. He relies on *Loventhal v. Edelson*, 844 F.3d 662, 663 (7th Cir. 2016) in which Judge Posner wrote: "A tenancy by the entirety allows spouses (and only spouses) to own property together as a single legal entity. Each must have an equal undivided interest in the property and a right of survivorship; neither may have the power acting alone to alienate the property." FMB extrapolates from this statement a rule that neither spouse in a tenancy by the entirety can assert a claim for injury to that interest individually.

This appears to be a novel argument and the Court has identified no Illinois decisions endorsing or even discussing it. A tenancy by the entirety "operates under the fictional assumption that a husband and wife are one for legal purposes—it conveys the property to them as one person; they each own 100% of the property." *Marquette Bank*, 41 N.E.3d at 1010. By this definition, it seems equally plausible that *either* Kowalski or Padilla could assert the claim, since both own 100% of the property. The key feature of a tenancy by the entirety is that neither is empowered to alienate (*i.e.*, sell) the property without the other's consent, and that creditors cannot reach property held as such to satisfy the debts of one spouse. *See In re Estate of Aryeh*, __ N.E.3d __, 2021 WL 948645, at *5 (Ill. App. Ct. 2021). FMB has not explained how litigation of this claim is equivalent to selling the property. Accordingly, the Court declines to dismiss Padilla's claim for lack of standing at this time.

## Conclusion

For the foregoing reasons, the Court resolves the pending motions as follows: The Court grants Chase's motion for partial summary judgment on Padilla's first

21

affirmative defense (R. 127). The Court grants FDIC-R's motion for summary judgment on Padilla's affirmative defenses to its second amended counterclaim (R. 169). The Court grants FDIC-R and Chase's joint motion to strike the expert report of Randy Hughes (R. 183, R. 186). The Court denies FMB's motion to dismiss Padilla's first amended third-party complaint (R. 143).

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: March 31, 2022